IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID MONTOYA and
MICHAEL MONTOYA,

       Plaintiffs,

vs.                                                                              No. CIV 10-0360 JB/WDS

GERALD SHELDON, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
ANGELO LOVATO, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
THE CITY OF ALBUQUERQUE and
THE ALBUQUERQUE POLICE DEPARTMENT,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Re-Open Discovery

for a Limited Purpose, filed August 12, 2011 (Doc. 33)("Motion").  The Court held a hearing on

December 6, 2011.  The primary issue is whether the Court should re-open discovery for the limited

purpose of allowing the Plaintiffs to submit discovery requests to Defendant Angelo Lovato about

a criminal charge he faces regarding leaving the scene of an accident.  The Court will grant the

Motion in part and deny the Motion in part.  The Court believes that the Plaintiffs have presented

good cause for their request to re-open discovery.  Pursuant to the Plaintiffs' concession at the

hearing, the Court will not permit the Plaintiffs to serve any requests for admission or requests for

discovery to inquire into Lovato's conduct in relation to the alleged incident where he left the scene

of an accident.  The Court will also not permit the Plaintiffs to conduct their requested deposition

of Lovato, because the Court believes the incident in question is collateral and relates only to the

issue of Lovato's credibility, and because the Court believes any relevant information from the internal affairs investigation into Lovato's conduct will provide the Plaintiffs with the information they seek.  Pursuant to the discussion at the December 6, 2011 hearing, the Court will conduct an in camera review of the internal affairs investigation into Lovato's conduct and determine whether any of the documents underlying that investigation should be disclosed to the Plaintiffs.

## PROCEDURAL BACKGROUND

On April 15, 2010, the Plaintiffs filed their Plaintiffs' Complaint for Civil Rights Violations. See Doc. 1 ("Complaint").  In Counts I through IV, they assert claims for violations of the Fourth Amendment to the United States Constitution against the Defendants, including claims of false arrest, excessive force, and unlawful detention.  See Complaint at 6-8.  In Count V, the Plaintiffs assert a malicious-prosecution claim.  See Complaint at 8.  On August 31, 2010, the parties adopted a Joint Status Report and Provisional Discovery Plan.  See Doc. 14 ("JSR").  The parties agreed that discovery in this case would be complete by March 10, 2011.  See JSR at 8.  On September 10, 2010, the Honorable W. Daniel Schneider, United States Magistrate Judge, issued an order adopting the JSR.  See Order Adopting Joint Status Report and Provisional Discovery Plan at 1 (Doc. 17). On March 30, 2011, Judge Schneider issued a Scheduling Order that incorporated the parties' agreed-upon date of March 10, 2011 as "the termination date for discovery."  Doc. 26.

On August 12, 2011, the Plaintiffs filed their Motion seeking to re-open discovery.  They ask the Court to grant them leave "to submit discovery requests directed to Defendant Angelo Lovato for the limited purpose of obtaining discoverable material concerning a criminal charge of leaving the scene of an accident, which allegations occurred after the close of discovery in this matter and are relevant to the issue of truthfulness."  Motion at 1.  The Plaintiffs concede that the time for discovery has passed under the Scheduling Order.  See Motion at 1.  They assert, however, that,

"[o]n April, 1, [sic] 2011, after discovery had ceased, an incident occurred, involving Defendant Officer Angelo Lovato allegedly driving his police vehicle and striking a civilian's vehicle." Motion at 2. The Plaintiffs contend that, "[w]hile it is not uncommon to have a motor vehicle accident, what happened after the accident is relevant to the Defendant's character for truthfulness," because Lovato "was charged under the New Mexico Traffic Code, NMSA (1978) Section 66-7-201, Accidents Involving Death or Personal Injury, a misdemeanor offense." Motion at 2. The Plaintiffs assert that the "pending criminal case is 'off the record' in the Metropolitan Court for Bernalillo County, which means that the recording of the proceedings are not automatically made." Motion at 2. As a result of the nature of these proceedings, records of which the Plaintiffs report will not be available because they are off the record, the Plaintiffs "request that the Court allow depositions of the parties, witnesses and victim(s), as well as no more than ten (10) Requests for Admission and ten (10) Interrogatories directed to" Lovato "and strictly tailored to the subject of the accident, and the resulting criminal process." Motion at 2. The Plaintiffs note that "[t]he disposition of the criminal case against Defendant Lovato will be known following trial scheduled for August 11, 2011, and the Defendant's protections under the Fifth Amendment to the United States Constitution will no longer apply, since the case will have been disposed and jeopardy has attached." Motion at 2. The Plaintiffs argue that there is good cause to re-open discovery, because these charges arose after the close of discovery. See Motion at 2.

