IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID MONTOYA and
MICHAEL MONTOYA,

       Plaintiffs,

vs.                                                                                              No. CIV 10-0360 JB/WDS

GERALD SHELDON, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
ANGELO LOVATO, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
THE CITY OF ALBUQUERQUE and
THE ALBUQUERQUE POLICE DEPARTMENT,

       Defendants.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Re-Open Discovery for a Limited Purpose, filed August 12, 2011 (Doc. 33)("Motion"). The Court held a hearing on December 6, 2011. The primary issue is which of the materials, if any, from the internal-affairs investigation inquiring into Defendant Angelo Lovato's alleged conduct of leaving the scene of an accident, provided to the Court for its in camera review, should the Court require the Defendants to produce to Plaintiffs David Montoya and Michael Montoya. The Court has attached to this Memorandum Opinion and Order copies of all the physical documents provided to the Court for which the Court will require production either in a redacted or unredacted form. The Court will

---

[1]Because the Court is not including any information in this Memorandum Opinion and Order that the Defendants contend is confidential, i.e., has not already been disclosed, the Court will not file it under seal or ex parte. The Court will, however, file the attachments to this opinion ex parte to preserve the alleged confidentiality and to instruct the Defendants regarding which portion of the materials they have provided to the Court for in camera review they must produce.

require production of several of the digital photograph images that appear on Compact Disk 3, Bates number MONTOYA00076. The Court will require production of some of the contents of the videotaped interviews officer Louie Sanchez and officer G. Hicks[2] conducted with Lovato that appear on Compact Disk 1, Bates number MONTOYA00076. The Court will require production of some contents of the internal-affairs interviews conducted regarding Lovato's conduct that appear on the compact disc marked IA Interviews, Bates number MONTOYA00077. The Court will not require production of any portion of the audio cassette tape, labeled I-104-11 Angelo Lovato PDH and with a Bates number MONTOYA00074, that covers Lovato's pre-disciplinary hearing. Production will take place under a protective order so that the Montoyas will maintain the confidentiality of the materials from the internal-affairs investigation. The Montoyas may use these materials in this lawsuit but may not use the materials for any other purposes. The Defendants may produce more evidence than the Court has required to produce, such as producing documents or audio files in unredacted form, but the Court will only require them to produce certain portions of this evidence as specified in this Memorandum Opinion and Order.

**PROCEDURAL BACKGROUND**

On April 15, 2010, the Montoyas filed their Plaintiffs' Complaint for Civil Rights Violations. See Doc. 1 ("Complaint"). In Counts I through IV, they assert claims for violations of the Fourth Amendment to the United States Constitution against the Defendants, including claims of false arrest, excessive force, and unlawful detention. See Complaint at 6-8. In Count V, the Montoyas assert a malicious-prosecution claim. See Complaint at 8. On August 31, 2010, the parties adopted a Joint Status Report and Provisional Discovery Plan. See Doc. 14 ("JSR"). The parties agreed that

---

[2]The Court has attempted to locate the full first name of Hicks, but has unable to do so on the record before it. The physical documents available to the Court refer to him as G. Hicks.

discovery in this case would be complete by March 10, 2011.  See JSR at 8.  On September 10, 2010, the Honorable W. Daniel Schneider, United States Magistrate Judge, issued an order adopting the JSR.  See Order Adopting Joint Status Report and Provisional Discovery Plan at 1 (Doc. 17). On March 30, 2011, Judge Schneider issued a Scheduling Order that incorporated the parties' agreed-upon date of March 10, 2011 as "the termination date for discovery."  Doc. 26.

On August 12, 2011, the Montoyas filed their Motion seeking to re-open discovery.  See Doc. 33.  They ask the Court to grant them leave "to submit discovery requests directed to Defendant Angelo Lovato for the limited purpose of obtaining discoverable material concerning a criminal charge of leaving the scene of an accident, which allegations occurred after the close of discovery in this matter and are relevant to the issue of truthfulness."  Motion at 1.  On August 29, 2011, the Defendants filed their Defendants' Response to Plaintiffs' Motion to Re-Open Discovery for a Limited Purpose.  See Doc. 34 ("Response").  The Defendants argue that the Montoyas cannot show good cause to re-open discovery.  See Response at 4.  The Defendants contend that the costs of additional discovery outweigh the benefits.  See Response at 4-5.  They assert that the "Plaintiffs' desire to explore the facts and circumstances of the underlying incident pertaining the Leaving the Scene of an Accident citation issued to Defendant Angelo Lovato bears absolutely no relevance to the claims and defenses raised in this lawsuit."  Response at 5.  The Defendants argue that the Montoyas' claims under the Fourth Amendment depend upon objective standards as opposed to the officers' subjective considerations.  See Response at 6.

