IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID MONTOYA and
MICHAEL MONTOYA,

    Plaintiffs,

vs.               No. CIV 10-0360 JB/WDS

GERALD SHELDON, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
ANGELO LOVATO, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
THE CITY OF ALBUQUERQUE and
THE ALBUQUERQUE POLICE DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' First Motion In Limine, filed

September 4, 2012 (Doc. 55)("Motion in Limine"). The Court held a hearing on September 19,

2012.  The primary issues are: (i) whether the Court should allow Defendants to cross-examine

Plaintiff Michael Montoya about past traffic violations for the purpose of establishing M. Montoya's

knowledge that he was required to sign the citation Defendant Officer Gerald Shelden[1] provided to

him in lieu of arrest; (ii) whether the Court should allow the Defendants to cross-examine M.

Montoya on his past arrests to rebut his demand for emotional distress damages resulting from the

---

[1]The Defendant Gerald Shelden's name is spelled inconsistently throughout the documents that both parties submitted, in some cases spelling the last vowel in Shelden's name with an 'o,' and in some cases with an 'e.'  The court reporter, Paul Baca, who recorded Shelden's deposition on March 11, 2011, spells his name with an e.  Because it is standard practice for a court reporter to ask the spelling of the deponent, and because of the Court's respect for the careful work of Mr. Baca, the Honorable Judith C. Herrera, United States District Judge's court reporter, the Court will adopt that spelling of Shelden's name for the entirety of this Memorandum Opinion and Order.

Defendants' alleged false arrest; (iii) whether the Court should allow the Defendants to introduce evidence of M. Montoya's prior charges and arrests for abusing Marcy Sanner, a witness testifying on M. Montoya's behalf, to provide evidence of bias; and (iv) whether the Court should allow the Defendants to attempt to establish a bias of M. Montoya or of Defendant David Montoya against the Defendants by allowing them to cross-examine whether the Defendant Albuquerque Police Department has arrested or charged them before or after the Defendants' alleged constitutional violation in this case. The Court will grant in part and deny in part the Montoyas' Motion in Limine. Because one of the issues in this case is whether M. Montoya's refusal to sign the citations gave Sheldon probable cause to arrest M. Montoya, the Court will allow the Defendants to ask whether M. Montoya had been cited for traffic violations before the citations in this case, and thus knew he was obligated to sign those citations. The Court will allow the Defendants to rebut M. Montoya's demand for emotional distress damages and help the jury measure M. Montoya's emotional distress damages by inquiring into whether he has been arrested in the past and the number of times he has been arrested in the past.[2] The bias of a witness is always at issue in a case. The Court will therefore allow the Defendants to ask Sanner whether M. Montoya has abused her in the past and whether she called the police in those instances. The Court will also allow the Defendants to ask

_____

[2]The Court refers to the events "in the past" to mean that all events, both before and after M. Montoya's arrest in this case, because the Court understands M. Montoya to be demanding emotional distress damages not only at the time of the arrest, but ongoing through the present. If M. Montoya is claiming that this incident caused ongoing emotional distress damages and lost job opportunities, from which he continues to suffer, then M. Montoya's arrests after incident are relevant to his ongoing emotional distress and lost job opportunities. If, at trial, M. Montoya only demands emotional distress damages from the isolated incident, but does not claim that the damage is ongoing, M. Montoya's arrests subsequent to the underlying incident in this case are not relevant and, therefore, inadmissible to rebut his emotional distress damages. His damages claim for lost job opportunities, on the other hand, would still likely be lessened by M. Montoya's subsequent arrests, and the subsequent claims are thus relevant and admissible to the extent that M. Montoya pursues those damages at trial.

M. Montoya and D. Montoya whether the Defendant Albuquerque Police Department has criminally charged or arrested them, other than with the Defendants' alleged false arrest in this case.  Although the evidence that the Court is allowing the Defendants to admit for a proper purpose has probative value, because prior arrests and criminal charges has a danger of unfair prejudice to the Montoyas, the Court will not allow the Defendants to pursue the evidence any further unless the Montoyas or Sanner open the door to do so at trial.

## FACTUAL BACKGROUND

On April 16, 2007, Michael Montoya was driving a vehicle with his brother, David Montoya, in the passenger seat, southbound on 8th Street near the intersection with Bridge Street in Albuquerque, New Mexico, when Defendant Albuquerque Police Department ("APD") Officer Gerald Shelden informed M. Montoya and D. Montoya that they needed to pull over.  See Plaintiffs' Complaint for Civil Rights Violations ¶¶ 11-13, at 3 (Doc. 1)("Complaint").  When Shelden informed M. Montoya that he pulled him over because M. Montoya was not wearing a seatbelt, M. Montoya produced a note from his physician, Dr. Baldwin, excusing M. Montoya from wearing a seatbelt because of a medical condition.  See Complaint ¶¶ 14-15, at 3-4.  Shelden looked at M. Montoya's note, told him that "it was a 'bogus ass note,'" and asked M. Montoya to follow Shelden back to the back of his police car, where he proceeded to write M. Montoya multiple citations.  See Complaint ¶¶ 17-19, at 4.  When Shelden asked M. Montoya to sign the citations, M. Montoya "asked a question regarding one of the violations to clarify a number on the violation, when Defendant Shelden became enraged, and cursed at Plaintiff Michael Montoya, and began to physically assault him," grabbing M. Montoya by the back of the head and "repeatedly slamm[ing] his head into the truck of [Shelden's] police car."  Complaint ¶¶ 21-22, at 4.  Shelden then placed M. Montoya under arrest.  See id. ¶ 23, at 5.

Upon seeing Shelden assaulting M. Montoya, D. Montoya got out of the car to try to reason with Shelden and the other Defendant, APD Officer Angelo Lovato.  See Complaint ¶ 24, at 5.  The Defendants yelled at D. Montoya to get back in the car.  See id. ¶ 25, at 5.  D. Montoya got back in the car, and when one of the officers approached the car, D. Montoya locked the car door.  See id. ¶¶ 26-27, at 5.  When the officer pulled out a weapon to break the window, D. Montoya unlocked the car door, "got out of the car and put his hands in the air to cooperate." Id. ¶¶ 28-29, at 5.  "He was immediately assaulted by the Defendant Officers, placed in handcuffs, and the Defendant Officers utilized mace on him."  Id. ¶ 29, at 5.  D. Montoya was then placed in the police car, with no air holes and the windows rolled up, and when he pleaded for air he was denied.  See id. ¶ 30, at 5.  M. Montoya, "upon informing Defendant Shelden he suffered from claustrophobia, was forced to place a 'gladiator' type helmet on his head, and sit in the back of the police car, while the Defendant Officer rolled up the windows," turned the heat on high and left M. Montoya there for two hours.  Id. ¶ 31, at 5-6.  M. Montoya was charged with disorderly conduct, head lights required, seatbelt use required, and no possession of a driver's license; all of these charges were thereafter dismissed.  See id. ¶ 32, at 6.  D. Montoya "was charged with resisting/evading/obstructing a police officer[,] failure to obey police & fire department, and disorderly conduct," all of which were dismissed.  Complaint ¶ 33, at 6.

