IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID MONTOYA and
MICHAEL MONTOYA,

       Plaintiffs,

vs.                                     No. CIV 10-0360 JB/WDS

GERALD SHELDEN, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
ANGELO LOVATO, an Officer Employed
by the Albuquerque Police Department, a Subsidiary
of the City of Albuquerque, Individually and in his Official Capacity,
and THE CITY OF ALBUQUERQUE,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion in Limine to Exclude

Introduction of Evidence from Other Cases or Claims Brought Against Defendants and any

Evidence of Allegations of Prior and Subsequent Bad Acts and Memorandum in Support Thereof,

filed September 4, 2012 (Doc. 56). The Court held a hearing on September 19, 2012.  The primary

issues are: (i) whether the Court should admit evidence of other unrelated cases in which Defendant

Albuquerque Police Department ("APD") Officer Gerald Shelden[1] and Defendant Angelo Lovato

---

[1]Shelden's name is spelled inconsistently throughout the documents that both parties submitted, in some cases spelling the last vowel in Shelden's name with an 'o,' and in some cases with an 'e.'  The court reporter, Paul Baca, who recorded Shelden's deposition on March 11, 2011, spells his name with an e.  See Plaintiff's Response to Defendants' Motion in Limine to Exclude Introduction of any Evidence from Other Cases or Claims Brought Against Defendants and Any Evidence of Allegations of Prior or Subsequent Bad Acts and Memorandum in Support Thereof [Doc. 56] , Attachment 1, Exhibit A, at 1, filed September 17, 2012 (Doc 67-1)("MIL Response Ex. 1").  Because it is standard practice for a court reporter to ask the spelling of the deponent, and because of the Court's respect for the careful work of Mr. Baca, the Honorable Judith C. Herrera, United States District Judge's court reporter, the Court will adopt his spelling of Shelden's name

have been named as defendants; (ii) whether the Court should allow the Defendants to inquire about the false statements that Lovato made to Anna Chavez, a citizen involved in an accident with him, and false statements of fact that he made to an internal-investigation board investigating the accident, because they are evidence of his character for truthfulness; (iii) whether, if Lovato does not admit to making false statements while being cross-examined in court, the Court should allow the Plaintiffs David Montoya and Michael Montoya to prove his past false statements extrinsically; and (iv) whether the Court should admit evidence that the Montoyas saw signs posted in the back of Shelden's police car, one of which misrepresented and made light of a suspect's rights under the Fifth Amendment to the United States Constitution.  The Court will grant in part and deny in part the Defendants' motion.  Because the unrelated cases are not probative of any material issues in the Montoyas' claims, the Court will exclude evidence of unrelated civil rights cases against Shelden and Lovato.  Lovato's past false statements, both to Chavez during the automobile accident and to the internal-affairs investigation board, are probative of Lovato's character for truthfulness or untruthfulness, and therefore the Court will allow the Montoyas to inquire about them during their examination of Lovato.  If Lovato makes false statements in regards to the Montoyas' inquiry, the Court will allow the Montoyas to prove the prior false statements extrinsically through testimony of a police officer with knowledge of the prior statements.  Because the Montoyas are demanding punitive damages from the Defendants, an element of which requires proof of Shelden's intent, the Court will allow the Montoyas to testify about the signs which Shelden posted in the back of his police car.

---

for the entirety of this Memorandum Opinion and Order.

## FACTUAL BACKGROUND

The Court has explained the facts of this case in its prior Memorandum Opinion and Order, filed October 7, 2012 (Doc. 83), and incorporates by reference those facts here.  The Court will add here additional pertinent facts for this motion.  After Shelden and Lovato arrested M. Montoya and Plaintiff David Montoya, the Montoyas observed signs in the back of Shelden's police car, that Shelden has since taken out, at least one of which misrepresented, and/or joked about, a suspect's Fifth Amendment Rights.  At Shelden's deposition, he stated that one o f the signs read: "If you don't like the police, then call a crackhead  the next time you need help."  See Deposition of Gerald Shelden 94:12-14 (taken March 1, 2011), filed September 17, 2012 (Doc. 67-1)("Shelden Deposition"). He admitted to having "[t]he Miranda one . . . in there," at the time that he arrested the Montoyas.  Shelden Deposition 94:19-20.[2]

Unrelated to the incident in this case, Shelden and Lovato are defendants in other § 1983 civil rights cases.  At least one of those cases ended in a judgment against Lovato for excessive force, awarding the plaintiff both compensatory and punitive damages.   See Canizales v. Armendariz, No. CIV 07-0198 JB/RHS, Final Judgment, filed August 11, 2008 (Doc. 117).[3]

Lovato is also a defendant in a criminal case, charged with leaving the scene of an accident. That criminal charge arose from an accident involving Anna Chavez, while Lovato was off-duty in his police vehicle.  At the accident, he represented to Chavez that he was on-duty and provided other

---

[2]At his deposition, Shelden stated that he could not recall what, specifically, the new Miranda rights sign said.  See Shelden Deposition at 94:18-95:6.

[3]The Court entered a Stipulated Order of Dismissal in this case, because the Court was advised by stipulation of the parties that the parties had resolved all issues in the matter, the Court found that "all claims contained [in the case] should be dismissed."  Canizales v. Armendariz, No. CIV 07-0198 JB/RHS, Doc 119, filed September 2, 2008.

false statements to her, including providing her with a fake report number and false Computer Aided

Dispatch ("CAD") number.[4]  Subsequent to the accident, the APD internal-affairs investigated

Lovato's involvement in the accident, during the course of which Lovato made false statements of

fact to the investigation board.

## PROCEDURAL BACKGROUND

On April 15, 2010, the Montoyas filed their Complaint asserting claims for violations of the

Fourth Amendment to the United States Constitution against the Defendants, including claims of

false imprisonment and arrest, excessive force, and unlawful detention.  See Plaintiffs' Complaint

for Civil Rights Violations ¶¶ 37, 41, 44, 47, at 6-8, filed April 15, 2010 (Doc. 1)("Complaint").

In Count V, the Montoyas assert a malicious-prosecution claim.  See Complaint ¶ 48, at 8.

On August 12, 2011, the Montoyas filed a motion seeking to re-open discovery for the

limited purpose of allowing them to submit discovery requests to Lovato about a criminal charge

he faces regarding leaving the scene of an accident.  See Memorandum Opinion and Order at 2, filed

March 20, 2012 (Doc. 39)("MOO").  The Court granted the motion in part and denied the motion

in part.  See MOO at 1.  The Court did not permit the Montoyas to serve any requests for admission

or requests for discovery to inquire into Lovato's conduct in relation to the alleged incident where

he left the scene of an accident.  See MOO at 1.  The Court also did not permit the Montoyas to

conduct their requested deposition of Lovato, because discovery is closed, the information the

requested appears collateral to the case here, and the requested discovery is related only to the issue

of Lovato's credibility.  See MOO at 1-2.  The Court conducted an in camera review of the internal-

---

[4]A "Computer Aided Dispatch" or CAD is a system used by police departments that allows
911 operators to send information from emergency calls directly to the screen of police officers'
cars.  See United States v. Russell, 436 F.3d 1086, 1088 (9th Cir. 2006)(explaining the functioning
of a CAD terminal).

affairs-investigation file into Lovato's conduct to determine whether the Defendants should disclose any of the documents underlying that investigation to the Montoyas. See MOO at 2.

On September 4, 2012, the Defendants filed the Defendants' Motion in Limine to Exclude Introduction of Evidence from Other Cases or Claims Brought Against Defendants and any Evidence of Allegations of Prior and Subsequent Bad Acts and Memorandum in Support Thereof. See Doc. 56 ("Motion in Limine"). They move to exclude from evidence other claims or cases against the Defendants pursuant to rules 104, 401, 403, and 404 of the Federal Rules of Evidence. Motion in Limine at 1. The Defendants state that, although they are unsure what specific information the Montoyas wish to introduce, they assume that, because Shelden and Lovato are defendants in other ongoing cases, the Defendants "seek to ensure to Plaintiffs' counsel does not attempt to introduce any such evidence." Motion in Limine at 1-2. In addition to seeking to exclude Shelden and Lovato's other unrelated cases, the Defendants seek to exclude other improper character evidence, including: (i) reference to "'New Miranda Rights'[5] & other signage from Officer Shelden's [sic] police vehicle"; and (ii) investigations from "Internal Affairs/Citizen Complaints against any of the Defendants." Motion in Limine at 2.