On August 29, 2011, the Defendants filed their Defendants' Response to Plaintiffs' Motion to Re-Open Discovery for a Limited Purpose. See Doc. 34 ("Response"). The Defendants note that Lovato's criminal case did not end on August 11, 2011, "but was instead continued to September 19, 2011." Response at 3. The Defendants argue that the Plaintiffs cannot show good cause to re-open discovery. See Response at 4. The Defendants contend that the costs of additional discovery

outweigh the benefits.  See Response at 4-5.  They assert that the "Plaintiffs' desire to explore the facts and circumstances of the underlying incident pertaining the Leaving the Scene of an Accident citation issued to Defendant Angelo Lovato bears absolutely no relevance to the claims and defenses raised in this lawsuit."  Response at 5.  The Defendants argue that the Plaintiffs' claims under the Fourth Amendment depend upon objective standards as opposed to the officers' subjective considerations.  See Response at 6.  The Defendants contend that the malicious-prosecution claim does not relate to any conduct in which Lovato has engaged.  See Response at 8.  The Defendants assert that the alleged criminal conduct in which Lovato has engaged is not probative of truthfulness, as it is would qualify as a misdemeanor offense and not a crime of dishonesty.  See Response at 8-9.  The Defendants note that "there is nothing precluding Plaintiffs from attending any of the Metropolitan Court hearings, or from hiring their own court reporter to record the hearings, or from obtaining the court file for purposes of learning about the proceedings."  Response at 10.

At the hearing on December 6, 2011, the Plaintiffs asserted that the incident involving Lovato relates to him giving an incorrect badge number to a person with which he became involved in an accident.  See Transcript of Hearing at 2:16-25 (taken December 6, 2011)(Padilla)("Tr.").[1] They argued that they intend to use this information to attack his character for truthfulness.  See Tr. at 2:16-25 (Padilla).  The Court asked how the Plaintiffs would present this information as evidence at trial.  See Tr. at 3:1-4 (Court).  The Plaintiffs noted that Lovato's trial is now scheduled for January 4, 2012.  See Tr. at 3:5-10 (Padilla).  The Court noted that this evidence may be collateral and expressed some reluctance about permitting the Plaintiffs to cross-examine Lovato with the incidents arising out of Lovato's current criminal case.  See Tr. at 3:24-4:12 (Court).  The Court

_____

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

inquired whether, given the publicity surrounding Lovato's conduct, the Plaintiffs needed any discovery to engage in the cross-examination he seeks to perform at trial.  See Tr. at 5:22-6:2 (Court).  The Plaintiffs noted that there are some internal affairs reports to which they do not have access.  See Tr. at 6:3-5 (Padilla).  The Plaintiffs asserted that they would like to depose Lovato following the criminal trial, but stated that they could likely do without any requests for admission or interrogatories.  See Tr. at 6:13-20 (Court, Padilla).  The Defendants argued that any misdemeanor conviction Lovato faces would not be admissible at trial to attack his character for truthfulness.  See Tr. at 8:7-9:3 (Griffin).  The Defendants asserted that they were not aware of the status of the internal investigation into Lovato's conduct.  See Tr. at 9:8-17 (Griffin).  The Court noted that any allegedly improper conduct in which Lovato engaged is not probative of truthfulness. See Tr. at 9:18-25 (Griffin).  The Defendants suggested that the Court conduct an in camera review of the documents underlying the internal affairs investigation to determine if anything probative regarding Lovato's character for truthfulness arose from the investigation.  See Tr. at 12:5-16 (Griffin).  The Court requested that the Defendants send a letter to the Court and opposing counsel to clarify whether any documents exist as part of an internal investigation and to include the equivalent of a privilege log.  See Tr. at 12:23-13:10 (Court).  The Court requested that the parties provide a status report by January 15, 2012 if Lovato does not go to trial on January 4, 2012.  See Tr. at 13:19-14:2 (Court).  The Court stated that it was not inclined to permit a deposition of Lovato. See Tr. at 14:3-18 (Court).