At the hearing on December 6, 2011, the Court requested that the Defendants send a letter to the Court and opposing counsel to clarify whether any documents exist as part of an internal investigation and to include the equivalent of a privilege log.  See Transcript of Hearing at 12:23-

13:10 (taken December 6, 2011)(Court)("Tr.").³  On December 9, 2011, Stephanie Griffin, the Defendants' counsel, submitted a letter to the Court.  See Letter from Stephanie M. Griffin to the Court (dated December 9, 2011), filed December 9, 2011 (Doc. 36)("Dec. 9, 2011 Letter").  Ms. Griffin relates that she has "been advised that there is an investigation" into Lovato's conduct and "that this investigation has concluded."  Dec. 9, 2011 Letter at 1.  She states that she is "in the process of obtaining a copy of the investigation" and that she will provide a copy of the documents to the Court along with a privilege log, so that the Court "may determine, what, if any, information should be disclosed to Plaintiff pursuant to a protective order."  Dec. 9, 2011 Letter at 1.

On approximately March 9, 2012, the Court received for its in camera review a copy of the Albuquerque Police Department's file regarding Lovato's internal-affairs investigation.  See Letter from Stephanie M. Griffin to the Court at 1 (dated March 9, 2012)("March 9, 2011 Letter").  The March 9, 2011 Letter contained along with it no privilege log or document resembling a privilege log.  On March 20, 2012, the Court granted the Motion in part and denied that Motion in part.  See Memorandum Opinion and Order at 1-2 (Doc. 39)("MOO").  Specifically, the Court held:

> The Court believes that the Plaintiffs have presented good cause for their request to re-open discovery.  Pursuant to the Plaintiffs' concession at the hearing, the Court will not permit the Plaintiffs to serve any requests for admission or requests for discovery to inquire into Lovato's conduct in relation to the alleged incident where he left the scene of an accident.  The Court will also not permit the Plaintiffs to conduct their requested deposition of Lovato, because the Court believes the incident in question is collateral and relates only to the issue of Lovato's credibility, and because the Court believes any relevant information from the internal affairs investigation into Lovato's conduct will provide the Plaintiffs with the information they seek.  Pursuant to the discussion at the December 6, 2011 hearing, the Court will conduct an in camera review of the internal affairs investigation into Lovato's conduct and determine whether any of the documents underlying that investigation should be disclosed to the Plaintiffs.

---

³The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

MOO at 1-2. The Court stated that it would permit the Montoyas to "ask questions of Lovato about specific instances of conduct that bore on his character for truthfulness" and further held:

> They could also ask these same questions to any witnesses who were to testify about Lovato's character for truthfulness. See Fed. R. Evid. 608(b). As one of the advisory committee's notes to rule 608(b) provides: "[S]pecific instances may be inquired into on cross-examination of the principal witness[, whose character has been attacked,] or of a witness giving an opinion of his character for truthfulness." Fed. R. Evid. 608(b) advisory committee's note to 1972 proposed rule. The evidence from the internal affairs investigation could assist the Plaintiffs in formulating questions to attack Lovato's credibility during their examination of Lovato. "Once a defendant takes the stand, her credibility is at issue as with any other witness." United States v. Schuler, 458 F.3d 1148, 1155 (10th Cir. 2006). Leaving the scene of an accident is conduct that is potentially probative of a witness' character for truthfulness or untruthfulness, particularly when that witness is a police officer who a jury would presume would be familiar with the law and its requirements. It is also notable that there was a subsequent internal affairs investigation into Lovato's behavior. Courts have permitted cross-examination of parties or witnesses on similar matters as, including matters that were arguably less probative of a witness' character for truthfulness than this line of questioning. See United States v. Davis, 183 F.3d 231, 256-57 (3d Cir. 1999)(concluding that detailed questioning of an officer, in a case regarding criminal conduct in which the officer had allegedly engaged, including obstruction of justice and witness tampering, about an officer's suspension for misappropriating gasoline for personal use and for destroying a young man's subway pass and lying to internal affairs about it were sufficiently probative of truthfulness); United States v. Sellers, 906 F.2d 597, 603 (11th Cir. 1990)(holding that, in a case involving criminal charges for violating a suspect's constitutional rights, cross-examination of defendant about why he left or was fired from his job as a security officer because of claiming expenses to which he was not entitled was probative of the defendant's character for truthfulness); Lewis v. Baker, 526 F.2d 470, 475-76 (2d Cir. 1975)(concluding that cross-examination of plaintiff about an employment application in which he falsely stated he had not received psychiatric treatment within the past five years was directly relevant to party's capacity to truth-telling under the circumstances of the case). The Court, of course, retains discretion to limit this line of questioning if it becomes cumulative or becomes too remote in comparison to the matters at issue in the case. See United States v. Schuler, 458 F.3d at 1155 ("Consequently, under Federal Rule of Evidence 608(b), it is within the discretion of the district court to decide whether a defendant may be cross-examined about prior conduct concerning her character for truthfulness, subject always to the balancing test of Federal Rule of Evidence 403."). The Court also may not allow extrinsic proof of leaving the scene of the accident and may require the Plaintiffs to accept Lovato's answer.