Sanner, M. Montoya's girlfriend and the mother of his child, was with the Montoyas at their home before the Montoyas left and before Shelden cited them.  See Transcript of Hearing at 29:10-12 (September 19, 2012)(Oliveros)("Tr.").[3]  When the Montoyas did not return, she went out to look for them, and drove by the Montoyas as Shelden and Lovato were arresting them.  See Tr. at 29:12-

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

18 (Oliveros).  As she drove by the scene, she saw D. Montoya being detained on the ground and observed that his face was red.  See Tr. at 29:15-16 (Oliveros).

Both Montoyas have criminal records, both having been arrested and/or charged with other crimes in the past.  See Supplement to Plaintiffs' First Motion in Limine [Doc. 55] at 1-2, filed September 12, 2012 (Doc. 62)("MIL Supplement").  Both Montoyas had also been cited for multiple traffic violations before Shelden cited them on April 17, 2007.  See id. at 1-2.  M. Montoya has been arrested multiple times, both before and after April 17, 2007, and has been arrested for charges related to domestic abuse of Sanner.  See Supplement to Plaintiffs' First Motion in Limine [Doc 55] at 2, filed September 12, 2012 (Doc. 62)("MIL Supplement").  Though it was not Defendant APD arresting, charging, or citing the Montoyas in all of these instances, a number of the instances did involve the Albuquerque Police Department.

## PROCEDURAL BACKGROUND

On April 15, 2010, the Montoyas filed their Complaint asserting claims for violations of the Fourth Amendment to the United States Constitution against the Defendants, including claims of false imprisonment and arrest, excessive force, and unlawful detention.  See Complaint ¶¶ 37, 41, 44, 47, at 6-8.  In Count V, the Montoyas assert a malicious-prosecution claim.  See Complaint ¶ 48, at 8.

On September 4, 2012, the Montoyas filed their Motion in Limine asking the Court to exclude any evidence prohibited under the rule 404 of the Federal Rules of Evidence, and, in particular, "any criminal history of Plaintiff Michael Montoya."  Motion in Limine at 1.  In the MIL Supplement, the Montoyas anticipate that the Defendants will "seek to elicit inadmissible evidence of the Plaintiffs' prior and/or subsequent bad acts . . . [including] traffic citations received by David Montoya before and after the incident giving rise to Plaintiffs' Complaint."  MIL Supplement at 1.

They also seek to exclude any evidence that D. Montoya was with an unrelated individual when that individual was "arrested for possession of a controlled substance and possession of drug paraphernalia on November 11, 2005." MIL Supplement at 1. The Montoyas also seek to exclude M. Montoya's misdemeanor traffic charges and arrests, asserting that M. Montoya "is not a felon and has had no charges related to dishonesty." MIL Supplement at 2. The Montoyas state that M. Montoya's charges include: (i) "misdemeanor battery and assault of a household member in 2009, . . . and felony domestic violence in DV2639/11;" (ii) "misdemeanor crimes and citations;" and (iii) a 2003 charge in state court for "attempt to commit a felony and related misdemeanor charges, including aggravated driving while intoxicated." Motion to Supplement at 2. The Montoyas contend that " there is no proper purpose for the admission of . . . [these] identified or any other bad acts other than to show that the Plaintiffs are prone to disorderly conduct similar to the charges that the Defendants levied against them." Motion to Supplement at 3. They assert that rule 404(b) prohibits the admission of the evidence, and if it is admissible under rule 404(b), the Court should exclude it under rule 403, because the evidence is "particularly prejudicial in light of the often emotional and charged reaction to drug, domestic violence and drunk driving charges." Motion to Supplement at 3.

The Defendants filed the Defendants' Response to Plaintiffs' First Motion in Limine and Supplement to Plaintiffs' First Motion in Limine on September 17, 2012. See Doc. 64 ("MIL Response"). The Defendants argue that the evidence which the Montoyas seek to exclude is probative, admissible under rule 404(b), and "also admissible for purposes of establishing bias, and to rebut Plaintiff Michael Montoya's claim for damages." MIL Response at 1. They contend that M. Montoya's previous traffic citations are admissible to establish M. Monotya's knowledge of his obligation to sign the traffic citations in lieu of arrest, because one of the issues in the case is

"whether there was probable cause to arrest M. Montoya for his refusal to sign the traffic citations." MIL Response at 2.  They assert that, because APD has arrested and prosecuted both Montoyas, the Court should permit the Defendants to explore their arrests on cross-examination to establish the Montoyas' bias and motive to lie.  MIL Response at 2.  The Defendants note that M. Montoya is seeking emotional distress damages and lost job opportunities because of the Defendants' conduct, and they argue that "[e]vidence of [M. Montoya's] criminal history should be admitted to rebut his claim that he was somehow emotionally harmed as a result of his arrest."  MIL Response at 3.  The Defendants "seek to cross examine Plaintiff Michael Montoya into [sic] whether his prior criminal history, arrests, and other traffic citations cause him more emotional trauma than the subject incident involving defendants."  MIL Response at 4.

The Court held a hearing on September 19, 2012.  At the hearing, the Montoyas asserted that M. Montoya is "not a felon," because he has been charged only with criminal offenses in the past, but all of the charges were dismissed.  Tr. at 20:8-17 (Oliveros).  They stated that, to the extent that the Defendants want to inquire into M. Montoya's charges on cross-examination to rebut any claims of emotional distress damages, the charges are of unrelated criminal activity and therefore irrelevant.  See Tr. at 20:16-20 (Oliveros).  The Montoyas stated that, if the Court does find the charges relevant, because M. Montoya was not convicted of any of the charges, the danger of unfair prejudice would substantially outweigh any probative value of an inquiry into the charges, and the Court should therefore prevent the Defendants from inquiring into the area under rule 403.  See Tr. at 20:20-23 (Oliveros).  The Montoyas also asserted that M. Montoya's charges of domestic violence against Sanner are especially prejudicial, because they would tend to evoke an emotional response from the jury.  See Tr. at 21:2-15 (Oliveros).