The Defendants contend that the other lawsuits, investigations, and the signage in Shelden's vehicle are not relevant under rule 401, because the evidence is not probative of any of the Montoyas' claims, as none of these prior or subsequent "bad acts" are alleged to have involved the Montoyas. See Motion in Limine at 3. Because the 42 U.S.C. § 1983 claims that the Montoyas are

---

[5]Both parties refer generally to "Miranda" rights, referring to the obligation of police offers to read suspects their Fifth Amendment rights. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Neither party, however, is raising a Miranda rights argument, but is rather referring to the signs that Shelden had posted in the back of his police vehicle with a modified version of Miranda Rights.

bringing do not include a municipal liability claim, the Defendants assert that the prior bad acts are also not probative of the Montoyas claims against the City of Albuquerque or APD.[6]  See Motion in Limine at 3 (citing Calunsinski v. Kruger, 24 F.3d 931, 936 (7th Cir. 1994); Reynolds v. City of Little Rock, 893 F.2d 1004, 1006-07 (8th Cir. 1990)).  The Defendants argue that the Court should exclude evidence of the prior bad acts as not relevant to the excessive use of force claim on the grounds that, because the Supreme Court of the United States requires the "reasonableness" of the extent of force used to be judged "from the perspective of a reasonable officer on the scene," rather than by hindsight, any correlation between prior bad acts and the use of force here is not probative of the reasonableness of the force in this particular situation.  See Motion in Limine at 4 (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).  The facts and circumstances from these other, unrelated bad acts are not probative of the reasonableness inquiry, they contend, because the Montoyas "must show that Defendants' actions were not 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to underlying intent of motivation."  Motion in Limine at 4 (quoting Graham v. Connor, 490 U.S. at 397).

The Defendants argue that the Court should also exclude the evidence under rule 404, because "the only thing the internal affairs investigations and unrelated claims/cases tend to . . . show [is] that Defendants have bad character and they acted in conformity with that character."  Motion in Limine at 7.  The Montoyas, they contend, are thus offering the evidence of prior and subsequent bad acts for an improper purpose.  See Motion in Limine at 7.  The Defendants assert that, even if the evidence is relevant to the Montoyas' claims, and is being offered for a proper

---

[6]The APD was dismissed with prejudice as a defendant in this case by stipulation of the parties on September 22, 2010.  See Stipulated Order of Dismissal of the Albuquerque Police Department with Prejudice, filed September 22, 2010 (Doc. 21).

purpose, the Defendants assert that "the Court should still exclude the evidence under Federal Rule of Evidence 403," because of the danger of unfair prejudice to the Defendants, and because the evidence will confuse the issues and mislead the jury. Motion in Limine at 8. The Defendants argue that evidence of Shelden and Lovato's other trials would confuse the issues and mislead the jury, because admitting evidence of other cases against Shelden and Lovato that have not been resolved would "result in a series of mini-trials." Motion in Limine at 8-9 (citing Kinan v. City of Brackton, 876 F.2d 1029, 1034 (1st Cir. 1989)).

On September 17, 2012, the Montoyas filed the Plaintiffs' Response to Defendants' Motion in Limine to Exclude Introduction of any Evidence from Other Cases or Claims Brought Against Defendants and any Evidence of Allegations of Prior and Subsequent Bad Acts and Memorandum in Support Thereof [Doc. 56]. See Doc. 67 ("MIL Response"). The Montoyas first supplement the Defendants' listed cases against Shelden and Lovato, alleging additional facts about the settled, unresolved, and resolved cases against Shelden and Montoya. See MIL Response at 2. The Montoyas argue that the evidence which the Defendants seek to exclude is relevant to Shelden's and Lovato's bias and credibility. See MIL Response at 2. The Montoyas contend that the unrelated cases against Shelden and Montoya are, "in essence, credibility determinations by the jury that the Defendants were not credible in the denial of liability at trial." MIL Response at 3. The evidence is also relevant, they assert, for purposes of impeachment on cross examination. See MIL Response at 3. The Montoyas argue that the evidence is also relevant to an essential element of Montoyas' claims for punitive damages, because it is probative of the Defendants' "evil motive and intent, . . . [or their] reckless or callous indifference to the federally protected rights of others." MIL Response at 3.

The Montoyas assert that the Court should deny the Defendants' motion to exclude

"'Improper Character Evidence Brought Against Any of the Defendants, Including Any Reference to 'New Miranda Rights' and Other Signage,'" MIL Response at 4 (quoting Motion in Limine at 1), because the "reference to 'improper character' is vague and Plaintiffs are unable to ascertain what the Defendants specifically seek to exclude."  MIL Response at 4.  In regards to the improper signage in Shelden's vehicle, the Montoyas argue:

> The fact that Defendant Shelden's [sic] vehicle demonstrates his complete disregard for the legal process and the rights of his prisoners, including Plaintiffs.  Such evidence is relevant to punitive damages, to Defendant Shelden's [sic] knowledge of the legal rights of his detainees and prisoners, and is relevant to his bias against all prisoners and suspects that he encounters. As such the evidence should not be excluded.

MIL Response at 5.  The Montoyas "agree that . . . evidence [of the internal affairs files of the Defendants, aside from the internal-affairs investigation related to Chavez] is inadmissible, unless the Defendants open the door."  MIL Response at 6.  With regard to "the internal affairs and citizen complaint against Defendant Lovato regarding Anna Chavez and the criminal case filed . . . charging him with leaving the scene of the accident," the Montoyas contend that the Court should not exclude this evidence, because the evidence is relevant to Lovato's credibility and bias.  MIL Response at 6.  The Montoyas assert that the Court must give the evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value," when performing the rule 403 balancing test. See MIL Response at 6 (quoting Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000)).  They contend therefore that the Court should not at this time exclude evidence of Shelden's and Lovato's unrelated civil rights complaints, the signage in Shelden's vehicle, or Lovato's criminal case and internal affairs investigation.  See MIL Response at 6-7.

The Court held a hearing on September 19, 2012.  The Court stated that it did not see how the evidence of the unrelated cases and internal affairs complaints that the Defendants seek to

exclude is relevant to the Montoyas' claims. See Transcript of Hearing at 32:6-15 (September 19, 2012)(Court)("Tr.").[7]  The Montoyas stated that, while they reiterate the arguments in their brief, they believe that Lovato's criminal charge and internal affairs investigation in particular are relevant. See Tr. at 32:16-21 (Oliveros).  The Montoyas asserted that Lovato's criminal charges and related internal affairs complaint are relevant to Lovato's character for truthfulness, because he lied to Ms. Chavez when their vehicles collided, told her he was on duty when he was not, and provided her with a false CAD number, including a false case number. See Tr. at 33:1-12 (Oliveros).  The Court asked the Montoyas if that evidence is the only information which the Defendants are seeking to exclude that the Montoyas plan to offer at trial. See Tr. at 33:13-15 (Court).  The Montoyas stated that they wish to present evidence that Lovato lied to Ms. Chavez at the scene of the accident and that he lied to the police officers conducting the internal investigation, and the Montoyas also wish to offer evidence of Shelden's prior civil rights complaint from another plaintiff named Montoya, because it shows that "Shelden has a bias against suspects that are refusing to do exactly as he says and that he becomes very angry at that point."  Tr. at 33:17-34:5 (Oliveros).

The Montoyas contended that the other case against Shelden is relevant, as it shows Shelden's "modus operandi;" Shelden was going to let the suspect sign the tickets and leave, but before doing so, Shelden called the suspect to the back of his car and arrested him, just as he did with M. Montoya in this case. See Tr. at 34:12-24 (Oliveros).  The Court stated that, while it would permit the Montoyas to ask Shelden on cross-examination whether he has a bias against people who do not follow his orders, the Montoyas would have to accept Shelden's answer, because it would not

---

[7]The Court's citations to the transcript of the hearing and trial refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

allow the Montoyas to prove the bias extrinsically by going into the facts of another case.  See Tr. at 34:24-35:10 (Court).

      In response to the Court's inquiry as to how the Montoyas would use the circumstances surrounding Lovato's car accident with Chavez, the Montoyas stated that they want to bring out the fact that Lovato lied in his interactions with Chavez at the scene and lied during the police investigation.  See Tr. at 36:1-11 (Court, Oliveros).  The Montoyas conceded that they could provide evidence of Lovato's lies to Chavez and to the police performing the internal affairs investigation without getting into the facts of the accident.  See Tr. at 36:12-18 (Court, Oliveros).  The Montoyas asserted that it was important to bring out that he provided "false information" to a citizen and in the course of an internal affairs investigation.  See Tr. at 37:3-4 (Oliveros).  Moreover, they contended, if Lovato is not forthcoming by admitting that he lied on the scene of an accident and to the police in the course of an internal investigation, then they would need to impeach him with the two witnesses.  See Tr. at 36:17-37:20 (Oliveros).  The Defendants argued that they believe the fact that Lovato provided false information is not admissible under rule 608, and, to the extent that the evidence that he was untruthful may be admissible, the Montoyas cannot prove up the untruths by extrinsic evidence.  See Tr. at 37:11-19 (Griffin).  The Court stated that credibility, especially of a defendant police officer  who lied to an investigative board, is "so important" in a case such as this one, that the Court is inclined to allow the  Montoyas to ask Lovato if he lied.  See Tr. at 39:8-12 (Oliveros, Court). The Court also stated that, if Lovato does not answer the questions truthfully on the stand, the lies may be proved extrinsically by the officer who performed the investigation. See Tr. at 37:21-39:7 (Court, Oliveros, Griffin).