On December 9, 2011, Stephanie Griffin, counsel for the Defendants, submitted a letter to the Court.  See Letter from Stephanie M. Griffin to the Court (dated December 9, 2011), filed December 9, 2011 (Doc. 36)("Letter").  Ms. Griffin relates that she has "been advised that there is an investigation" into Lovato's conduct and "that this investigation has concluded."  Letter at 1.  She

states that she is "in the process of obtaining a copy of the investigation" and that she will provide

a copy of the documents to the Court along with a privilege log, so that the Court "may determine,

what, if any, information should be disclosed to Plaintiff pursuant to a protective order."  Letter at

1.

## RELEVANT LAW REGARDING DISCOVERY

"Discovery plays an important role in our adversarial system: full development of the facts

surrounding a matter furthers 'the purpose discovery is intended to serve -- advancing the quest for

truth.'"  Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., Nos. 02-1146 and 03-1185, 2007 WL

1306560, at *2 (D.N.M. Mar. 12, 2007)(Browning, J.)(quoting Taylor v. Illinois, 484 U.S. 400, 430

(1988)).  "Discovery is also, ideally, a self-executing system."  Mann v. Fernandez, 615 F.Supp.2d

1277, 1284 (D.N.M. 2009)(Browning, J.).  "A spirit of cooperation between opposing counsel is thus

important and generally results in the filing of fewer discovery motions, reduction in the costs of

litigation, and conservation of limited judicial resources."  Mann v. Fernandez, 615 F.Supp.2d at

1284.  "Sometimes, though, the discovery system breaks down."  Mann v. Fernandez, 615 F.Supp.2d

at 1284.  "Determining whether to reopen discovery requires striking a delicate balance between the

interests of efficiency and accountability on the one hand, and a recognition of the importance of

discovery for resolving cases on the merits on the other."  Mann v. Fernandez, 615 F.Supp.2d at

1284.

1.      **Scheduling Orders.**

"The District Court has wide discretion in its regulation of pretrial matters."  Si-Flo, Inc. v.

SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990).  Scheduling orders, however, "may be modified

only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Accord Street v. Curry

Bd. of Cnty. Comm'rs, No. 06-0776, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning,

J.).  The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot
> reasonably be met despite the diligence of the party seeking the extension.  Since the
> scheduling order is entered early in the litigation, this standard seems more
> appropriate than a "manifest injustice" or "substantial hardship" test.  Otherwise, a
> fear that extensions will not be granted may encourage counsel to request the longest
> possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The United States Court of Appeals for the Tenth Circuit has held that the concepts of good
cause, excusable neglect, and diligence are all related.  As this Court has stated:  "Properly
construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent
efforts."  Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6.  "The Tenth Circuit . . .
has recognized the interrelation between 'excusable neglect' and 'good cause.'"  Pulsecard, Inc. v.
Discover Card Services Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(citing In re Kirkland, 86 F.3d 172,
175 (10th Cir. 1996)).  In In re Kirkland, the Tenth Circuit dealt with the definition of "good cause"
in the context of rule 4(j).  The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of good cause, it would
> appear to require at least as much as would be required to show excusable neglect,
> as to which simple inadvertence or mistake of counsel or ignorance of the rules
> usually does not suffice, and some showing of good faith on the part of the party
> seeking the enlargement and some reasonable basis for noncompliance within the
> time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th
Cir.1987))(internal quotation marks omitted).  The Tenth Circuit explained that Putnam v. Morris
"thus recognized that the two standards, although interrelated, are not identical and that 'good cause'
requires a greater showing than 'excusable neglect.'"  In re Kirkland, 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the good cause standard primarily
considers the diligence of the party . . . [.] The party seeking an extension must show that despite

due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. at 301 (first alteration in original)(internal quotation marks omitted).  In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel.  Kee v. Fifth Third Bank, No. 2:06-cv-00602-DAK-PMW, 2008 WL 183384, at *1 (Jan. 17, 2008 D. Utah).  Judge Kimball reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."  Kee v. Fifth Third Bank, 2008 WL 183384, at *1.