MOO at 16-18 (alterations in original).

**RELEVANT LAW REGARDING DISCOVERY**

The scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense," and information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). As a result, these rules "contemplate[] discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." Anaya v. CBS Broadcasting, Inc., 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.). "This standard reflects the fact that relevance for discovery purposes is broader than the scope of admissible evidence for trial purposes." United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, No. 08-0501, 2009 WL 2426194, at *4 (D.N.M. July 20, 2009)(Browning, J.).

It is the burden of the party invoking the attorney-client privilege to establish the applicability of that privilege, which is "narrowly construed." Foster v. Hill, 188 F.3d 1259, 1264 (10th Cir. 1999). Accord Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995). It is therefore insufficient for a party to assert, without more, that documents sought are privileged. See Fed. Deposit Ins. Corp. v. United Pac. Ins. Co., 152 F.3d 1266, 1276 n.6 (10th Cir. 1998). "The same rule is true for assertions that the work-product doctrine protects documents." United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4. Accord Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

"Rule 26(b)(5) requires that a party which withholds information on the grounds that it is privileged or subject to protection as trial-preparation material must identify, in some detail, which information is privileged and describe it in a way that allows the opposing party to ascertain the

applicability of the privilege." United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4. It is "well settled that failure to produce a privilege log . . . may be deemed waiver of the privilege." Anaya v. CBS Broadcasting, Inc., 251 F.R.D. at 651. Accord Fed. R. Civ. P. 26(b)(5) advisory committee note to 1993 amendments (explaining that to withhold material without providing the information required may be viewed as a waiver of the privilege or protection). "Although 'minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances bear against finding a waiver,' the absence of evidence that the violating party ever produced a privilege log may justify a waiver of the privilege." United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4.

## LAW REGARDING PROTECTIVE ORDERS

"Federal district courts have broad discretion over discovery." Morales v. E.D. Etnyre & Co., 229 F.R.D. 661, 662 (D.N.M. 2005)(Browning, J). Rule 26(c) of the Federal Rules of Civil Procedure provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which order may include forbidding disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A). Accord Miller v. Regents of the Univ. of Colo., 188 F.3d 518, 1999 WL 506520, at *12 (10th Cir. 1999)(unpublished table decision)("The district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties."). "Federal Rule of Civil Procedure 26(c) expressly limits who may move for a protective order to parties or the person from whom discovery is sought." SEC v. Dowdell, 144 F.App'x 716, 722-23 (10th Cir. 2005)(unpublished)(noting that a third party may not move for a rule 26(c) protective order if it is not a party to the underlying action, has not intervened, or has

not been served a subpoena seeking discovery). "It is the party seeking the protective order who has the burden to show good cause for a protective order." Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.). Accord Murphy v. Gorman, 271 F.R.D. 296, 303 (D.N.M. 2010)(Browning, J.). The party seeking the protective order must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)(internal quotation marks omitted). Although rule 26(c) is silent as to the time within which the movant must file for a protective order, the United States Court of Appeals for the Tenth Circuit has held that "a motion under [rule] 26(c) for protection . . . is timely filed if made before the date set for production." In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 622 n.2 (10th Cir. 1982)(quoting language from In re Halkin, 598 F.2d 176, 193 (D.C. Cir. 1979), overruled on other grounds by Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984)).

## LAW REGARDING RULE 608 EVIDENCE

Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness. See Montoya v. Sheldon, No. 10-0360, 2012 WL 1132505, at *5 (D.N.M. Mar. 20, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.). Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a). "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness."