The Defendants responded that M. Montoya's trafffic citations before April 16, 2007, are

-7-

relevant to establishing his knowledge of the obligation to sign the traffic citations and that his failure to do so would give Shelden probable cause to arrest him.  See Tr. at 22:2-10 (Griffin).  The Court asked if the parties would agree to the Court limiting the Defendants to asking M. Montoya: (i) whether he has been stopped and cited for traffic violations in the past; and (ii) that he knew that, if he refuses to sign the citations he can be arrested.  See Tr. at 22:11-16 (Court).  Both the Montoyas and the Defendants agreed that, if M. Montoya were to answer those questions truthfully and correctly, they would agree with the Court so restricting cross-examination.  See Tr. at 22:23-23:5 (Oliveros, Court, Griffin).  The Defendants contended that, with regard to his other arrests, because M. Montoya is seeking emotional distress damages, the Defendants wish to cross examine M. Montoya on whether he felt he was wrongfully arrested for the previous arrests, and whether he also felt emotionally distressed from those false arrests.  See Tr. at 23:12-16 (Griffin).  The Defendants asserted that the domestic violence charges were probative of possible bias of Sanner, a witness and the alleged victim of the domestic violence charges, and of the possibility of M. Montoya's undue influence over her testimony.  See Tr. at 23:17-24 (Griffin).  The Court stated that it believe the past arrests are admissible to rebut the emotional distress claim, and that it is permissible to inquire into why this arrest was different from M. Montoya's other arrests, but the specific nature of the other arrests is not relevant to the emotional distress claim and are not to be explored, nor are the charges against M. Montoya for which he was not arrested.  See Tr. at 24:8-24(Court).  The Court also stated that, in addition to the number of times M. Montoya was arrested, the number of times APD arrested M. Montoya is also relevant, as it tends to establish M. Montoya's bias against APD.  See Tr. at 26:17-23 (Court, Griffin).

The Defendants asked for clarification whether they would be permitted to inquire into M. Montoya's domestic violence charges.  See Tr. at 28:8-17 (Griffin).  The Court asked whether the

Defendants would agree to asking Sanner only whether M. Montoya abused her, and then whether she called the police in response to the abuse, but not associating those calls with M. Montoya's arrests.  <u>See</u> Tr. at 28:18-21 (Court).  The Defendants stated that they would agree to those boundaries for Sanner's cross-examination.  <u>See</u> Tr. at 28:22 (Griffin).  The Montoyas asserted that the Court should not let the Defendants inquire into M. Montoya's abuse of Sanner during her cross-examination, because, in light of Sanner providing only limited testimony, the danger of prejudice to M. Montoya substantially outweighs the probative value of M. Montoya's abuse of Sanner in disputing her credibility.  <u>See</u> Tr. at 29:9-31:7 (Griffin, Court).  The Court responded that the evidence is probative of Sanner's credibility, because she is testifying on M. Montoya's behalf to show that the Defendants' arrest has emotionally damaged him, and the evidence's possible prejudice to the Montoyas does not outweigh its probative value in showing her bias and credibility. <u>See</u> Tr. At 31:8-13 (Court).  The Montoyas argued that, while the evidence's danger of prejudice to M. Montoya might not outweigh its probative value, because Sanner is not in a relationship with D. Montoya, the Court should exclude it as unfairly prejudicial to D. Montoya.  <u>See</u> Tr. at 31:14-18 (Oliveros).  The Court stated that it would not rule at the time on the admissibility of M. Montoya's abuse of Sanner, but that it is inclined to allow its admission into evidence, because the possible prejudice to either or both of the Montoyas does not substantially outweigh the probative value of the evidence to Sanner's credibility.  <u>See</u> Tr. at 31:20-21 (Court).

## <u>LAW REGARDING RULE 403</u>

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed.R.Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's

probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).  The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States recently noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the

crime charged.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."  United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## LAW REGARDING APPLICATION OF RULE 404

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion."  Fed. R. Evid. 404(a).  "This rule is necessary because of the high degree of prejudice that inheres in character evidence.  In most instances, [the United States Court of Appeals for the Tenth Circuit is] unwilling to permit a jury to infer that an individual performed the alleged acts based on a particular character trait."  Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(citing rule 404 advisory notes).

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  The same evidence, however, may be admissible for other purposes.  Permissible purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  See Fed. R. Evid. 404(b).  The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  The Tenth Circuit has consistently applied that test:

To determine whether Rule 404(b) evidence was properly admitted we look to [a]

-11-

> four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the
> evidence must be relevant; (3) the trial court must make a Rule 403 determination
> of whether the probative value of the similar acts is substantially outweighed by its
> potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court
> shall, upon request, instruct the jury that evidence of similar acts is to be considered
> only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185

F.3d 1125 (10th Cir. 1999)).  See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002);

United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal

defendant from risking conviction on the basis of evidence of the defendant's character.  See United

States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham, Federal

Practice and Procedure: Evidence § 5239, at 428, 436-37 & 439 (1991).  In United States v. Phillips,

599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in

addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because
> he is guilty of the crime charged but because of his prior or subsequent misdeeds;
> and (2) that the jury will infer that because the accused committed other crimes he
> probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

The Tenth Circuit has stated that district courts must "identify specifically the permissible

purpose for which such evidence is offered and the inferences to be drawn therefrom."  United

States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d

1426, 1436 (10th Cir. 1985)).  "[A] broad statement merely invoking or restating Rule 404(b) will

not suffice."  United States v. Youts, 229 F.3d at 1317.  "Uncharged, unrelated crimes or bad acts

may be probative to show knowledge, . . . whether the acts involved previous conduct or conduct

subsequent to the charged offense if the uncharged acts are similar to the charged crime and

sufficiently close in time." United States v. Valencia-Montoya, No. CR 11-2990, slip op. at 11 (D.N.M. Sep. 17, 2012)(Browning, J.)(citing United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)).   See Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986)(per curium)(holding that admission of evidence of prior arrests proper for purposes of determining whether the plaintiff's running from the police officers was result of a mistake or rather to avoid arrest).