      The Montoyas contended that M. Montoya will testify to seeing the signage in Shelden's car, or new Miranda rights, and that the evidence is relevant to show Shelden's bias, to prove the claim

for punitive damages, to establish that Shelden acted with malice, and to provide evidence of M. Montoya's emotional distress damages.  See Tr. at 40:4-41:19 (Oliveros, Court).  The Defendants asserted that the signage is not relevant to the claims for violation of the Fourth Amendment, and, because it was not directed at M. Montoya, but was rather there to provide comic relief for anyone in the back of the police car, the signage is not relevant to this case.  See Tr. at 41:20-42:13 (Griffin). The Court stated that it would allow evidence of the signage or new Miranda rights in the back of Seldon's car, because, while it may be relevant to more of the Montoyas' claims, it is at least relevant and admissible to prove the Montoyas' claims for punitive damages and emotional distress damages. See Tr. at 41:14-17 (Court).

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).  The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court recently noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."  United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

In Kampa v. City of Albuquerque, No. CIV 96-1572 LFG/DJS (D.N.M.), the Honorable Lorenzo Garcia, United States Magistrate Judge, explained the problem created by allowing the

introduction of unrelated use of force incidents -- other police shootings -- into evidence:

> The danger relating to the introduction of this evidence is apparent. A fact finder may inappropriately conclude that a person is culpable, not because he committed the act in question, but rather, because he is a bad person, or because at some other time, he committed some other bad act. Clearly, the Supreme Court and the Tenth Circuit's focus on objective reasonableness requires the fact finder to look at the conduct in question and, based on that, determine whether a violation of the [decedent's] constitutional rights occurred.

Kampa v. City of Albuquerque, No. CIV 96-1572 LFG/DJS, Memorandum Opinion and Order at

4 (D.N.M., filed March 9, 1998)(Doc. 138).

## LAW REGARDING APPLICATION OF RULE 404

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not

admissible for the purpose of proving that he acted in conformity therewith on a particular

occasion." Fed. R. Evid. 404(a). "This rule is necessary because of the high degree of prejudice that

inheres in character evidence. In most instances, [the United States Court of Appeals for the Tenth

Circuit is] unwilling to permit a jury to infer that an individual performed the alleged acts based on

a particular character trait." Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(citing rule

404 advisory notes).

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove

the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

The same evidence, however, may be admissible for other purposes. Permissible purposes include

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or

lack of accident. See Fed. R. Evid. 404(b). The Supreme Court has enunciated a four-part process

to determine whether evidence is admissible under rule 404(b). See Huddleston v. United States,

485 U.S. 681, 691-92 (1988). The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a]

-13-

four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185

F.3d 1125 (10th Cir. 1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002);

United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996).

### 1.    Rule 404(b) and the Admission of Prior Bad Acts Generally.

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal

defendant from risking conviction on the basis of evidence of the defendant's character.  See United

States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham, Federal

Practice and Procedure: Evidence § 5239, at 428, 436-37 & 439 (1991).  In United States v. Phillips,

599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in

addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

The Tenth Circuit has stated that district courts must "identify specifically the permissible

purpose for which such evidence is offered and the inferences to be drawn therefrom."  United

States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d

1426, 1436 (10th Cir. 1985)).  "[A] broad statement merely invoking or restating Rule 404(b) will

not suffice."  United States v. Youts, 229 F.3d at 1317.  "Uncharged, unrelated crimes or bad acts

may be probative to show knowledge, . . . whether the acts involved previous conduct or conduct

-14-

subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time." United States v. Valencia-Montoya, No. CR 11-2990, slip op. at 11 (D.N.M. Sep. 17, 2012)(Browning, J.)(citing United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)). See Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986)(per curium)(holding that the admission of evidence of prior arrests is proper for purposes of determining whether the plaintiff running from the police officers was result of a mistake, or to avoid arrest).

### 2.    Rule 404 and Admission of Police Officers' Prior Use of Force.

The federal courts have developed an extensive body of law regarding the use of excessive force. Concomitantly, the federal courts have discussed at length the evidence that can come in such cases. For the most part, the federal courts have been restrictive in what evidence plaintiffs can offer against police officers.

In Graham v. Connor, the Supreme Court held that all claims under 42 U.S.C. § 1983 in which a law enforcement officer has allegedly used excessive force in the course of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. 490 U.S. at 388. To determine the reasonableness of an officer's use of force, the Supreme Court in Graham v. Connor stated that the proper application of the "objective reasonableness test" to a use-of-force case

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97 (citations omitted).

The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor

test required to introduce 404(b) evidence.  See Chavez v. City of Albuquerque, 402 F.3d 1039,

1046 (10th Cir. 2005)(holding that the plaintiff failed to satisfy the first factor -- that evidence of

prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167-68

(10th Cir. 2005)(McConnell, J.)(holding that plaintiffs failed to satisfy the second factor -- that

evidence of past use of force was relevant).  In Chavez v. City of Albuquerque, the Tenth Circuit

examined the admissibility of prior decisions of the defendant, a K-9 officer, to use his police

service dog in cases unrelated to the plaintiff's claim.  See 402 F.3d at 1046.  The Tenth Circuit

affirmed the decision of the Honorable William P. Johnson, United States District Judge for the

District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the

defendant] used excessive force in deploying [the police service dog]."  402 F.3d at 1046.  The

plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well

as modus operandi and contended that the district court should admit the prior incidents under rule

404(b).  See 403 F.3d at 1046.  Concluding that the evidence was not being offered for a proper

purpose, the Tenth Circuit stated and explained:

> Although [the plaintiff] argues that inquiry into these other incidents should have
> been permitted to show absence of mistake or accident, or alternatively, that [the K-9
> officer's] use of [police service dog] constituted a "modus operandi," none of these
> alternative bases for introducing 404(b)-type evidence was implicated on the facts
> presented.  There was no claim or defense suggesting that [the K-9 officer]
> accidentally or mistakenly used the police dog.  Indeed, it seems clear that he made
> a deliberate, conscious decision to do so.  Moreover, proof of a "modus operandi"
> is only relevant when there is an issue regarding the defendant's identity.

403 F.3d at 1046(citations omitted).  The Tenth Circuit also noted that the district court's conclusion

"that such evidence was not relevant under the objective reasonableness standard of Graham v.

Connor . . . is consistent with the decisions of several other federal appellate courts which have

considered similar requests."  402 F.3d at 1047 n. 4.

-16-

In Tanberg v. Sholtis, the plaintiffs sought to admit evidence that the defendant officer used excessive force or illegally seized suspects in three unrelated cases.  See 401 F.3d at 1167.  The plaintiffs contended that the officer's other acts of misconduct were "relevant under Fed. R. Evid. 404(b) to show intent and absence of mistake as well as 'consciousness and state of mind.'"  401 F.2d at 1164.  The Tenth Circuit stated: "Because Plaintiffs' federal claim for excessive force requires assessment of [the officer's] conduct under an objective standard, Plaintiffs have failed to establish the relevance of evidence tending to shed light on aspects of [the officer's] mental state to this claim."  401 F.3d at 1167-68 (citing Graham v. Connor, 490 U.S. at 397).

The Court has on multiple occasions applied the Graham v. Connor "objective reasonableness" standard and excluded evidence regarding a police officer's use of force in unrelated incidents.  See Mata v. City of Farmington, 798 F.Supp.2d 1215, 1235-36 (D.N.M. 2011)(Browning, J.)(finding that "specific instances of officers' past use of force, internal-affairs complaints, and civil rights lawsuits" of unrelated incidents were not relevant); Chamberlin v. City of Albuquerque, No. CIV 02-0603, 2005 WL 2313527, at *1-2 (D.N.M. July 31, 2005)(Browning, J.).  See also Jonas v. Bd. of Comm'rs of Luna Cnty., 699 F.Supp.2d 1284, 1303-1304 (D.N.M. 2010)(Browning, J.)(granting motion to exclude defendant officers' unrelated prior and subsequent incidents of alleged excessive use of force).