     **2.**     **Reopening Discovery.**

     In Smith v. United States, the Tenth Circuit discussed the factors to be considered in determining whether to reopen discovery.  These factors include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169 (citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1213 (3d Cir. 1984); Wilk v. Am. Med. Ass'n, 719 F.2d 207, 232 (7th Cir. 1983); Geremia v. First Nat'l Bank of Bos., 653 F.2d 1, 5-6 (1st Cir. 1981)).

     The United States Court of Appeals for the Fifth Circuit considers four elements to determine if a scheduling order should be modified: (i) the explanation for the party's failure to meet the deadline; (ii) the importance of what the court is excluding; (iii) the potential prejudice if the court

allows the thing that would be excluded; and (iv) the availability of a continuance to cure such

prejudice.  See S&W Enters., LLC v. SouthTrust Bank of Ala., 315 F.3d 533, 536 (5th Cir. 2003)).

## LAW REGARDING RULE 608 EVIDENCE

Rule 608 provides certain mechanisms for attacking witnesses' character for truthfulness or

untruthfulness.  See United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL

3834061, at *7 (D.N.M. 2010)(Browning, J.).  Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the
> witness's reputation for having a character for truthfulness or untruthfulness, or by
> testimony in the form of an opinion about that character.  But evidence of truthful
> character is admissible only after the witness's character for truthfulness has been
> attacked.

Fed. R. Evid. 608(a).  "Under Federal Rule of Evidence 608(b), specific unrelated instances of a

witness's prior misconduct may be used to impeach the witness at the discretion of the court,

however, only to the extent the misconduct reflects on the witness's character for truthfulness."

United States v. Beltran-Garcia, 338 F.App'x 765, 770 (10th Cir. 2009)(unpublished).  Rule 608(b)

lays out the mechanics of using evidence of specific instances of conduct for impeachment purposes:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible
> to prove specific instances of a witness's conduct in order to attack or support the
> witness's character for truthfulness.  But the court may, on cross-examination, allow
> them to be inquired into if they are probative of the character for truthfulness or
> untruthfulness of:
>
> > (1)     the witness; or
> >
> > (2)     another witness whose character the witness being cross-examined
> >          has testified about.
>
> By testifying on another matter, a witness does not waive any privilege
> against self-incrimination for testimony that relates only to the witness's character
> for truthfulness.

Fed. R. Evid. 608(b).  As the advisory committee notes to this rule further flesh out, rule 408 "bars

evidence of specific instances of conduct of a witness for the purpose of attacking or supporting his credibility" except in the following circumstances: "(1) specific instances are provable when they have been the subject of criminal conviction, and (2) specific instances may be inquired into on cross-examination of the principal witness or of a witness giving an opinion of his character for truthfulness." Fed. R. Evid. 608 advisory committee's note to 1972 proposed rule.

"Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence."

United States v. Beltran-Garcia, 338 F.App'x at 770.

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993). Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness" and not "to bar extrinsic evidence for bias, competency and contradiction impeachment." Fed. R. Evid. 608 advisory committee's note to 2003 amendment. Professors C. Wright and V. Gold recognized that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 C. Wright & V. Gold, Federal Practice and Procedure § 6117, at 86 (1993 & Supp. 2011). Professors Wright and Gold confirm that, as a result of the 2003 amendment, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness." 28 Wright & Gold, supra, § 6117, at 14 (Supp. 2011).

-10-

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b).  Rule 404(b)

provides:

(b)      **Crimes, Wrongs, or Other Acts.**

     (1)      **Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

     (2)      **Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

         (A)      provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

         (B)      do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based

on the forbidden inference: the person did X in the past, therefore he probably has a propensity for

doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. 10-0797, 2011 WL

6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).  "The rule, however, has a number of

'exceptions' -- purposes for which such evidence will be admissible."  Wilson v. Jara, 2011 WL

6739166, at *5.  Those purposes include proving motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident.  See Fed. R. Evid. 404(b).  The Supreme

Court of the United States has enunciated a four-part process to determine whether evidence is

admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  The

Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character. See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37, 439 (1991). In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged. United States v. Phillips, 599 F.2d at 136.