United States v. Beltran-Garcia, 338 F.App'x 765, 770 (10th Cir. 2009)(unpublished). Rule 608(b) lays out the mechanics of using evidence of specific instances of conduct for impeachment purposes:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> > (1)  the witness; or
> >
> > (2)  another witness whose character the witness being cross-examined has testified about.
>
> By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

Fed. R. Evid. 608(b). As the advisory committee notes to this rule further flesh out, rule 408 "bars evidence of specific instances of conduct of a witness for the purpose of attacking or supporting his credibility" except in the following circumstances: "(1) specific instances are provable when they have been the subject of criminal conviction, and (2) specific instances may be inquired into on cross-examination of the principal witness or of a witness giving an opinion of his character for truthfulness." Fed. R. Evid. 608 advisory committee's note to 1972 proposed rule.

"Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence." United States v. Beltran-Garcia, 338 F.App'x at 770.

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993). Rule 608 was amended in 2003

"to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment." Fed. R. Evid. 608 advisory committee's note to 2003 amendment. Professors Charles Alan Wright and Victor James Gold recognized that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 C. Wright & V. Gold, Federal Practice and Procedure § 6117, at 86 (1993 & Supp. 2011). Professors Wright and Gold confirm that, as a result of the 2003 amendment, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness." 28 C. Wright & V. Gold, supra § 6117, at 14 (Supp. 2011).

## ANALYSIS

The Court has attached to this Memorandum Opinion and Order copies of all the physical documents provided to the Court for which the Court will require production either in a redacted or unredacted form. The Court will require production of several of the digital photograph images that appear on the Compact Disk 3, Bates number MONTOYA00076. The Court will require production of some of the contents of the videotaped interviews Sanchez and Hicks conducted with Lovato that appear on Compact Disk 1, Bates number MONTOYA00076. The Court will require production of some contents of the internal-affairs interviews conducted regarding Lovato's conduct that appear on the compact disc marked IA Interviews, Bates number MONTOYA00077. The Court will not require production of any portion of the audio cassette tape, labeled I-104-11 Angelo Lovato PDH and with a Bates number MONTOYA00074, that covers Lovato's pre-disciplinary hearing. The Defendants may produce more evidence than the Court has required to produce, such as producing

documents or audio files in unredacted form, but the Court will require them to produce only certain portions of this evidence as specified in this Memorandum Opinion and Order.

The Court notes, as a threshold matter, that the Defendants have provided to the Court no privilege log, the equivalent of a privilege log that raises other bases for non-production, or any other guidance to determine what documents the Court should produce.  The Defendants originally argued in their Response that the evidence was not relevant and that it was unduly burdensome for them to produce the evidence, but have asserted no objection to the production of the evidence on the basis of privilege or any particularized argument regarding confidentiality concerns.  The Court has attempted to locate an applicable privilege that would cover these materials but has not found one.  The Court has tried its best to determine, without any guidance from the Defendants, which documents, either in a redacted or unredacted form, the Defendants should produce.  The Defendants have stated that the Court should disclose the in camera materials at issue pursuant to a protective order, and the Court acknowledges the potentially sensitive nature of an internal-affairs investigation.  Thus, the Court will permit disclosure of the requested materials under a protective order.  See Kelly v. Romines, No. MC 11-0047, 2012 WL 681806, at *6 (D.N.M. Feb. 27, 2012)(Browning, J.)(citing Fed. R. Civ. P. 26(c))("The rules do not except confidential agreements from discovery, rather they provide that confidential information should be subject to a protective order.").  Production will take place under a protective order so that the Montoyas will maintain the confidentiality of the materials from the internal-affairs investigation.  The Montoyas may use these materials in this lawsuit, but may not use the materials for any other purposes.

**I.     THE COURT WILL REQUIRE PRODUCTION OF SOME OF THE PHYSICAL DOCUMENTS PRODUCED FOR ITS IN CAMERA REVIEW, EITHER IN REDACTED OR UNREDACTED FORM.**

The Court has reviewed in camera the physical documents that the Defendants have

produced.  Consistent with its MOO granting the Motion, the Court has gone through the physical documents to locate evidence that the Montoyas might be able to use to attack Lovato's credibility under rule 608(b) of the Federal Rules of Evidence.  In it MOO, the Court stated that the Montoyas may "ask questions of Lovato about specific instances of conduct that b[ear] on his character for truthfulness."  MOO at 16.  The Court has gone through and redacted some documents by indicating in pen which portions of the documents must be produced.  Those portions of the documents are also highlighted.  Some of the documents are bracketed in their entirety, and thus production of the entire document is required.  The Court has attached a set of documents to this Memorandum Opinion and Order that will instruct the Defendants regarding which portion of the physical documents they must produce.