        The United States Court of Appeals for the First Circuit has held that evidence of a plaintiff's prior arrest is admissible to rebut to rebut a claim of emotional distress damages in a 42 U.S.C. § 1983 claim.   See Udemba v. Nicoli, 237 F.3d 8, 15 (1st Cir. 2001)(holding that, where plaintiff alleged emotional distress stemming from publication of his arrest in the newspaper, evidence of publication of a prior arrest for "striking his spouse" was relevant to "the extent of damages attributable to emotional distress.").   The Court, in Mata v. City of Farmington, 798 F.Supp.2d. 1215 (D.N.M. 2011), addressed the admissibility of a plaintiff's prior arrests for purposes of rebutting a claim of emotional distress damages in a § 1983 case.   The Court found that admission of the plaintiff's arrest to contest the plaintiff's "asserted emotional distress damages . . . [and] to assist the jury in measuring the extent of [the plaintiff]'s damages is a legitimate, non-character based use of the evidence."   Mata v. City of Farmington, 798 F.Supp.2d at 1238.

## LAW REGARDING RULE 608 EVIDENCE

        Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness.   See Montoya v. Shelden, No. 10-0360, 2012 WL 1132505, at *5 (D.N.M. Mar. 20, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.).   Rule 608(a) states:

        A witness's credibility may be attacked or supported by testimony about the

witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a).  Rule 608(b) provides the rule for admission of specific instances of conduct:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
> **(1)** the witness; or
>
> **(2)** another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).  "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness."

United States v. Beltran-Garcia, 338 F.App'x 765, 770 (10th Cir. 2009)(unpublished).   "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence."   United States v. Beltran-Garcia, 338 F.App'x at 770.

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction

-14-

impeachment." Fed.R.Evid. 608 advisory committee's note to 2003 amendment. It is thus "permissible impeachment to expose a witness's bias." United States v. Baldridge, 559 F.3d 1126, 1135 (10th Cir. 2009)(citing United States v. Abel, 469 U.S. 45, 51 (1984)). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. at 52 (1984). Thus, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence." Montoya v. City of Albuquerque, No. CIV 03-0261, 2004 WL 3426435, at *4 (D.N.M. May 18, 2004)(Browning, J.). The Tenth Circuit describes bias, based on its definition at common law, as "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party." United States v. Baldridge, 559 U.S. F.3d at 1135 (citing United States v. Abel, 469 U.S. at 52).

The United States Court of Appeals for the Ninth Circuit has held that evidence of a Plaintiff's prior arrest by the police department against whom the plaintiff is bringing a § 1983 claim are relevant and admissible for purposes of establishing the plaintiff's bias against the police department. See Heath v. Cast, 813 F.2d 254, 259-260 (9th Cir. 1987)(holding that evidence of plaintiff's prior arrests and his brother's misdemeanor charges by the police department, against whom he was bringing a § 1983 claim for unlawful arrest and excessive force, was admissible to show bias); Barkley v. City of Klamath Falls, 302 F.App'x 705, 706 (9th Cir. 2008)(unpublished)(holding that the district court did not abuse its discretion by "admitting evidence of [the plaintiff]'s prior arrest . . . to show bias against the defendants, who work for the same police department.").

In Montoya v. City of Albuquerque, the plaintiffs moved to admit evidence that one defendant had arranged an affair between the other defendant and his female acquaintance,

reasoning that it went to the defendants' bias to testify favorably for each other.  See 2004 WL 3426435, at *1.  The defendants argued evidence of the affair was not relevant to the excessive force and false arrest claims against the defendants, or that if it was relevant, it was improper character evidence, not permissible under rule 404 or under under rule 608.  See 2004 WL 3426435, at *2-3. The Court found that the evidence was offered for the proper purpose of showing "the Defendants' bias in favor of one another" and  was thus allowed to be proved extrinsically.  Montoya v. City of Albuquerque, 2004 WL 3426435, at *4.

## ANALYSIS

The Court will grant in part and deny in part the Montoyas' Motion in Limine.  To the extent that the Montoyas seek to exclude "any criminal history of Plaintiff Michael Montoya," the Court will allow limited inquiry into M. Montoya's admissible prior bad acts and arrests.  Because one of the issues in controversy in the case is whether M. Montoya knew that his refusal to sign the citations that Shelden issued him gave Shelden probable cause to arrest M. Montoya, the Court will allow the Defendants to ask M. Montoya whether he knew that he was required to sign the citations, or face arrest.  If he disclaims knowledge of such an obligation, the Court will then allow the Defendants to inquire about whether he received traffic citations in the past as circumstantial evidence of M. Montoya's knowledge.  The Court will also allow the Defendants to inquire into how many times M. Montoya has been arrested and how many of those arrests APD performed.  The Court will not, however, allow the Defendants to inquire into the circumstances of those arrests. Because Sanner is testifying on the Montoyas' behalf, the Court will allow the Defendants to inquire into M. Montoya's domestic violence charge for M. Montoya's alleged abuse of Sanner to prove bias or to bring into question Sanner's credibility.

I.   **THE COURT WILL ALLOW THE DEFENDANTS TO ASK M. MONTOYA IF HE HAS BEEN CITED FOR TRAFFIC VIOLATIONS IN THE PAST FOR THE PROPER PURPOSE OF ESTABLISHING M. MONTOYA'S KNOWLEDGE THAT HE IS REQUIRED TO SIGN THE CITATIONS ONLY IF M. MONTOYA FIRST <u>DENIES SUCH KNOWLEDGE</u>.**

The Montoyas move the Court to exclude M. Montoya's past traffic charges under rule 404, asserting that they "have no probative value to the claims or defenses in this case." MIL Supplement at 3. The Defendants contend, however, that, although the prior traffic citations is evidence of a prior charge or crime, it is admissible under rule 404(b)(2), because it is offered to show M. Montoya's knowledge of the requirement that he sign the citation in lieu of arrest. <u>See</u> MIL Response at 2. Evidence of prior crime, wrong, or bad act, including a traffic citation, is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). It "may be admissible," however, when offered for a proper purpose, such as proving that the prior crime, wrong, or bad act provided the person with knowledge of the conduct's consequences. Fed.R.Civ.P. 404(b)(2). The Defendants' contention that M. Montoya's past traffic citations provided him with knowledge that, if he chose not to sign the Shelden's citations, the consequences would be his arrest, is a permitted use under rule 404(b)(2), and may be admissible. Nevertheless, the Court must also determine that the evidence is relevant, and that the potential for unfair prejudice does not substantially outweigh the similar conduct's probative value. <u>See</u> <u>United States v. Zamora</u>, 222 F.3d at 762.