In Chamberlain v. City of Albuquerque, the Court did not admit evidence of the officer's use of force in prior and subsequent unrelated incidents, and civil-lawsuit settlements.  See 2005 WL 2313527, at *2.  The Court specifically precluded the plaintiff from introducing evidence or testimony about two prior jury verdicts against the police officer, and the Court would also not allow any evidence pertaining to internal-affairs complaints, or to other civil rights lawsuits and their settlements.  See 2005 WL 2313527, at *2.  The plaintiff sought to introduce the jury verdict

rendered against the police officer in two cases to demonstrate maliciousness in support of the plaintiff's punitive damages claim, to show that the plaintiff did not act in good faith, and for credibility determination purposes. See 2005 WL 2313527, at *1. The plaintiff did not argue that the police officer's bad acts were relevant to establishing that he violated the "objective reasonableness" standard in Graham v. Connor. Chamberlin v. City of Albuquerque, 2005 WL 2313527, at *1.

## LAW REGARDING RULE 608 EVIDENCE

Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness. See Montoya v. Shelden, No. 10-0360, 2012 WL 1132505, at *5 (D.N.M. Mar. 20, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.). Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a). The truthfulness or untruthfulness of a witness may be attacked by opinion or reputation evidence without ever proffering evidence of a good character for truthfulness. See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer as to whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [the credibility of the officer]."). To establish a proper foundation for the opinion or reputation testimony, a witness must show: "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally

-18-

he is regarded." United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996) overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)(quoting United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990)).

> Rule 608(b) provides the rule for admission of specific instances of conduct:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

>> **(1)** the witness; or

>> **(2)** another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 338 F.App'x 765, 770 (10th Cir. 2009)(unpublished). "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence." United States v. Beltran-Garcia, 338 F.App'x at 770.

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

> Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness'

-19-

character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment."  Fed. R. Evid. 608 advisory committee's note to 2003 amendment.  The rule precluding the "admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking credibility . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue." United States v. Fleming, 19 F.3d 1325 (10th Cir. 1994)(citing 27 C. Wright & V. Gold, Federal Practice and Procedure § 5096 at 546-47 (1990)).  This doctrine, "known as 'specific contradiction,'" allows such impeachment "even if the evidence elicited . . . ordinarily might be collateral or otherwise inadmissible." United States v. Crockett, 435 F.3d at 1313 (citing Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1456 (10th Cir. 1997)). See United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008)("If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying.").[8]

It is generally true that "a party may inquire into specific instances of conduct by extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his testimony." See Bennet v. Longacre, 774 F.2d 1024, 1027 (10th Cir. 1985).  Where a party has already attacked a witness' credibility by cross-examination on specific instances of conduct and the witness made a false statement on the stand, however, the party may provide extrinsic evidence to impeach that

---

[8]Professors Charles Alan Wright and Victor James Gold recognized that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 C. Wright & V. Gold, Federal Practice and Procedure § 6117, at 86 (1993 & Supp. 2011).  As a result of the 2003 amendment, Professors Wright and Gold confirm, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness."  28 C. Wright & V. Gold, supra § 6117, at 14 (Supp. 2011).

witness on re-direct, or during a later direct examination.  See United States v. Embry, 452 F.App'x 826, 835 (10th Cir. 2011)(unpublished)(noting that "Rule 608(b)(1) . . . allows impeachment testimony . . . on direct or redirect examination . . . where a party already has attacked the credibility of a witness by referring to specific instances of conduct.").  When a witness makes a false statement while providing testimony, the opposing party is allowed to prove that lie by presenting rebuttal witnesses.  See United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)("[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact.").

It is "permissible impeachment to expose a witness's bias."  United States v. Baldridge, 559 F.3d 1126, 1135 (10th Cir. 2009)(citing United States v. Abel, 469 U.S. 45, 51 (1984)).  "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  United States v. Abel, 469 U.S. at 52 (1984).  Thus, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence."  Montoya v. City of Albuquerque, No. CIV 03-0261, 2004 WL 3426435, at *4 (D.N.M. May 18, 2004)(Browning, J.).  The Tenth Circuit describes bias, based on its definition at common law, as "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party."  United States v. Baldridge, 559 U.S. F.3d at 1135 (citing United States v. Abel, 469 U.S. at 52).[9]

_____

[9]Prejudice is defined as "[a] preconceived judgment formed with little or no factual basis; a strong bias."  Black's Law Dictionary 1229 (J. Garner ed., 9th ed. 2009).  See New Oxford American Dictionary 1378 (3d ed., 2010) ("[P]reconceived opinion that is not based on reason or actual experiences . . . dislike, hostility. . . .").  Bias is defined as: "Inclination; prejudice; predilection."  Black's Law Dictionary 183.  Although bias and prejudice in contemporary discourse may be used interchangeably, with courts and lawyers both asserting that one has bias for something and bias against, they historically have been and are often distinguished by saying that there may be "bias or prejudice."  See e.g., Nevada Com'n on Ethics v. Carrigan, 131 S.Ct. 2343, 2349

## <u>RELEVANT LAW REGARDING PUNITIVE DAMAGES</u>

Although the statute does not provide language of punitive damages for § 1983 claims, the Supreme Court looked to the common law of torts, in holding that punitive damages are available. See <u>Saavedra v. Lowe's Home Ctrs., Inc.</u>, 748 F.Supp.2d 1273, 1298 n. 3 (D.N.M. 2010)(Browning J.)("Section 1983 'was intended to create a species of tort liability in favor of persons deprived of federally secured rights.'")(quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56  (1983)). <u>See</u> <u>also</u> <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 306 (1986)(stating that the amount of the recovery in a § 1983 action is not capped by statute but rather "ordinarily determined according to principles derived from the common law of torts").  The Supreme Court concluded that there is "no reason why a person whose federally guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort cause of action." 461 U.S. at 48-49.  Accordingly, the Supreme Court looked to state and federal tort common law, holding that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  <u>Smith v. Wade</u>, 461 U.S. at 56.  <u>See</u> <u>Youren v. Tintic Sch. Dist.</u>, 343 F.3d 1296, 1308 (10th Cir. 2003)("Unquestionably, punitive damages are available in § 1983 actions and are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.")(quoting <u>Jolivet v. Deland</u>, 966 F.2d 573, 577 (10th Cir.1992))(internal

_____

(2011)(quoting 28 U.S.C. § 144 which makes "any 'personal bias or prejudice' a basis for recusal."). Bias is associated more with an informed reason for favoring a person and prejudice with an informed hostility toward a person.  Bias now appears to be all inclusive, covering prejudice, too, and prejudice covers bias if the preposition "for" follows.  The terms have thus apparently lost any distinction.

quotations and changes omitted).  The recklessness standard has been defined by the Tenth Circuit

as a defendant acting "in the face of a perceived risk that its actions will violate federal law to be

liable in punitive damages."  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999).  The

appropriate focus in awarding punitive damages "must be on whether the defendant's actions call

for 'deterrence and punishment over and above that provided by compensatory damages.'" Youren

v. Tintic Sch. Dist., 343 F.3d at 1308 (quoting Smith v. Wade, 461 U.S. at 54).

## ANALYSIS

The Court will grant in part and deny in part the Defendants' Motion in Limine.  The Court

will exclude evidence of all prior and subsequent § 1983 cases naming Shelden or Lovato as

defendants.  The Court will also exclude evidence the New Mexico State criminal case against

Lovato's.  The Court will allow the Montoyas to present evidence of Shelden's improper signage

in his vehicle through the Montoyas' testimony, because it is probative of the Defendants' scienter.

The Court will also allow the Montoyas to present evidence of Lovato's credibility, through

inquiring about providing false information to Chavez, the investigating officer, and the internal-

affairs investigation board.

## I.   THE COURT WILL NOT ALLOW THE MONTOYAS TO INQUIRE ABOUT UNRELATED CASES AGAINST SHELDEN AND LOVATO.

The Defendants seek to exclude any evidence of other civil or criminal lawsuits in which

Shelden and Lovato are also defendants, because they are irrelevant to the Montoyas' claims, and

because the danger of unfair prejudice would substantially outweigh any probative value of the

cases.  The Montoyas argue that the prior and subsequent cases are probative of Shelden's and

Lovato's bias against suspects with whom they interact in the course of their job as police officers.

With regard to judgments against Shelden and Lovato in § 1983 cases especially, the Montoyas

assert that these past cases are admissible under rule 404(b), as they are offered as evidence of Shelden and Lovato's intent, an element the Montoyas must prove to recover on their request for punitive damages.

      **A.**    **THE COURT WILL NOT ALLOW THE MONTOYAS TO BRING INTO EVIDENCE PRIOR UNRELATED CASES.**

The Montoyas' § 1983 claim for false arrest against Shelden and Lovato turns on whether Shelden and Lovato had probable cause to arrest the Montoyas on April 16, 2007.  Probable cause depends on the circumstances of the Montoyas' actions during the traffic stop. Whether there was probable cause for the Montoyas' arrests depends on whether M. Montoya's and D. Montoya's actions at the scene of the stop gave Shelden and Lovato probable cause to arrest him.  Shelden's and Lovato's past wrongs or other civil cases are inapposite to whether Shelden and Lovato had probable cause to arrest the Montoyas, and, therefore, whether the arrest violated the Montoyas' constitutional rights.