When bad act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is

offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)). "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Youts, 229 F.3d at 1317. Rules 401-403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the government must meet to successfully offer evidence under rule 404(b). See Huddleston v. United States, 485 U.S. at 686-691.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time. See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged"). This similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978). See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion."). The more similar the act or state of mind, the more relevant the evidence becomes. See United States v. Queen, 132 F.3d at 996. Moreover, when establishing identity, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical. See United States v. Gutierrez, 696 F.2d 753, 755 (10th

Cir. 1982).

**ANALYSIS**

The Court believes that the Plaintiffs have presented good cause for their request to re-open discovery.  Pursuant to the Plaintiffs' concession at the hearing, the Court will not permit the Plaintiffs to serve any requests for admission or requests for discovery to inquire into Lovato's conduct in relation to the alleged incident where he left the scene of an accident.  The Court will also not permit the Plaintiffs to conduct their requested deposition of Lovato, because the Court believes the incident in question is collateral and relates solely to Lovato's credibility, and not specifically to issues in this case.  Furthermore, the Court believes that any relevant information from the internal affairs investigation into Lovato's conduct will provide the Plaintiffs with the information they seek.  Pursuant to the discussion at the December 6, 2011 hearing, the Court will conduct an in camera review of the internal affairs investigation into Lovato's conduct and determine whether any of the documents underlying that investigation should be disclosed to the Plaintiffs.

**I.      THE COURT CONCLUDES THAT THE PLAINTIFFS HAVE SHOWN GOOD CAUSE TO AMEND THE SCHEDULING ORDER.**

The Court concludes that the Court's "scheduling deadlines cannot be met despite [the Plaintiffs'] diligent efforts."   Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6. Discovery terminated on March 10, 2011, pursuant to the party's agreement in the JSR and Judge Schneider's Scheduling Order.  The accident in which Lovato was allegedly involved did not occur until April 1, 2011, which is after the time for discovery had expired.  Based on this sequence of events, the Court believes that the Plaintiffs have acted in "good faith" in filing their Motion, have shown a sound reason for noncompliance's with the Court's scheduling order, and have shown "some reasonable basis for noncompliance within the time specified."  In re Kirkland, 86 F.3d at

-14-

175.  The Court cannot reasonably expect the Plaintiffs to predict that an event like leaving the scene of an accident would occur, as they would have had no notice that this event would arise.  It appears that criminal proceedings against Lovato began sometime in late April 2011.  See Docket Sheet for State of New Mexico vs. Lovato, No. CR716911, at 1-2 (Doc 34-1).  The Plaintiffs filed their Motion on August 12, 2011.  Thus, it appears that they did not act with unreasonable delay in bringing their Motion or that they brought the Motion in a way that will prejudice the Defendants.

**II.   THE COURT CONCLUDES THAT, CONDITIONED ON ITS IN CAMERA REVIEW OF THE DOCUMENTS FROM THE INTERNAL AFFAIRS INVESTIGATION INTO LOVATO'S CONDUCT, IT SHOULD REOPEN DISCOVERY TO A LIMITED DEGREE.**

The Court concludes that it is appropriate to re-open discovery to a highly limited degree.

In Smith v. United States, the Tenth Circuit discussed the factors to be considered in determining whether to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169.

First, trial is not imminent in this case.  There currently is no trial setting in part because of the pending Motion.  Thus, the first factor weighs in favor of re-opening discovery.  Second, the Motion to re-open discovery is opposed, at least in its written form.  Thus, the second factor weighs against re-opening discovery.  On the other hand, the parties made certain concessions at the hearing, considerably narrowing the contested issues to almost none.  Consequently, this factor also weighs in favor of re-opening discovery in a more narrow way than the written filings suggest.  Third, the Defendants have identified no prejudice that they will suffer other than to produce the