## II.     THE COURT WILL REQUIRE PRODUCTION OF SOME OF THE DIGITAL PHOTOGRAPH IMAGES ON COMPACT DISK 3.

The Court will require production of several of the digital photograph images that appear on the Compact Disk 3, Bates number MONTOYA00076, provided to the Court.  Consistent with its MOO granting the Motion, the Court has gone through these images to locate evidence that the Montoyas may be able to use to attack Lovato's credibility under rule 608(b) of the Federal Rules of Evidence.  The Court will require production of the following images on Compact Disk 3, Bates number MONTOYA00076: (i) DSCN1039.jpg; (ii) DSN1040.jpg; (iii) DSCN1046.jpg; (iv) DSCN1048.jpg; (v) DSCN1049.jpg; (vi) DSCN1050.jpg; (vii) DSCN1052.jpg; (viii) DSCN1058.jpg; (ix) DSCN1059.jpg; (x) DSCN1060.jpg; (xi) DSCN1061.jpg.

## III.    THE COURT WILL REQUIRE PRODUCTION OF SOME PORTIONS OF THE VIDEO INTERVIEW OF LUCERO THAT SANCHEZ AND HICKS CONDUCTED.

The Court will require production of some of the contents of the videotaped interviews Sanchez and Hicks conducted with Lovato that appear on Compact Disk 1, Bates number

MONTOYA00076.  There are two video files on this compact disk: (i) PICT0007.avi; and (ii) PICT0008.avi.  The Court has reviewed these videotaped interviews and will require production of some portions of the interviews.  The Court will refer to portions of the videotaped interviews by the time-stamps that appear in the lower right corner of each video file.  The Court will require production of the following portions of PICT0007.avi: (i) 01:48:00-49:15; (ii) 01:50:45-46:00; (iii) 01:52:20-53:00; and (iv) 01:53:30-02:10:29.  The Court will require production of the following portions of PICT0008.avi: (i) 02:10:30-27:30; and (ii) 02:30:50-31:22.  The Defendants may produce the entire videotaped interviews if they choose to do so, but the Court will require production only of these portions.

### IV.  THE COURT WILL REQUIRE PRODUCTION OF SOME PORTIONS OF THE INTERNAL AFFAIRS INTERVIEWS.

The Court will require production of some contents of the internal-affairs interviews conducted regarding Lovato's conduct that appear on the compact disc marked IA Interviews, Bates number MONTOYA00077.  There are six audio files on this compact disk: (i) Track01.cda; (ii) Track 02.cda; (iii) Track03.cda; (iv) Track04.cda; (v) Track 05.cda; (vi) Track06.cda.  Because there are no time-stamps for these audio files, the Court will refer to portions of these audio files based on the location of the material on each audio file.  The Court will do so by referring to the particular locations on the audio track, based on the track length as rendered in a compact disk player or a computer program that plays audio files, with relevant material.  The Court will require production of the following portions of Track01.cda: (i) 03:50-09:15; and (ii) 10:35-20:24.  The Court will require production of the following portions of Track02.cda: 02:40-06:30.  The Court will require production of the following portions of Track03.cda: 0:45-12:54.  The Court will require production of the entirety of Track04.cda.  The Court will require production of the following

portions of Track05.cda: 00:35-1:50. The Court will require production of the following portions of Track06.cda: 00:20-03:30.

## V.   THE COURT WILL NOT REQUIRE PRODUCTION OF ANY PORTION OF THE AUDIO CASSETTE TAPE CONTAINING A RECORDING OF THE PRE-DISCIPLINARY HEARING.

The Court will not require production of any portion of the audio cassette tape, labeled I-104-11 Angelo Lovato PDH and with a Bates number MONTOYA00074, provided to the Court that covers Lovato's pre-disciplinary hearing. There is virtually no content on this audio cassette tape. The limited content available on this cassette tape is not relevant to Lovato's credibility.

**IT IS ORDERED** that the Court will require production of the materials provided for its in camera review as stated in this Memorandum Opinion and Order. Production will take place under a protective order so that Plaintiffs David Montoya and Michael Montoya will maintain the confidentiality of the materials from the internal-affairs investigation. The Montoyas may use these materials in this lawsuit, but may not use the materials for any other purposes. The Defendants may produce more evidence than the Court has required them to produce, such as producing documents or audio files in unredacted form, but the Court will require them to produce only certain portions of this evidence as specified in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Timothy M. Padilla
Timothy M. Padilla & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Stephanie M. Griffin
Benjamin I. Sherman
  Assistant County Attorneys
City of Albuquerque
Albuquerque, New Mexico

    *Attorneys for the Defendants*