Two facts in question in determining the outcome of this case are whether Shelden had probable cause to arrest M. Montoya and whether M. Montoya knew that he could be arrested for failing to sign the traffic citations. Having been issued a traffic citation in the past has a tendency to make it more "probable" that M. Montoya knew his failure to sign the citations was grounds for Shelden to arrest him. Fed.R.Evid. 401. That M. Montoya has been issued multiple traffic citations

-17-

in the past is therefore relevant, because it leads to the inference that, on the day in question, he had knowledge of the consequences of refusing to sign Shelden's citations when he refused to do so. See United States v. Youts, 229 F.3d at 1317 (noting that admission of evidence for a proper purpose under rule 404(b) "require[s] the trial court to identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom.").

The third part of the admissibility analysis under rule 404(b) requires the Court to make a rule 403 determination to ensure a danger of unfair prejudice does not substantially outweigh the similar conduct's probative value.  Any past crime, wrong, or bad act is, to be sure, prejudicial.  That evidence is prejudicial, however, does not require its exclusion:  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d at 638.  Because traffic citations are commonplace in our society, traffic citations are not evidence that tends to unfairly prejudice a person by exerting an undue influence on the decision of the jury; traffic citations do not tend to evoke an emotional response in the common person.  See United States v. Caraway, 534 F.3d at 1301 ("To be unfairly prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").  The danger of unfair prejudice does not therefore substantially outweigh the probative value of the admission of M. Montoya's prior traffic citations to establish knowledge.

Evidence of a prior[4] bad act is prejudicial and the Court will exercise its discretion to balance the probative value of the bad act's admission with its exclusion.  Because M. Montoya's prior traffic citations are relevant only as circumstantial evidence of his knowledge that he is obligated

---

[4]Here, the acts must have occurred before the incident at issue in this case and not just before trial, because the bad acts mut have given him knowledge of the consequences of refusing to sign the citations in this case.

to sign citations or can be arrested if he refuses to do so, the Court will require the Defendants to first ask if M. Montoya knew -- at the time of the incident in this case -- of the obligation to sign traffic citations or be subjected to arrest.  Should he answer in the affirmative, the Court will then not allow the Defendants to explore the fact that he had been cited before April 16, 2007.  Should M. Montoya disavow such knowledge, however, the Court will then allow the Defendants to introduce evidence that M. Montoya had been cited before the incident in this case.   Evidence of multiple traffic citations tends to show a greater probability that M. Montoya knew of his obligation to sign the citations in lieu of arrest.  There is, however, certainly a point of diminishing returns, at which multiple citations goes from showing knowledge, to showing that M. Montoya is "a bad man who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds."  United States v. Phillips, 599 F.2d at 136. The Court will therefore allow the Defendants to ask M. Montoya if he has been cited in the past and if he has been cited multiple times.[5]  As agreed to by the parties at the hearing, the Court will not, however, permit the inquiry to go any further than that, and will not allow the Defendants to ask the nature of the citations or

---

[5]Evidence admitted for a proper purpose under rule 404(b)(2) is admitted only for that purpose.  Because of this, there is a danger that the evidence may be interpreted by the jury to be probative of a prohibited use; the party seeking to exclude the information can thus ask the court to cure any possible prejudice by providing a limiting instruction to the jury.  See United States v. Hutchinson, 573 F.3d 1011, 1030 (10th Cir. 2009)(holding that, where evidence admissible for only one purpose may "create the risk of an unfair trial[,] . . . such prejudice can usually be cured by limiting instructions to the jury."); United States v. Chaco, No. CR 10-3464, 2011 WL 3503303, at *7(D.N.M. Aug. 5, 2011)(Browning, J.)(concluding that a limiting instruction was proper to address the defendants concern that evidence admissible under the rape shield law may lead to "an improperly based verdict.").   The Montoyas can thus request the Court to provide a limiting instruction to the jury, instructing it that the evidence of prior traffic citations is coming in only as circumstantial evidence of M. Montoya's knowledge that he is required to sign the citations in lieu of arrest and may not be used to show that, because he committed traffic violations in the past, he must have done so on April 16, 2007.  The Defendants should draft appropriate limiting instructions for the evidence they seek to have admitted for a proper purpose under rule 404(b), show the instruction or instructions to the Montoyas, have them ready for the Court at the appropriate time, and request the timing and frequency of the limiting instructions.

how many times he has been cited.

## II.   SHOULD M. MONTOYA PURSUE EMOTIONAL DISTRESS DAMAGES AT TRIAL, THE COURT WILL ALLOW THE DEFENDANTS TO EXPLORE M. MONTOYA'S ARRESTS BEFORE THE INCIDENT AND UP TO THE TIME HE IS ALLEGING HIS DAMAGES CONTINUED, AND HOW THOSE ARRESTS DIFFERED FROM THIS ARREST.

M. Montoya alleges that he has suffered emotional distress damages and lost future job opportunities because of his false arrest.  The Defendants assert that, to rebut this demand for damages, and to prove to the jury the extent of M. Montoya's emotional distress damages are not as he argues they are, the Court should allow the Defendants to inquire into how this arrest differed from his prior arrests.  Under rule 404(b), "admission of evidence of other bad acts to assist the jury in measuring the extent of damages is a legitimate, non-character-based use of such evidence." Udemba v.  Nicoli, 237 F.3d at 15 (citing Lewis v. District of Columbia, 793 F.2d at363).[6]  See Chamberlin v. City of Albuquerque, No. CIV 02-0603, 2005 WL 2313515, at *2 (D.N.M. July 31, 2005)(Browning, J.)("Because [the plaintiff]'s uncharged misconduct, drug and alcohol abuse, and mental illness [are all] relevant to rebut [the plaintiff]'s claim of damages, the Court will allow [the defendant] to introduce certain specific instances of . . . conduct.").  In Mata v. City of Farmington, the plaintiff brought a § 1983 claim against police officers for excessive force and sought emotional distress damages.  See 798 F.Supp.2d at 1237.  The Court allowed the defendant officers to inquire about the plaintiff's past "interactions with the [defendant police department], other arrests, and violent encounters in which he has been involved." 798 F.Supp.2d at 1237.  The Court reasoned that the defendants were not offering the evidence for purposes of showing the plaintiff's propensity to

---

[6]Although assisting the jury in measuring damages is not among one of the permitted uses expressly listed in rule 404(b), the purposes listed in rule 404(b) "are not exhaustive, but are merely examples of the kinds of proper purposes for which evidence of extrinsic acts can be used." United States v. Porter, 881 F.2d 878, 886 (10th Cir. 1989).

act violently, but rather "to contest [the plaintiff]'s asserted emotional distress damages." Mata v. City of Farmington, 798 F.Supp.2d at 1237. M. Montoya's prior arrests are relevant to the issue of his emotional distress damages, because the amount of times and the manner in which M. Montoya had been arrested up to the arrest, if he is claiming emotional distress only to that time, or the amount of arrests up until the present if he claims his emotional damages are ongoing, makes more or less probable the Defendants' arrest emotionally distressed him. A person who has never in their life been arrested would likely be emotionally distressed if falsely arrested and more so than someone whom has been arrested multiple times. A person whom has been arrested before may be less distressed. A person who has been arrested a handful of times or more would likely be much less emotionally distressed. The Defendants' cross examination on the number of times M. Montoya has been arrested in the past, therefore, is not for the purpose of showing that, because M. Montoya has been arrested a number of times in the past he is a bad guy, but rather, the Defendants offer the evidence for the proper purpose of allowing the jury to determine the extent of the emotional distress damages M. Montoya incurred because of the Defendants' alleged unconstitutional arrest.