The issue in the Montoyas' § 1983 claim for excessive force against Shelden and Lovato is whether either of the Defendants used excessive force against the Montoyas on April 13, 2007, during the course of the Montoyas' arrest.  The Montoyas' claims, therefore, depend on the reasonableness of Shelden's and Lovato's actions on April 16, 2007, in the course of the Montoyas' arrest.  See Graham v. Connor, 490 U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").  That Shelden and Lovato have been named as defendants in other civil rights complaints before or after April 16, 2007, and because none of the cases was for another interaction with either M. Montoya or D. Montoya, does not make more probable that Shelden and Montoya

-24-

acted unreasonably in this case. Even if, as the Montoyas assert, this evidence has some tendency to shed light on Shelden's or Lovato's mental state, the Montoyas have not put forth any evidence of how Shelden's or Lovato's mental state tends to make more or less probable that their actions were objectively reasonable. See Tanberg v. Sholtis, 401 F.3d at 1167-68 ("Because Plaintiffs' federal claim for excessive force requires assessment of [the officer's] conduct under an objective standard, Plaintiffs have failed to establish the relevance of evidence tending to shed light on aspects of [the officer's] mental state to this claim."); United States v. Martinez, 518 F.3d 763, 769 (10th Cir. 2008)(holding that the police officer's "subjective intent is not relevant to a Fourth Amendment analysis"); Whren v. United States, 517 U.S. 806, 813 (1996)(refusing to evaluate Fourth Amendment reasonableness subjectively in light of the officers' actual motivations). Because Shelden's and Lovato's unrelated cases are not probative of whether their actions in the course of arresting the Montoyas on April 16, 2007, was reasonable, the Court will not allow the Montoyas to offer evidence of their unrelated cases.

The Montoyas allege that, in one of the unrelated § 1983 cases that ended in a judgment against Shelden, Shelden's course of conduct took much the same course as in this case: Shelden pulled over a citizen for a traffic violation, wrote the citizen a ticket, and as he was about to let the citizen go, asked the citizen to follow him back to his car and proceeded to arrest him. The citizen thereafter filed a § 1983 action alleging that Shelden falsely arrested the citizen and used excessive force in violation of the citizen's civil rights. See Tr. at 34:12-24 (Oliveros). While that unrelated case may not address the circumstances of April 16, 2007, the Montoyas assert that it is probative whether Shelden had probable cause and used excessive force against them, because it is evidence of Shelden's "modus operandi" when dealing with citizens at traffic stops. Because the identify of the police officer who used excessive force is not disputed in this case, the Tenth Circuit has

foreclosed the Montoyas' contention that evidence of Shelden's modus operandi is relevant to a § 1983 claim for false arrest or excessive force.  Chavez v. City of Albuquerque,  403 F.3d at 1046 (noting that "proof of a 'modus operandi' is only relevant when there is an issue regarding the defendant's identity.").[10]

### B.   THE COURT WILL NOT ALLOW THE MONTOYAS TO OFFER EVIDENCE OF PRIOR EXCESSIVE FORCE CASES AS EVIDENCE OF SHELDEN'S AND LOVATO'S FOR PURPOSE OF PUNITIVE DAMAGES.

Punitive damages can be awarded in § 1983 claims for excessive force "only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Youren v. Tintic Sch. Dist., 343 F.3d at 1308.  The Montoyas allege that the unrelated cases naming Shelden and Montoya are relevant and admissible, because "the evidence is necessary for the jury to evaluate whether punitive damages are appropriate."  MIL Response at 3.  They assert that the prior excessive force violations by Shelden and Lovato are "relevant for the jury to evaluate whether the particular defendant was motivated by an evil intent . . . [or] reckless or callously indifferent to Plaintiffs."  MIL Response at 3.  Admissibility of evidence under rule 404(b) requires the Court to perform a four-factor test

---

[10]The Court has previously recognized that "[a]lmost all evidence has some tendency to show propensity; the question is whether that is the evidence's sole purpose."  United States v. Mirabal, No. CR 09-3207, 2010 WL 3894147, at *3 (D.N.M. July 31, 2010)(Browning, J.)(citing United States v. Harenberg, 732 F.2d 1507, 1515 (10th Cir.1984)).  This unrelated case may be probative whether Shelden acted reasonably in the course of arresting the Montoyas, a material issue in this case.  If Shelden has lost his temper in the past while dealing with citizens, and if he has done so during traffic stops, even if he has done so once, that information may reflect Shelden's character trait: That he has a short temper.  That short temper makes it more likely that he acted in conformity with that character trait in the course of the Montoyas' arrest, because it makes it more likely that he lost his temper and, perhaps, falsely arrested the Montoyas and/or used excessive force.  Rule 404 prohibits, however, evidence of a person's character trait used to show that person acted in conformity therewith.  How closely the facts of the unrelated case mirror the facts of the Montoyas' arrest does not matter for the admission of the evidence, because the Montoyas are offering it for an improper purpose and it is therefore inadmissible.

(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d at 762.

### 1.    The Evidence of Prior Unrelated Civil Rights Cases Against Shelden or Lovato is Being Offered for a Proper Purpose.

While evidence of a crime, wrong, or other act is inadmissible to prove that a person has a character trait, and acted in conformity with that trait, under rule 404, such evidence "may be admissible for another purpose, such as . . . intent." Fed. R. Evid. 404(b). The Montoyas are offering these unrelated § 1983 cases against Shelden and Lovato as circumstantial evidence of their intent in the course of arresting the Montoyas on April 16, 2007. Thus, because intent is a permissible purpose enumerated under rule 404(b)(2), the Montoyas are offering this evidence for a proper purpose.

### 2.    The Evidence of Prior Unrelated Civil Rights Cases Against Shelden and Lovato, in Which Judgments Were Entered Against Shelden and Lovato for Excessive Force and Punitive Damages, are Relevant to the Montoyas' Request for Punitive Damages.

The second prong of admitting evidence pursuant to rule 404(b) requires the Court to find the proffered evidence relevant. Evidence is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. While intent is not a fact of consequence in most § 1983 claims for excessive force,[11] because liability depends mostly upon whether Shelden and

---

[11]Intent is at issue in every § 1983 claim, because liability of an officer under § 1983 requires proving that the officer acted intentionally. See Daniels v. Williams, 474 U.S. 327 (1986)(holding that, in a § 1983 claim, a plaintiff must prove intent beyond negligence, because the plaintiff must

Lovato acted objectively reasonable under the circumstances, in a § 1983 claim for punitive damages, Shelden and Lovato's intent is of consequence.  The Montoyas are demanding punitive damages, as an element of the claim for punitive damages, and they must prove to the jury that Shelden's and Lovato's actions were motivated by evil intent, or their conduct involved reckless or callous indifference to the Montoyas' constitutional rights.  See Smith v. Wade, 461 U.S. at 56 (holding that, to award punitive damages, the jury must find the defendant's actions were "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").  Although evil intent is an element in the Montoyas' claims for punitive damages, cases of excessive force not ending in a judgment, even where those cases settled, do not tend to make a fact more or less probable, because a case that is not resolved in a judgment does not provide affirmative evidence of Shelden's or Lovato's intent.  Cases that are settled or dismissed do not tell the new Court or the new jury anything about the officers' intent or motive in prior cases; the allegations were never found to be fact, and remain allegations.  The Court should not therefore receive as evidence Shelden and Lovato's past cases that did not end in a judgment against them as

---

"prove a violation of the underlying constitutional right," and a constitutional right cannot be violated by a government officer's negligent conduct); Gray v. University of Colorado Hosp. Authority, 672 F.3d 909, 928-29 (10th Cir. 2012)(noting that "the harm associated with a negligent act is never constitutionally cognizable").  Although the plaintiff must prove intentional conduct, that an officer acted intentionally in using force against a suspect, especially in the course of an arrest, is not difficult to establish, and therefore not usually at issue in § 1983 cases. To find a violation of the Montoyas' constitutional rights, it is not necessary to find that Shelden and/or Lovato had any specific intent to deprive the Montoyas or that either Shelden or Lovato had actual evil intent or ill will toward the Montoyas.  It is sufficient that Shelden and/or Lovato intended the actions which resulted in a violation of the Montoyas' rights.  See Graham v. Connor, 490 U.S. at 397; Parrat v. Taylor; 451 U.S. 527 (1981); Gomez v. Toledo, 446 U.S. 635 (1980); Scott v. United States, 436 U.S. 128, 137-39 (1978); Terry v. Ohio, 392 U.S. 1, 22-27 (1968);  Stringer v. Dilger, 313 F.2d 536, 540 (10th Cir. 1963); Hudson v. New York City, 271 F.3d 62, 70-71 (2d Cir. 2001)(reversing judgment where court instructed jury that an intentional violation of constitutional rights was required).