-15-

requested discovery.  The Court believes that, because it will limit discovery to the documents underlying the internal affairs investigation into Lovato's conduct, the Defendants will not suffer prejudice in having to respond to the discovery.  Thus, the third factor weighs in favor of re-opening discovery.  Fourth, the Plaintiffs have been diligent in seeking to re-open discovery, based on the timing of the incident involving Lovato, which did not occur until after discovery had closed.  Thus, the fourth factor weighs in favor of re-opening discovery.  Fifth, the Plaintiffs have not suggested that there will be a need for discovery into additional matters beyond this incident involving Lovato. The Court recognizes the Defendants' concern that permitting unfettered discovery could lead to an unnecessary fishing expedition.  The Court believes that the limits on discovery to which the Plaintiffs have agreed and which the Court intends to impose will prevent excessive discovery.

Sixth, the requested discovery will potentially lead to the discovery of at least some potentially admissible evidence.  The Plaintiffs have asserted that they intend to use the requested discovery to impeach Lovato's credibility.  The accident in which Lovato allegedly left the scene is unrelated to the events underlying this lawsuit.  Rule 608(b) would govern the admissibility of evidence relating to this incident if the Plaintiffs seek to use that evidence to attack Lovato's character for truthfulness.  Rule 608(b) would restrict the use of extrinsic evidence offered solely to "attack or support the witness's character for truthfulness."  Fed. R. Evid. 608(b).

On the other hand, the Plaintiffs could still ask questions of Lovato about specific instances of conduct that bore on his character for truthfulness.  See Fed. R. Evid. 608(b).  They could also ask these same questions to any witnesses who were to testify about Lovato's character for truthfulness.  See Fed. R. Evid. 608(b).  As one of the advisory committee's notes to rule 608(b) provides: "[S]pecific instances may be inquired into on cross-examination of the principal witness[, whose character has been attacked,] or of a witness giving an opinion of his character for

-16-

truthfulness." Fed. R. Evid. 608(b) advisory committee's note to 1972 proposed rule. The evidence from the internal affairs investigation could assist the Plaintiffs in formulating questions to attack Lovato's credibility during their examination of Lovato. "Once a defendant takes the stand, her credibility is at issue as with any other witness." United States v. Schuler, 458 F.3d 1148, 1155 (10th Cir. 2006). Leaving the scene of an accident is conduct that is potentially probative of a witness' character for truthfulness or untruthfulness, particularly when that witness is a police officer who a jury would presume would be familiar with the law and its requirements. It is also notable that there was a subsequent internal affairs investigation into Lovato's behavior. Courts have permitted cross-examination of parties or witnesses on similar matters as, including matters that were arguably less probative of a witness' character for truthfulness than this line of questioning. See United States v. Davis, 183 F.3d 231, 256-57 (3d Cir. 1999)(concluding that detailed questioning of an officer, in a case regarding criminal conduct in which the officer had allegedly engaged, including obstruction of justice and witness tampering, about an officer's suspension for misappropriating gasoline for personal use and for destroying a young man's subway pass and lying to internal affairs about it were sufficiently probative of truthfulness); United States v. Sellers, 906 F.2d 597, 603 (11th Cir. 1990)(holding that, in a case involving criminal charges for violating a suspect's constitutional rights, cross-examination of defendant about why he left or was fired from his job as a security officer because of claiming expenses to which he was not entitled was probative of the defendant's character for truthfulness); Lewis v. Baker, 526 F.2d 470, 475-76 (2d Cir. 1975)(concluding that cross-examination of plaintiff about an employment application in which he falsely stated he had not received psychiatric treatment within the past five years was directly relevant to party's capacity to truth-telling under the circumstances of the case). The Court, of course, retains discretion to limit this line of questioning if it becomes cumulative or becomes too

-17-

remote in comparison to the matters at issue in the case.  See United States v. Schuler, 458 F.3d at

1155 ("Consequently, under Federal Rule of Evidence 608(b), it is within the discretion of the

district court to decide whether a defendant may be cross-examined about prior conduct concerning

her character for truthfulness, subject always to the balancing test of Federal Rule of Evidence

403.").  The Court also may not allow extrinsic proof of leaving the scene of the accident and may

require the Plaintiffs to accept Lovato's answer.[2]