With regard to the circumstances of the arrests, explaining to the jury the way in which this arrest differed from those in the past will help to substantiate or rebut M. Montoya's requested emotional distress damages. That a defendant has been arrested multiple times in the past does not necessarily mean that the defendant would not be emotionally distressed each one of those times or more emotionally distressed on one occasion than another. If a great deal of time has passed since M. Montoya's arrests, the jury may find with the passage of time M. Montoya was more emotionally distressed than if the arrests were recent. Similarly, if, as the Montoyas allege, the Defendants used excessive force during their arrest in violation of their civil rights, or if the Defendants conduct was particularly egregious in some other way in this case, even if M. Montoya has been arrested a

number of times in the past, by contrasting how the Defendants' arrest here compared with his other arrests allows M. Montoya to show to the jury that the Defendants' conduct emotionally distressed him.  If, on the other hand, the Defendants can show that their conduct in arresting M. Montoya was similar to the conduct of other police officers arresting M. Montoya in the past, it will assist the jury in measuring M. Montoya's emotional distress damages by allowing the jury to infer that his emotional distress in this instance was not as substantial as he may assert.  See United States v. Valencia-Montoya, No. CR 11-2990, at 11("Uncharged, unrelated crimes or bad acts may be probative . . . whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time.")  The Defendants' cross-examination into how M. Montoya's other arrests differed from the arrest in this case, therefore, is relevant to his claim for emotional distress damages, and the Defendants are offering the evidence for the proper purpose of assisting the jury determine the amount of damages, if any, to which he is entitled.

Allowing the Defendants free reign to cross-examine M. Montoya on the circumstances of his arrests, however, has the potential to get to the point in which the danger of unfair prejudice or confusion of the issues may substantially outweigh the probative value of evidence about the way in which M. Montoya's prior arrests differ from the arrest in this case.  See Fed.R.Evid. 403.  While M. Montoya's prior arrests are probative as to whether he was emotionally distressed, part of the Court's gate-keeping role is to allow into evidence admissible prior crimes, wrongs, or bad acts, when offered for a proper purpose, but to be wary not to allow in more than is necessary, and unfairly prejudice the witness or confuse the issues for the jury.  The issue in this case is whether the Defendants' alleged use of excessive force in the arrest, and the arrest itself, violated the Montoyas' constitutional rights, and whether M. Montoya is entitled to damages for the emotional

distress the Defendants' unconstitutional conduct cuased.  The issue is not whether M. Montoya is a bad guy.  The Court finds that allowing the Defendants to ask M. Montoya whether he has been arrested multiple times, and hearing M. Montoya answer that he has, will assist the jury in measuring the extent of M. Montoya's damages.  Inquiring into how the Defendants' conduct in arresting M. Montoya here differed from his arrests in the past will also assist the jury in determining the extent of M. Montoya's emotional distress.  Allowing the Defendants to inquire about the circumstances of his prior arrests, or the charges for which M. Montoya was arrested, however, likely does not add anything beyond the prior two questions in making more or less probable the extent of M. Montoya's emotional distress, and is, therefore, likely not relevant.  See Fed.R.Evid. 401.  If the circumstances or charges are relevant, the Court nevertheless finds that the danger of unfair prejudice or confusion of the issues substantially outweighs any probative value which more explanation of the circumstances or charges may have.  The Court is not oblivious or insensitive to the reality that discussion of prior arrests is prejudicial to M. Montoya.  The Court is also sensitive to the reality that certain crimes, including domestic violence, which M. Montoya has been arrested for in the past, carry with them a stigma that will likely prejudice M. Montoya by evoking an emotional response from the jury, even though M. Montoya was never convicted of the charges. The Court will therefore not permit the defendants to inquire into the circumstances of M. Montoya's prior arrests beyond the differences of the police's conduct from the underlying arrest in this case to rebut M. Montoya's emotional distress claim, because a danger of unfair prejudice substantially outweighs any probative value of the additional evidence.  See United States v. Caraway, 534 F.3d at 1301 ("To be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"); Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993)(holding that the admission of evidence of drug

addiction was not unduly prejudicial to rebut a claim of the plaintiff's emotional distress damages);

Mata v. City of Farmington, 798 F.Supp.2d at 1238-39 (finding that the potential for unfair prejudice

from allowing in evidence of prior arrests to rebut emotional distress damages does not substantially

outweigh the probative value of the evidence, because the plaintiff, on direct or re-direct, has the

opportunity to explain the details of how the incident in the case was more emotionally distressing

than the other arrests).

## III.   THE COURT WILL ALLOW THE DEFENDANTS TO CROSS-EXAMINE THE PLAINTIFFS' WITNESSES TO ESTABLISH POSSIBLE BIAS.

The Defendants contend that the Montoyas' past arrests and charges are admissible for the

limited purpose of establishing bias.  The Montoyas argue that the prior arrests and charges are

irrelevant, even to show bias, but if they are relevant for bias, the Court should exclude them

because of the evidence's danger of unfairly prejudicing the Montoyas.  The credibility of any

witness who takes the stand is always an issue at trial.  See United States v. Mike, 655 U.S. 167, 180

(3d Cir. 2011)("[C]redibility is always an issue whenever any witness testifies."); United States v.

Abel, 469 U.S. at 52 ("Proof of bias is almost always relevant because the jury, as finder of fact and

weigher of credibility, has historically been entitled to assess all evidence which might bear on the

accuracy and truth of a witness' testimony."); EEOC v. Flasher, 986 F.2d 1312, 1317 (10th Cir.

1992)("In the final analysis, the [trier of fact] is required to . . . assess the credibility of witnesses.

. . .").  One method of impeaching a witness' credibility or character for truthfulness is by showing

the witness has a bias.  See United States v. Baldridge, 559 F.3d at 1135 (holding that, under rule

608, it is "permissible impeachment to expose a witness's bias").  Bias is "the relationship between

a witness and a party which might cause the witness to slant his testimony for or against the party."