-28-

evidence that Shelden or Lovato used excessive force, or as evidence that they had an evil motive while doing so in this case. Allegations have little, if any, probative value.

A § 1983 claim for excessive force against Shelden or Lovato ending in a judgment against them, however, indicates that a jury found Shelden and Lovato used force that was unreasonable in light of the circumstances. A judgment entered before the alleged unconstitutional conduct, makes more probable that Shelden or Lovato acted with recklessness for the civil rights of the Montoyas, because it would put Shelden or Lovato on notice of constitutionally reasonable force, making it more probable that they appreciated the risk of using excessive force at the time they did so, and still acted in the face of that perceived risk. See Kolstad v. Am. Dental Ass'n, 527 U.S. at 536 (defining recklessness as a defendant acting "in the face of a perceived risk that its actions will violate federal law"). Judgment against Sheldon and Lovato for a § 1983 claim awarding punitive damages, wherein the jury found that Shelden or Lovato acted with the intent required for punitive damages, makes more probable that they acted with the required intent, a fact of circumstance in this case, in the course of arresting the Montoyas. See Fed. R. Evid. 401. Because past § 1983 cases against Shelden or Lovato that ended in a judgment against them are probative of the level of intent needed for punitive damages, a fact of consequence in this case, past § 1983 cases against Lovato and Shelden that ended in judgments against them are relevant.

> **3.    The Danger of Unfair Prejudice of the Admission of Evidence of Prior Unrelated Civil Rights Cases Against Shelden or Lovato, in Which a Judgment Was Entered Against Shelden or Lovato for Excessive Force and Punitive Damages, Substantially Outweighs its Probative Value.**

The Supreme Court has made clear that punitive damages are intended to punish a defendant for reprehensible conduct in this case, not for conduct in other similar, unrelated cases:

> A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be

-29-

> punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.  Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis. . . .

See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422-23 (2003).  In this case, although evidence of the unrelated § 1983 cases against Shelden and Lovato may have probative value of Shelden's or Montoya's mental state in the course of their arrests of the Montoyas', the Court concludes that the danger of unfair prejudice substantially outweighs any probative value the evidence may have.  Federal courts faced with the question of admitting, under rule 404(b), defendant officers' other unrelated § 1983 cases as evidence of the defendant officers' intent for punitive damages have reached the same conclusion in performing a 403 balancing test.  See Berkovich v. Hicks, 922 F.2d 1018, 1023 (2d Cir. 1991)(holding that, where the plaintiff offered evidence of the defendant officers' unrelated civil rights complaints as evidence of intent, the district court's exclusion of the cases was proper, because "exoneration of [the defendant] on six of the seven prior complaints certainly lessens the probative value of [the] similar act evidence, tilting the scales further toward a finding of undue prejudice"); Baker v. Cnty. of San Diego, No. 09-CV-1194 BEN, 2012 WL 1903899, at *3 (S.D. Cal. May 24, 2012)(concluding that the court should exclude evidence of prior alleged civil rights violations, offered as proof of the officer's intent for punitive damages, because no violation had been proven, lessening the probative value, and "the evidence may be used to impose liability for an improper basis, making the evidence inadmissable under Rule 403"); Berardi v. Village of Sauget, Ill., Civil No. 05-898-CJP, 2008 WL 2782925, at *5 (S.D. Cal. May 24, 2012)(concluding that allowing prior excessive force complaints against the defendants, which ended in settlement or dismissal, to be admitted as relevant for punitive damages, presented "too great a chance of prejudice and confusion of the issues regarding liability, as well as  a

substantial chance of a duplicative punitive damages award"). In O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988), a panel of the United States Court of Appeals for the Second Circuit divided as to whether the admission of a § 1983 judgment entered against the defendant for an incident that occurred one month before the incident in that case was an error, with one judge finding that it was an error, one judge concluding that it was not, but that admission was harmless, and the third judge finding that the admission was harmless, and not reaching the issue whether the admission was proper. See 839 F.2d at 11. The Honorable Judge Jon O. Newman, United States Circuit Judge, would have held that the prior case was relevant to the plaintiff's punitive damages claim, because it was probative of the defendant police officer's intent, therefore offered for a proper purpose under 404(b) and admissible. 839 F.2d at 11 n. 1.

While federal courts -- outside of the Tenth Circuit and mostly in the Second Circuit -- have left open the possibility that judgment might be admissible to show intent for punitive damages, no court has yet admitted such evidence, and the Second Circuit decision in O'Neill v. Krzeminski seems the most open to the possibility. Just three years after its decision in O'Neill v. Krzeminski, however, the Second Circuit, in Berkovich v. Hicks, affirmed the exclusion of an officer's other § 1983 cases offered as proof of intent. Moreover, the Tenth Circuit's decision in Tanberg v. Sholtis seems to have foreclosed, or at least suggests caution in recognizing, this possibility in the circuit. See Tanberg v. Sholtis 401 F.3d at 1170 (affirming the district court's exclusion of the police officer's unrelated § 1983 cases, noting that "a trial court does not abuse its discretion in excluding evidence of only slight probative value that creates a substantial danger of unfair prejudice"). In Tanberg v. Sholtis, the Tenth Circuit reasoned that a defendant officer's past instances of excessive force have very little probative value for proving intent in an unrelated instance:

If by their argument that the proffered evidence would show intent, absence of

> mistake, and deliberate unlawful conduct, Plaintiffs mean that the proffered evidence
> would show that Officer Sholtis knew that he was using an objectively unreasonable
> degree of force because he had done so before, the evidence they have offered would
> do very little to prove their point.

401 F.3d at 1169.  Accordingly, the Court concludes that the danger of unfair prejudice substantially

outweighs any probative value the admission of any of Shelden's or Lovato's past § 1983 cases or

judgment may have on their intent during the arrest of the Montoyas in this case.  Like the cases in

Tanberg v. Sholtis, while the judgments may have some probative value on intent, that probative

value is limited; on the other hand, judgments in other cases could be very prejudicial on liability.

While there is probative value in a series of § 1983 cases lodged against Shelden and Lovato,

and in § 1983 excessive force case judgments against Shelden and Lovato awarding punitive

damages, none of these prior cases involved the Montoyas.  Moreover, although, in O'Neill v.

Krzeminski, Judge Newman would have held that the judgment against the officer was relevant and

offered for a proper purpose, Judge Newman did not address whether the prior judgment would have

withstood a rule 403 balancing test, as the Tenth Circuit requires when admitting evidence under

rule 404(b).  Although such circumstantial evidence offers some probative value of Shelden's and

Lovato's intent in the course of arresting the Montoyas, that probative value is minimal, because a

judgment against Shelden or Montoya, even a judgment for punitive damages, is only circumstantial

evidence of their intent during this use of force that occurred on this unrelated, dissimilar occurrence

for which the suit was filed.  As such, it could inflame the jury and cause them to award punitive

damages based on the reprehensibility of the conduct in those incidences, rather than the Montoyas'

arrest in this case.  See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 422-23 ("A

defendant's dissimilar acts, independent from the acts upon which liability was premised, may not

serve as the basis for punitive damages.").  Moreover, the Court is not ignorant to the real danger

of prejudice to Shelden and Lovato that comes from the Court's admission of either cases or judgments against them.  See Baker v. Cnty. of San Diego, 2012 WL 1903899, at *3 (noting that "the [prior alleged civil rights violations] may be used to impose liability for an improper basis"). Once the Court admits evidence of the previous judgments, even with a limiting instruction, the jury may not be able to compartmentalize the evidence and use the judgments only for punitive damages; the Court is concerned that the jury, even if it tries mightily to faithfully follow the instruction to not use the judgments for an improper purpose, will use them to say that, because Shelden and Lovato used excessive force in the past, they did so again in this case. The Court, therefore, concludes that the danger of unfair prejudice to Shelden and Montoya of allowing other § 1983 cases or judgments against them into evidence, even for punitive damages, substantially outweighs any probative value the evidence may have.