  Thus, only one factor weighs against re-opening discovery, and that factor does not weigh

heavily against re-opening discovery when one considers that the parties have significantly narrowed

the issues in dispute.  The other five factors range from weighing somewhat in favor of re-opening

---

[2]Neither party has addressed whether rule 404(b) would bar or allow the proffered evidence regarding Lovato's alleged conduct of leaving the scene of an accident.  The Tenth Circuit has recognized that evidence offered to impeach a witness, in other words to attack a witness' credibility, does not need to comply with rule 404(b):

> Defendant argues strenuously that the evidence regarding the OCC ban was not properly admitted under Fed. R. Evid. 404(b), and that no 404(b) limiting instruction was given (although he also candidly admits that none was requested).  We find defendant's argument based on 404(b) standards to be incorrect because the government's cross-examination regarding the OCC ban was not 404(b) evidence.  It went to the issue of the witnesses' credibility, and was properly admitted as impeachment under Fed. R. Evid. 611(b).  Rule 404(b) deals with the handling of evidence of other crimes, wrongs or acts, making such inadmissible to prove character in order to show conformity therewith but allowing such for certain other limited purposes.  The government did not offer the evidence for any of the purposes covered by Rule 404, proper or improper, but rather to impeach credibility.  When matters are brought out in cross-examination for impeachment purposes, the appropriate evidentiary rule is 611(b).  See United States v. Smalley, 754 F.2d 944, 951 (11th Cir.1985).  Our review of the record indicates that the trial court properly admitted the evidence for that purpose.

United States v. Rackley, 986 F.2d 1357, 1363 (10th Cir. 1993).  Thus, putting aside the barriers rule 608(b) imposes on this evidence about Lovato allegedly leaving the scene of an accident, rule 404(b) would not bar this evidence or line of questioning if the Plaintiffs offered the evidence for impeachment purposes.  See United States v. Rackley, 986 F.2d at 1363.

-18-

discovery to strongly in favor of re-opening discovery.  Given the limits to which the Plaintiffs have agreed and which the Court intends to impose, the Court believes that re-opening discovery is appropriate.  The Plaintiffs agreed at the hearing that they would not need any requests for admission or interrogatories to discover this evidence relating to Lovato's alleged misconduct. Because the Court believes that the documents from the internal affairs investigation will likely provide the Plaintiffs with everything they need to attack Lovato's credibility, the Court will not permit the requested deposition of Lovato -- which will generate significant additional expense and consume additional time for both parties.  The requested deposition will also potentially delay a trial setting.  A Court is required to tailor the scope of discovery when "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive," and when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).  While the Court may revisit its decision if its in camera review reveals that the documents from the internal affairs investigation will not provide the Plaintiffs with the information they desire, the Court believes that these documents can just as effectively, and in a more convenient, less burdensome, and less expensive manner, give the Plaintiffs the information they seek.  Additionally, while the likely benefit of the proposed discovery is about the same as that of permitting all of the discovery that the Plaintiffs have requested in their written Motion, the latter would impose considerably more burden.  Although the Plaintiffs are correct that the credibility of any witness who testifies is in issue, the relevant importance of this issue is comparatively small to issues that bear on the merits of the case.  In conclusion, pursuant to the discussion at the December 6, 2011 hearing, the Court will conduct an in camera review of the internal affairs investigation into

Lovato's conduct and determine whether any of the documents underlying that investigation should be disclosed to the Plaintiffs. While the Court is disappointed that the Defendants have not been more forthcoming in their production of written discovery and production of documents subject to a confidentiality agreement, rather than requiring the Court to resolve the issue by sifting through all the relevant documents, the Court will undertake the task and do its part to fulfill the agreements it helped to craft at the December 6, 2011 hearing. The Court will issue a separate order once it conducts its in camera review.

**IT IS ORDERED** that the Plaintiffs' Motion to Re-Open Discovery for a Limited Purpose, filed August 12, 2011 (Doc. 33), is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Timothy M. Padilla
Timothy M. Padilla & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Stephanie M. Griffin
Benjamin I. Sherman
  Assistant County Attorneys
City of Albuquerque
Albuquerque, New Mexico

    *Attorneys for the Defendants*