United States v. Baldridge, 559 F.3d at 1135 (citing United States v. Abel, 469 U.S. at 52).  Any

relationship between the party and the witness, good or bad, may establish bias.  See United States v. Abel, 469 U.S. at 52 ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self interest.").[7]

> **A.   THE COURT WILL NOT ALLOW THE DEFENDANTS TO INQUIRE INTO M. MONTOYA'S ARRESTS OR CHARGES FOR HIS ABUSE OF SANNER, BUT WILL ALLOW THE DEFENDANTS TO CROSS-EXAMINE SANNER AS TO WHETHER M. MONTOYA HAS ABUSED HER, AND IF SHE CALLED THE POLICE TO REPORT M. MONTOYA'S ABUSE.**

The Defendants contend that, even if the Court finds that the circumstances of M. Montoya's prior arrests and criminal charges are not admissible, M. Montoya's prior criminal charge for assault of a household member and his arrest for domestic violence are admissible against Sanner, a witness testifying on M. Montoya's behalf, for purposes of questioning her credibility by showing bias.  The Montoyas assert that M. Montoya's prior arrest and charges for domestic violence incidences involving Sanner are not relevant to her credibility.  They also argue that even if they are relevant to Sanner's credibility, the Court should exclude the evidence under rule 403, because: (i) any probative value to questioning the credibility of Sanner's testimony is substantially outweighed by

_____

[7]Prejudice is defined as "[a] preconceived judgment formed with little or no factual basis; a strong bias." Black's Law Dictionary 1229 (J. Garner ed., 9th ed. 2009).  See New Oxford American Dictionary 1378 (3d ed., 2010) ("[P]reconceived opinion that is not based on reason or actual experiences . . . dislike, hostility. . . ."). Bias is defined as: "Inclination; prejudice; predilection." Black's Law Dictionary 183.  Although bias and prejudice in contemporary discourse may be used interchangeably, with courts and lawyers both asserting that one has bias for something and bias against, they historically have been and are often distinguished by saying that there may be "bias or prejudice."  See e.g., Nevada Com'n on Ethics v. Carrigan, 131 S.Ct. 2343, 2349 (2011)(quoting 28 U.S.C. § 144 which makes "any 'personal bias or prejudice' a basis for recusal.").  Bias is associated more with an informed reason for favoring a person and prejudice with an informed hostility toward a person.  Bias now appears to be all inclusive, covering prejudice, too, and prejudice covers bias if the preposition "for" follows.  The terms have apparently lost any distinction.  While a distinction and precision in the use of the terms might be useful, any distinction does not make a difference to the outcome of this case, because any bias or prejudice of Sanner or the Montoyas goes to their credibility, and the jury should be allowed to examine them fully to determine credibility.

a danger of unfair prejudice; and (ii) because D. Montoya, M. Montoya's co-plaintiff, was not involved or charged with any of the domestic violence charges, the probative value of the M. Montoya's domestic charges in regards to Sanner's credibility is substantially outweighed by a danger of unfair prejudice to D. Montoya especially. See Tr. at 30:11-31:20 (Court, Oliveros, Griffin).

M. Montoya's prior abuse of Sanner goes to the credibility of Sanner's testimony, because the jury could infer from these specific instances of conduct that M. Montoya and Sanner's relationship is such that M. Montoya maintains a position of influence over Sanner, such that he can influence her to slant her testimony for his benefit. See Thomas v. Lampert, 349 F.App'x 272, 277-278 (10th Cir. 2009)(holding that the admission of past incidences of the defendant's domestic abuse of the victim, a witness in the criminal trial against the abuser, to "explain [the victim's] loyalty to the [defendant] despite his violent tendencies," was not improper). Because the past instances of domestic abuse in M. Montoya's relationship with Sanner suggest that Sanner's testimony may be biased in favor of M. Montoya, the Court will allow the Defendants to cross-examine Sanner about M. Montoya's past abuse of her. See Montoya v. City of Albuquerque, 2004 WL 3426435 (finding that evidence of one defendant setting up an affair for the other defendant was admissible to show bias).

The Defendants argue that, although Sanner may be biased in favor or against M. Montoya, D. Montoya, M. Montoya's brother and co-plaintiff, was not charged or alleged to be involved in any of M. Montoya's past arrests or charges for domestic violence. The Montoyas assert that M. Montoya's past charges and arrests in connection with Sanner are irrelevant and unfairly prejudicial to D. Montoya, because, with regard to D. Montoya, Sanner is testifying only as a fact witness to the facts that she saw him laying in the street, detained by the Defendant Officers, and that he was

red in the face.  The Montoyas contend that the Court should thus exclude the evidence of M. Montoya's abuse of Sanner, because D. Montoya and M. Montoya are co-plaintiffs, and any prejudicial effect the introduction of the evidence has necessarily hurts D. Montoya's case also.  D. Montoya is M. Montoya's brother, however, and, because of that relationship, Sanner's feelings towards D. Montoya are likely not indifferent.  Sanner therefore also may have a bias to testify in D. Montoya's favor, even if that bias is perhaps not as substantial as it is with regard to M. Montoya. See United States v. Abel, 469 U.S. at 52 ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self interest."). The bias of a witness, even a fact witness, no matter how large or how small, is not a collateral issue.

As with the admission of M. Montoya's prior arrests for a proper purpose above, even though evidence of M. Montoya's prior abuse of Sanner is relevant to her credibility and admissible to show bias, it is the Court's role to attempt to ensure that the evidence's prejudice to the Montoyas does not outweigh its probative value of admission.  See Fed.R.Evid. 403.  The jury, as finder of fact and weigher of credibility, needs some information regarding the circumstances of M. Montoya's abuse of Sanner so that it may assess to what extent Sanner may be biased in favor or against M. Montoya.  The Court does not, however, wish to implement a trial within a trial here, and try M. Montoya for his past abuse of Sanner. To do so is not permitted, as it would be unfairly prejudicial to the Montoyas, waste time, and confuse the issues.  See Fed.R.Evid. 403.  On the other hand, that M. Montoya abused Sanner multiple times, that she is still with him, and that she is testifying in his favor, provides information to the jury to aide them in assessing the amount of M. Montoya's influence over Sanner that the relationship may provide.  That these instances of abuse were serious enough to require Sanner to call the police is also relevant and important for the finder of fact to hear in assessing Sanner's credibility.  The Court concludes, however, that the danger of unfair prejudice

and the possibility of confusing the issues for the jury substantially outweighs the probative value

of allowing into evidence that M. Montoya was arrested on one or more of these occasions, and was

charged with felony domestic violence in one instance.  As agreed to by the parties at the hearing,

the Court will therefore not allow the Defendants to cross-examine Sanner whether any of the abuse

resulted in M. Montoya's being arrested or charged for the violence.  It is unclear what that evidence

adds to the admissions of relevant evidence.  The Court concludes, rather, that allowing inquiry only

into the facts that M. Montoya abused Sanner on more than one occasion, and that on more than one

occasion she called the police, strikes the proper balance of extracting the probative value of the

abuse without the substantial prejudice that the full circumstances of the abuse may cause to the