There is a final reason that the Court will not admit the judgments.  The evidence is not as clear as the judgments first appear.  After the juries declared their judgments, the parties apparently reached settlements in the cases.  In Shelden's case, the parties entered a stipulation asking the Honorable Bruce D. Black, United States District Judge, to set aside the verdict, see Montoya v. Franklin, No. CIV 08-0478 BB/RLP, Defendant Gerald Shelden's Unopposed Motion to Set Aside the Judgment, filed October 13, 2009 (Doc. 73)("Defendant Gerald Shelden . . . moves this Court to set aside the Judgment . . . . As grounds, Defendant states that the parties have stipulated to set aside the Judgment entered against Gerald Shelden."); Judge Black did so finding cause, see No. CIV 08-0478 BB/RLP, Stipulated Order Setting Aside Judgment Against Defendant Gerald Shelden, filed October 15, 2009 (Doc. 74)("[T]he Court having been advised of the parties' stipulation finds that good cause exists to grant Defendants' Unopposed Motion. . . . [T]he Judgment entered against Defendant Gerald Shelden on August 28, 2009 is hereby set aside").  In Lovato's case, after the jury

delivered the verdict, the parties submitted a stipulation of the parties, advising that the parties "have resolved all issues in this matter." Canizales v. Armendariz, No. CIV 07-0198 JB/RHS, Stipulated Order of Dismissal, filed September 2, 2008 (Doc. 119). The Court did so. See Canizales v. Armendariz, Doc. 119. Thus, it appears the cases may have settled. The Court believes that these are additional reasons counseling the Court not to admit the judgments into evidence; it is not clear whether the cases were settled or the judgments continue to stand. This situation suggests that the issue of what judgments may be left in these cases should not be left to this jury in this case; given that it is difficult for the Court to clearly understand the circumstances surrounding these judgments, the Court believes that the prejudice to Shelden and Lovato substantially outweighs the unclear probative value of these judgments.[12]

---

[12]At the trial, at the mid-morning break, the Court indicated it was inclined to keep out Shelden's judgment in No. CIV 08-0498, because of Judge Black's order setting aside the judgment, but was inclined to let in Lovato's jury verdict. See Transcript of Trial at 104:25-105:6 (taken October 9, 2012)(Court)("Trial Tr."). At the time, the Court did not remember there was further court action after the verdict and the Court's final judgment in Lovato's case. During lunch, the Court read Berkovich v. Hicks, Baker v. Cnty. of San Diego, Berardi v. Village of Sauget, Ill., O'Neill v. Krzeminski, and Carson v. Polley, 689 F.2d 562, 572-73 (5th Cir. 1982)(holding that district court's exclusion of a recent report indicating that the defendant deputy sheriff used "intentional hostility towards other detainees on earlier occasions" was error, because the report was more probative than prejudicial; but a report that the other officer had a temper, made three years prior to the accident was properly excluded under rule 403). After lunch, the Defendants began a motion to recuse the Court, because of the Court's previous indication that it would allow the Montoyas' to offer Lovato's judgment into evidence, see Trial Tr. at 169:15-19 (Griffin), but the Court cut off counsel, stating that it was inclined not to allow any judgment into evidence in this case, see Trial Tr. at 169:20-170:6. The Defendants persisted in the motion to recuse because of the Court's role in Lovato's earlier case. See Trial Tr. at. 175:7-176:4 (Court, Griffin). The Court denied the motion. See Trial Tr. at 178:4 (Court). The Court did not believe that it had a conflict, because it did not remember that there had been further action after the judgment, so the Court is in no different position than would be any other judge in the trying to interpret filing in the docket, and his or her own legal docket. The Court's entry of the Stipulated Order of Dismissal does not make it a witness in this case, but the Court is acting as judge in both. Also, the Court does not believe its presiding over both cases creates an appearance of impropriety; as the Court often sees the same parties, experts, and defendants in multiple cases. The Court does not believe that experience is a disqualifying feature.

Because evidence of other unrelated cases against Shelden and Montoya are not probative or sufficiently probative whether they had probable cause to arrest the Montoyas on April 16, 2007, whether they acted reasonably in the course of the Montoyas' arrest on that day, or whether they acted with the required intent to reward punitive damages, the Court will not permit the Montoyas to inquire about the Defendants' other unrelated cases or offer evidence of them.[13]

## II.   THE COURT WILL ALLOW THE MONTOYAS TO ASK LOVATO WHETHER HE LIED TO A CITIZEN IN THE PAST AND WHETHER HE LIED TO AN INTERNAL INVESTIGATION BOARD

Lovato was involved in an automobile accident with Chavez, an Albuquerque resident, while off-duty, and this accident resulted in an internal affairs investigation.  See Montoya v. Sheldon, No. CIV 10-0360, 2012 WL 2383822, at *2 (D.N.M. June 8, 2012)(Browning J.)(noting the Court's review of the internal-affairs investigation of the accident).  The Defendants ask the Court to exclude all evidence of Lovato's internal-affairs investigation, the state criminal case and charges that came out of the underlying incident, and the circumstances of the underlying incident.  The Montoyas contend that the information is relevant to Lovato's credibility, and his character for truthfulness or untruthfulness, because they allege that he lied to the woman at the sene of the accident and provided false information to the internal-affairs investigation board.  See MIL Response at 6; Tr. at 33:2-12 (Oliveros).

The Court notes at the outset that the internal-affairs investigation and related circumstances have been the subject-matter of two prior opinions in this case. See Montoya v. Sheldon, 2012 WL

---

[13]When the Court indicated at trial that it might allow the judgment against Lovato into evidence, the parties indicated that they would not be adverse to bifurcating the trial to allow a separate proceeding for punitive damages.  Because the Court has determined that, given the Court's subsequent actions in Canizales v. Armendariz, the evidence is not a reliable indication of a judicial finding of excessive force, or at most, has little probative value, the Court will not bifurcate the case to allow in this one piece of evidence.

2383822 (Doc. 43); Montoya v. Sheldon, 2012 WL 1132505 (D.N.M. Mar. 20, 2012)(Doc. 39).  In

both opinions, the Court recognized that, "[o]nce a defendant takes the stand, her credibility is at

issue as with any other witness."  Montoya v. Sheldon, 2012 WL 2383822, at *3 (quoting United

States v. Schuler, 458 F.3d 1148, 1155 (10th Cir. 2006)).  The Court concluded in its first

Memorandum Opinion and Order that the internal-affairs investigation and the underlying accident

were permissible topics on cross-examination, but that the Court retains discretion to limit the

questioning:

> [T]he Plaintiffs could still ask questions of Lovato about specific instances of
> conduct that bore on his character for truthfulness.  See Fed. R. Evid. 608(b).  They
> could also ask these same questions to any witnesses who were to testify about
> Lovato's character for truthfulness.  See Fed. R. Evid. 608(b).  As one of the
> advisory committee's notes to rule 608(b) provides: "[S]pecific instances may be
> inquired into on cross-examination of the principal witness[, whose character has
> been attacked,] or of a witness giving an opinion of his character for truthfulness."
> Fed. R. Evid. 608(b) advisory committee's note to 1972 proposed rule.  The evidence
> from the internal affairs investigation could assist the Plaintiffs in formulating
> questions to attack Lovato's credibility during their examination of Lovato.  "Once
> a defendant takes the stand, her credibility is at issue as with any other witness."
> United States v. Schuler, 458 F.3d 1148, 1155 (10th Cir. 2006).  Leaving the scene
> of an accident is conduct that is potentially probative of a witness' character for
> truthfulness or untruthfulness, particularly when that witness is a police officer who
> a jury would presume would be familiar with the law and its requirements.  It is also
> notable that there was a subsequent internal affairs investigation into Lovato's
> behavior.  Courts have permitted cross-examination of parties or witnesses on similar
> matters . . . , including matters that were arguably less probative of a witness'
> character for truthfulness than this line of questioning.  See United States v. Davis,
> 183 F.3d 231, 256-57 (3d Cir. 1999)(concluding that detailed questioning of an
> officer, in a case regarding criminal conduct in which the officer had allegedly
> engaged, including obstruction of justice and witness tampering, about an officer's
> suspension for misappropriating gasoline for personal use and for destroying a young
> man's subway pass and lying to internal affairs about it were sufficiently probative
> of truthfulness); United States v. Sellers, 906 F.2d 597, 603 (11th Cir. 1990)(holding
> that, in a case involving criminal charges for violating a suspect's constitutional
> rights, cross-examination of defendant about why he left or was fired from his job
> as a security officer because of claiming expenses to which he was not entitled was
> probative of the defendant's character for truthfulness); Lewis v. Baker, 526 F.2d
> 470, 475-76 (2d Cir. 1975)(concluding that cross-examination of plaintiff about an
> employment application in which he falsely stated he had not received psychiatric

-36-

> treatment within the past five years was directly relevant to party's capacity to truth-
> telling under the circumstances of the case). The Court, of course, retains discretion
> to limit this line of questioning if it becomes cumulative or becomes too remote in
> comparison to the matters at issue in the case. See United States v. Schuler, 458 F.3d
> at 1155 ("Consequently, under Federal Rule of Evidence 608(b), it is within the
> discretion of the district court to decide whether a defendant may be cross-examined
> about prior conduct concerning her character for truthfulness, subject always to the
> balancing test of Federal Rule of Evidence 403."). The Court also may not allow
> extrinsic proof of leaving the scene of the accident and may require the Plaintiffs to
> accept Lovato's answer.