Montoyas.[8]

   **B.   THE COURT WILL PERMIT THE DEFENDANTS TO ASK WHETHER APD HAS ARRESTED THE MONTOYAS BEFORE OR SINCE THE INCIDENT, TO ESTABLISH POSSIBLE BIAS IN BRINGING THE SUIT.**

The Defendants also request that the Court permit them to inquire into APD's arrests of the

Montoyas, because such evidence is probative of the Montoyas' bias against APD, and also makes

Shelden and Lovato's story, that the Montoyas' resisted arrest, more probable.  The Montoyas

contend that their prior arrests by APD are not relevant to the case, as they do not sufficiently

---

[8]The Court is admitting M. Montoya's abuse of Sanner to show only Sanner's possible bias, as the evidence reflects on her character for truthfulness or untruthfulness.  If Sanner answers in the affirmative to the Defendants' questions that the Court permits, her affirmative answers are all of the evidence on the subject that the Court will permit.  If, on the other hand, Sanner should deny that M. Montoya abused her, or that she called the police because of the abuse on multiple occasions, the Court will permit the Defendants to impeach Sanner with M. Montoya's prior arrests and charges for abusing Sanner.  These arrests and charges are specific instances of conduct not related to the incidence.  Although the text of rule 608(b) does not allow for admission of "extrinsic evidence in order to support or attack the witness's character for truthfulness," bias can be proved extrinsically.  Montoya v. City of Albuquerque, 2004 WL 3426435, at *4 (holding that, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence.").  If therefore Sanner opens the door to her impeachment during her in-court testimony, the Court will allow the Defendants to introduce into evidence M. Montoya's arrests and charges for domestic violence.

establish a bias against APD.  The Montoyas assert that, to the extent that the Montoyas may have a bias against APD, however, prior arrests by APD officers, none of whom were by Shelden or Lovato, have little if any probative value of bias, and the danger of unfair prejudice that introduction into evidence of their other arrests will have substantially outweighs any probative value they do have.  The Montoyas arrest by one of the named Defendants, APD, and the fact that they will testify in the case, establishes a relationship between the Montoyas and APD that might cause the Montoyas to slant their testimony against the Defendant APD.  See  United States v. Baldridge 559 F.3d at 1135 (stating that bias is "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party.").  Similarly, it is possible that APD's arrests in the past have caused the Montoyas to dislike APD and thus may induce them to slant their testimony against APD.  The Montoyas' prior arrests and charges by APD, the same police department that the Montoyas are suing in this case and who employs Shelden and Lovato, therefore are relevant and admissible to show their bias against APD, and against Shelden and Lovato, in this case.  See Barkley v. City of Klamath Falls, 302 F.App'x at 706 (holding that the district court did not abuse its discretion by "admitting evidence of [the plaintiff]'s prior arrest . . . to show bias against the defendants, who work for the same police department"); Heath v. Cast, 813 F.2d at 259-260 (holding that evidence of plaintiff's prior arrests and his brother's misdemeanor charges by the police department, against whom he was bringing a § 1983 claim for unlawful arrest and excessive force, was admissible to show bias).

Because Shelden or Lovato did not arrest the Montoyas in the past, the probative value of the prior arrests comes only from the admission that they have had interactions with and been arrested by APD in the past, and that they thus have a possible bias against APD and APD officers. The danger of unfair prejudice to the Montoyas of that information substantially outweighs the

minimal probative value that may be added from admission of most of the circumstances of the arrests or by admission of the number of times that APD has charged each of the Montoyas other than in this case.  The Court is allowing the Defendants to admit a great amount of relevant and admissible information that is prejudicial to the Montoyas for purposes of establishing the Montoyas' bias against APD, to rebut M. Montoya's claims of emotional distress damages, and to establish Sanner's possible bias.  Thus, although there is probative value in admitting that APD has arrested and charged the Montoyas in the past to substantiate Shelden and Lovato's side of the story that the Montoyas were resisting arrest, the Court finds that the danger of unfair prejudice of admitting the charges in addition to the number of APD arrests substantially outweighs the minimal probative value the charges add to the admission of APD's arrests of the Montoyas.  As agreed to by the parties at the hearing, the Court will therefore allow the Defendants to cross-examine about the Montoyas about APD arrests and charges, other than for the incident underlying the charges in this case, only on: (i) whether APD criminally charged them; and (ii) how many times APD has ever arrested them.  The Defendants are not otherwise permitted to inquire about the circumstances of the charges or arrests, except as permitted in this Memorandum Opinion and Order.[9]

**IT IS ORDERED** that the Plaintiffs' First Motion In Limine, filed September 4, 2012 (Doc. 55), is granted in part and denied in part.  The Court will allow the Defendants to ask whether Plaintiff Michael Montoya has been cited for traffic violations in the past and knows his obligation to sign those citations.  The Court will allow the Defendants to inquire into whether M. Montoya has been arrested in the past and the number of times he has been arrested.  The Court will allow the

---

[9]The Montoyas may have an interest in explaining the circumstances of these arrests or the circumstances of their other criminal charges to show the Defendants' bias and lack of credibility. They are free to explain the circumstances of the arrests or charges, but, of course, may open the door to further questioning by the Defendants.

Defendants to ask Marcy Sanner whether M. Montoya has abused her in the past and whether she called the police in those instances, and will allow the Defendants to ask M. Montoya and Plaintiff David Montoya whether APD has arrested or charged them other than in this case.  The Court will not allow the Defendants to pursue the evidence any further unless the Montoyas or Sanner open the door to do so at trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Timothy M. Padilla
Ignacio V. Gallegos
Timothy M. Padilla & Associates, P.C.
Albuquerque, New Mexico

     -- and --

Louren M. Oliveros
Gorence & Oliveros PC
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*


Stephanie M. Griffin
Benjamin I. Sherman
  Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

    *Attorneys for the Defendants*