Montoya v. Sheldon, 2012 WL 1132505, at *9. The Court still agrees with its reasoning, and

concludes that the specific instances of conduct are probative of Lovato's character for truthfulness

or untruthfulness, and the Montoyas can inquire into these issues on cross-examination under rule

608(b).

While the Court finds Lovato's conduct of lying to Chavez, including providing a false CAD

number and providing false information to a board during an internal-affairs investigation into his

conduct probative of Lovato's character for untruthfulness, in allowing the Montoyas to cross-

examine Lovato on these instances of conduct, the Court must balance the danger of unfair prejudice

such evidence may have on the case. See United States v. Schuler, 458 F.3d at 1155

("Consequently, under Federal Rule of Evidence 608(b), it is within the discretion of the district

court to decide whether a defendant may be cross-examined about prior conduct concerning her

character for truthfulness, subject always to the balancing test of Federal Rule of Evidence 403.").

The Defendants contend that evidence that Lovato provided false information to Chavez at the scene

of the accident is likely cumulative and that the Court should therefore exclude this part of the story,

given that the gravity of providing false information to an internal-affairs investigation board is so

great.[14]  That Lovato used his position as a police officer in providing false information at the scene of the accident, representing that he was on duty and had reported the accident, leads the Court to conclude that the evidence is probative of Lovato's character for truthfulness.  The danger of unfair prejudice to the Defendants, therefore, does not outweigh the probative value that the false information Lovato provided at the accident adds to the false information that he provided to the internal-affairs investigation.  The Court finds, however, that  introduction of the circumstances of the corresponding criminal case against Lovato for leaving the scene of the accident will be largely cumulative and could present a danger of requiring a series of mini-trials.  See Kinan v. City of Brockton, 876 F.2d 1029, 1034 (1st Cir. 1989)(holding evidence trial court excluded proper, because such evidence "would inevitably result in trying those cases or at least portions of them, before the jury.").  At this time, these remaining charges are not a conviction.  Because the likely danger of unfair prejudice from the corresponding criminal case substantially outweighs the minimal probative value that the evidence adds to Lovato's character for truthfulness, the Court will not allow the Montoyas to present evidence of the criminal charges or case.

The Court will therefore allow the Montoyas to cross-examine Lovato as to the following: (i) that he provided false information to Chavez at the scene of an accident, (ii) that he represented to Chavez that he was on duty at the time of the accident when he was not; (iii) that he provided her

---

[14]A lie between private citizens may, in many cases, have minimal probative value to one's credibility under many circumstances.  As a police officer, however, Lovato has a duty to the public, beyond that of the average citizen, to be forthcoming and ethical. While police often like to stay undercover or to trick a criminal, a lie to the public in this case has no mitigating circumstances. Lovato's represention to a private citizen after being involved in an accident with her that he was on-duty, when in reality he was not, and providing her with a fake CAD number and false information regarding an incident report is not only a violation of Lovato's ethical duty, but is an abuse of his position.  He appears to be trying to deny her what is fair and just and/or protect himself.

with a false CAD number; and (iv) that he provided false information to the internal-affairs investigation board during the course of the subsequent investigation. The Court will not permit the Montoyas to inquire any further into the internal-affairs investigation, present evidence that Lovato was criminally charged as a result of the incident, or present evidence of the subsequent criminal charges.

### III.   IF LOVATO DOES NOT ADMIT THAT HE LIED IN THE PAST TO CHAVEZ AND TO AN INVESTIGATION BOARD, THE COURT WILL ALLOW THE MONTOYAS TO PROVIDE THE TESTIMONY OF THE DETECTIVE INVOLVED IN THE INVESTIGATION

If Lovato answers the questions reflecting his character for truthfulness and untruthfulness that the Court is permitting, then the Court will not permit the Montoyas any further questions about the matter and will not allow them to present any extrinsic evidence of the specific instances of conduct. If, however, Lovato does not answer the questions truthfully, but rather represents to the Court that he did not provide false information to Chavez and the internal-affairs investigation board, the Court will allow the Montoyas to call the detective involved in the internal affairs investigation to prove the conduct extrinsically.

Rule 608(b) provides:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

(1) the witness; or

(2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). The text of rule 608(b) prevents the Montoyas from offering into evidence the internal investigation report, any evidence from the accident with Chavez, and from putting on the

stand a witness to provide testimony of these lies at the outset of the case.  Should Lovato disclaim any of the information regarding his providing false information to Chavez or the investigation board, the Court will allow the Montoyas to prove up the lies extrinsically under the specific contradiction doctrine.  See United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008)("If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying.")(internal quotations and alterations omitted); United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)(holding that, under the specific contradiction doctrine, "when a [witness] makes a false statement during direct testimony, the [opposing party] is allowed to prove, either through cross-examination or by rebuttal witnesses, that the [witness] lied as to that fact.").  While the Court will not admit the internal-affairs investigation report into evidence, should Lovato make a false statement on the stand regarding either the internal-affairs investigation, or the Chavez accident, the Court will allow the Montoyas to call one of the investigation officers or Chavez to testify to Lovato's misrepresentations.

## IV.   THE COURT WILL ALLOW M. MONTOYA TO TESTIFY TO SEEING SIGNAGE IN THE BACK OF SHELDEN'S POLICE CAR AND TO TESTIFY TO THE CONTENTS OF THAT SIGNAGE.

The Defendants request the Court to exclude "Improper Character Evidence against any of the Defendants (Including Reference to 'New Miranda Rights' & other signage from Officer Shelden's police vehicle)."  Motion in Limine at 2.  The Montoyas will testify to seeing signage in the back of Shelden's police car and they assert that the signage referenced "New Miranda Rights," distorting the rights that criminal suspects are read advising them of their rights after the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436 (1966).  To the extent that the Defendants

allege the signage is offered as character evidence or a bad act under rule 404(b),[15] because the Montoyas are seeking punitive damages, Shelden's intent in his conduct on April 16, 2007, is an element of the case. See Smith v. Wade, 461 U.S. at 56 ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). Shelden had some subjective intent to convey a message to the suspects that he transported in his police car when he placed a sign in the back of a police car that misstates a suspect's rights under the Fifth Amendment of the United States Constitution. The sign in the back of the car, therefore, is relevant to a material element of the Montoyas' claim and offered for a proper purpose, as evidence of his intent. Shelden's response, that the signs were a joke, goes to the weight of the evidence and does not counsel for exclusion.

The possible prejudice of the Montoyas' testimony about the sign does not substantially outweigh its probative value. If Shelden's subjective intent was to be humorous and place the suspects, whom he has just arrested and will shortly likely be placed in a detention facility, in a light-hearted mood, he can offer that testimony at trial, and evidence of the sign may not be prejudicial. If, on the other hand, that sign is evidence that Shelden was deliberately indifferent to the civil rights of the suspects whom he detained, and, though that evidence may be prejudicial to his defense, because it is an element the Montoyas must prove for their punitive damages claim, the danger of unfair prejudice does not outweigh the evidence's probative value. The sign may also go

---

[15]Because the Montoyas saw the sign while the Defendants were in the course of arresting them, the Court believes that the Montoyas' first-hand knowledge of the sign is res gestae evidence, rather than evidence of a prior or subsequent bad act. United States v. Ganadonegro, No. 09-0312, 2011 WL 3957549, at *4 (D.N.M. Aug. 30, 2011)(Browning, J.)(noting that res gestae evidence is "[p]roper background evidence [which] has a causal, temporal or spatial connection with the charged offense.")(citing United States v. Hardy, 288 F.3d 745, 748 (6th Cir. 2000)).

to emotional or punitive damages.  The Court will therefore let the Montoyas testify to the signage that they saw in the back of Shelden's police cruiser and the effect the sign had on them.

**IT IS ORDERED** that the Defendants' Motion in Limine to Exclude Introduction of Evidence from Other Cases or Claims Brought Against Defendants and any Evidence of Allegations of Prior and Subsequent Bad Acts and Memorandum in Support Thereof, filed September 4, 2012 (Doc. 56), is granted in part and denied in part.  The Court will not allow Plaintiffs David Montoya and Michael Montoya to present any evidence of unrelated civil rights cases in which Defendant Gerald Shelden and Defendant Angelo Lovato are Defendants.  The Court will allow the Montoyas to inquire about Lovato's false statements related to his accident with Anna Chavez, both to her and to the internal-affairs investigators.  Should Lovato not answer the Montoyas' questions truthfully, the Court will permit the Montoyas to prove the false statements extrinsically.  The Court will allow the Montoyas to testify about the sign that Shelden posted in the back of his police car.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Timothy M. Padilla
Ignacio V. Gallegos
Timothy M. Padilla & Associates, P.C.
Albuquerque, New Mexico

-- and --

Louren M. Oliveros
Gorence & Oliveros P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*

-42-

David J. Tourek
  City Attorney
Stephanie M. Griffin
Benjamin I. Sherman
  Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

*Attorneys for the Defendant*s