# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID MONTOYA and
MICHAEL MONTOYA,

      Plaintiffs,

vs.                                                                    No. CIV 10-0360 JB/WDS

GERALD SHELDON, an Officer Employed
by the Albuquerque Police Department, a
Subsidiary of the City of Albuquerque,
Individually and in his Official Capacity,
ANGELO LOVATO, an Officer Employed
by the Albuquerque Police Department, a
Subsidiary of the City of Albuquerque,
Individually and in his Official Capacity, and
THE CITY OF ALBUQUERQUE,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion in Limine Requesting

the Exclusion of Testimony From Certain of Plaintiffs' Witnesses, filed September 4, 2012 (Doc.

57). The Court held a hearing on September 19, 2012. The primary issues are: (i) whether the Court

should exclude Anna Chavez, Sergeant G. Hicks, Lieutenant L. Sanchez, and Sergeant J. Peck,

witnesses who will proffer testimony relating to Defendant Officer Angelo Lovato's prior false

statements to all four of them in connection with an accident involving Lovato, because Plaintiffs

Michael Montoya and David Montoya failed to disclose them as witnesses before trial and because

they will provide cumulative testimony; (ii) whether the Court should exclude the testimony of

Maurice Moya, the Albuquerque field investigator who took pictures at the scene of the accident,

because the Montoyas failed to disclose him as a witness before trial; (iii) whether the Court should

exclude the testimony of Montoyas' family members, which they listed as witnesses to provide

personal injury and emotional distress damages testimony, because they are not expert witnesses and their testimony will be cumulative; (iv) and whether the Court should exclude the testimony of Marcy Sanner, M. Montoya's live-in partner, who is an eyewitness to a portion of the incident giving rise to the Montoyas' complaint. The Court will grant in part and deny in part the Defendants' motion. Because Chavez', Hicks', Sanchez', and Peck's testimony will be relevant as impeachment evidence only if Lovato provides false testimony on the stand, and because Hicks', Sanchez', and Peck's testimony will be largely cumulative, the Court will allow only Chavez and one of the three police officers to testify if the Montoyas should need to impeach Lovato's false statements. The parties agree that Moya will not be called as a witness, and the Court, therefore, will exclude Moya from the trial. Because Virginia R. Montoya, Casper Montoya, Maxine Baca, and Marcy Sanner are related to the Montoyas, knew them before the incident, and can testify to how the incident has affected them, the Court will allow all five witnesses to provide lay testimony in support of the Montoyas' request for emotional distress and compensatory damages. Sanner, in addition to knowing the Montoyas personally, is an eyewitness to a portion of the incident. The Court will therefore allow her to testify at trial to her observations at the scene.

## FACTUAL BACKGROUND

The Court has explained the facts of this case in its prior Memorandum Opinion and Order, filed October 7, 2012 (Doc. 83), and its Memorandum Opinion and Order, filed October 12, 2012 (Doc 101), and incorporates by reference those discussions of the facts here. The Court will include additional facts pertinent to this motion. The primary issues are whether the Defendants used excessive force, unlawfully arrested, and maliciously prosecuted the Montoyas. The Defendants contend that Sanner, V. Montoya, C. Montoya, Baca, Chavez, Hicks, Sanchez, Peck, and Moya, were not present as the incident at issue was occurring. The Montoyas maintain that Sanner is an

eyewitness to a portion of the incident giving rise to their Complaint.  Sanner drove by the scene of the accident and observed D. Montoya laying on the ground, red in the face, and with either Shelden or Lovato on his back. The Montoyas also contend that Sanner has personal knowledge about M. Montoya's damages.

The three police officers, Hicks, Sanchez, and Peck, and Chavez, all have personal knowledge of false statements that Lovato made to them regarding an accident in which Lovato was involved with Chavez.  Sanner is the mother M. Montoya's children and has lived with him since before the incident with Shelden and Lovato. C. Montoya, V. Montoya, and Baca are the Montoyas' relatives, and have maintained close, personal relationships with the Montoyas since long before the incident.

## PROCEDURAL BACKGROUND

On September 4, 2012, the Defendants filed Defendants' Motion in Limine Requesting the Exclusion of Testimony from Certain of Plaintiffs' Witnesses.  See Doc. 57 ("Motion in Limine"). In their motion, Defendants City of Albuquerque, Shelden, and Lovato move the Court, pursuant to rules 401, 402, 403, 602, 701, and 801 of the Federal Rules of Evidence, for the exclusion of testimony during trial from the following witnesses that the Montoyas have identified:  (i) a field investigator who took photographs on the date of the incident; (ii) Sanner; (iii) V. Montoya; (iv) C. Montoya; (v) Baca; (vi) Moya; (vii) Chavez; (viii) Hicks; (ix) Sanchez; and (x) Peck.  See Motion in Limine at 1.  The Defendants contend that the testimony is irrelevant under rules 401 and 402; more prejudicial than probative, in violation of rule 403; a waste of time under rule 611; outside the particular witness' personal perception or knowledge, in violation of rule 602; or inadmissible hearsay under rule 801.  See Motion in Limine at 2-3, 4-5.

The Defendants contend that the Montoyas never disclosed Moya, Chavez, Hicks, Sanchez,

and Peck as witnesses in the Montoyas' Initial Disclosures, in their answers to discovery, or in the Pre-Trial Order to which the parties agreed.  See Motion in Limine at 2.  The Defendants argue that the Court should, pursuant to rules 16 and 37(c) of the Federal Rules of Civil Procedure, preclude these witnesses from testifying.  Motion in Limine at 2.  The Defendants also ask the Court to exclude these five witnesses on the basis of rules 401, 402, 403, and 611.  See Motion in Limine at 2.  The Defendants request that the Court grant the Defendants' motion in limine requesting the exclusion of testimony from all of the witnesses set forth in its motion.  See Motion in Limine at 4.

On September 17, 2012, the Montoyas filed the Plaintiffs' Response to Defendants' Motion in Limine Requesting the Exclusion of Testimony From Certain of Plaintiffs' Witnesses [Doc. 57], responding to the Defendants' Motion in Limine.  See Doc. 65 ("MIL Response").  The Montoyas maintain that they have previously identified Sanner, C. Montoya, V. Montoya, and Baca as witnesses.  See MIL Response at 1.  The Montoyas assert that the witnesses all have relevant and necessary, first-hand information related to the trial, and therefore there is no proper basis on which the Court should exclude the witnesses.  See MIL Response at 1-4.  Specifically, they contend that the Court should not exclude testimony from these witnesses, because: (i) Sanner was a witness to the incident and has first-hand knowledge related to M. Montoya's emotional damage claims, see MIL Response ¶ 1, at 1-2; (ii) C. Montoya, V. Montoya, and Baca each had a personal relationship with both Montoyas and will give testimony related to the extent of the Montoyas' damages, see MIL Response ¶ 2, at 2; and (iii) Chavez, Hicks, Sanchez, and Peck all have first-hand knowledge of information relevant to Lovato's credibility and misuse of his authority as a police officer, see MIL Response ¶ 3, at 2-3.

The Court held a hearing on September 19, 2012.  The Court stated that, because of Sanner's observation of the incident, the Court would likely not exclude her testimony, would allow C.

-4-

Montoya, V. Montoya, and Baca to testify as damages witnesses, and asked the Montoyas if they could bring in the information to which Chavez, Sanchez, Hicks, and Peck would testify through only one witness.  See Transcript of Hearing at 43:20-44:5 (September 19, 2012)(Court)("Tr.").[1] The Montoyas responded that they could bring out the testimony through one of the sergeants, Hicks or Peck.  See Tr. at 44:9-11 (Oliveros).  The Defendants argued that, if the Court was going to let one of the Montoyas' witnesses discuss Lovato's credibility, "it would have to come in through one of the police officers versus Ms. Chavez," because "her testimony is going to be [so] open-ended and . . . [not] limited to what Officer Lovato said or [did not say]."  Tr. at 45:6-12 (Griffin).  The Montoyas asserted that the best way to proceed would be to allow one officer to testify, but to allow Chavez to testify, with proper direction to limit her testimony.  See Tr. at 45:21-46:14 (Oliveros). The Court stated that it would take under consideration whether it would allow both Chavez and an officer testify.  See Tr. at 46:18-21 (Court).  The parties agreed that the police field investigator, Maurice Moya, who took the pictures at the scene, would not testify.  See Tr. at 47:25-48:6 (Griffin, Court).

## LAW REGARDING RULE 608 EVIDENCE

Rule 608 of the Federal Rules of Evidence provides mechanisms for attacking witnesses' character for truthfulness or untruthfulness.  See Montoya v. Shelden, No. 10-0360, 2012 WL 1132505, at *5 (D.N.M. Mar. 20, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.).  Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

character is admissible only after the witness's character for truthfulness has been
attacked.

Fed. R. Evid. 608(a).  The truthfulness or untruthfulness of a witness may be attacked by opinion

or reputation evidence without ever proffering evidence of a good character for truthfulness.  See

United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial

court's discretion to prohibit cross-examination of a police officer as to whether he had been

suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called

a member of the department to testify directly about his opinions or reputation of [the credibility of

the officer].").  To establish a proper foundation for the opinion or reputation testimony, a witness

must show: "such acquaintance with the person under attack, the community in which he has lived

and the circles in which he has moved, as to speak with authority of the terms in which generally

he is regarded."  United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996), overruled on other

grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)(quoting United States v.

Bedonie, 913 F.2d 782, 802 (10th Cir. 1990)).

>Rule 608(b) provides the rule for admission of specific instances of conduct:

>Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible
>to prove specific instances of a witness's conduct in order to attack or support the
>witness's character for truthfulness.  But the court may, on cross-examination, allow
>them to be inquired into if they are probative of the character for truthfulness or
>untruthfulness of:

>>(1) the witness; or

>>(2) another witness whose character the witness being cross-examined has
>>testified about.

Fed. R. Evid. 608(b).  "Under Federal Rule of Evidence 608(b), specific unrelated instances of a

witness's prior misconduct may be used to impeach the witness at the discretion of the court,

however, only to the extent the misconduct reflects on the witness's character for truthfulness."

United States v. Beltran-Garcia, 338 F.App'x 765, 770 (10th Cir. 2009)(unpublished).   "Though
Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion
must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403,
which address the relevance and probative value of possible evidence."   United States v.
Beltran-Garcia, 338 F.App'x at 770.

> Although 608(b) of the Federal Rules of Evidence does state that specific instances
> of misconduct may be admissible to impeach a witness, that rule does not require or
> imply that every negative bit of evidence existing concerning a witness may be
> dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence
applies only when the sole reason for proffering that evidence is to attack or support the witness'
character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction
impeachment."  Fed. R. Evid. 608 advisory committee's note to 2003 amendment.  The United
States Court of Appeals for the Tenth Circuit has noted:

> This rule precludes the admission of extrinsic evidence of specific instances of
> conduct of the witness when offered for the purpose of attacking credibility.  The
> rule does not apply, however, when extrinsic evidence is used to show that a
> statement made by a defendant on direct examination is false, even if the statement
> is about a collateral issue.

United States v. Fleming, 19 F.3d 1325, 1331 (10th Cir. 1994)(citing 27 C. Wright & V. Gold,
Federal Practice and Procedure § 5096, at 546-47 (1990)).   This doctrine, "known as 'specific
contradiction,'" allows such impeachment "even if the evidence elicited . . . ordinarily might be
collateral or otherwise inadmissible."  United States v. Crockett, 435 F.3d at 1313 (citing Mason v.
Oklahoma Turnpike Auth., 115 F.3d 1442, 1456 (10th Cir. 1997)).  See United States v. Cerno, 529
F.3d 926, 944 (10th Cir. 2008)("If there is evidence that specifically contradicts a witness's

testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying.").[2]

It is generally true that "a party may inquire into specific instances of conduct by extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his testimony." Bennet v. Longacre, 774 F.2d 1024, 1027 (10th Cir. 1985). Where a party has already attacked a witness' credibility by cross-examination on specific instances of conduct and the witness made a false statement on the stand, however, the party may provide extrinsic evidence to impeach that witness on re-direct or during a later direct examination. See United States v. Embry, 452 F.App'x 826, 835 (10th Cir. 2011)(unpublished)(noting that "Rule 608(b)(1) . . . allows impeachment testimony . . . on direct or redirect examination . . . where a party already has attacked the credibility of a witness by referring to specific instances of conduct."). When a witness makes a false statement while providing testimony, the opposing party is allowed to prove that lie by presenting rebuttal witnesses. See United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)("[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact.").

## RELEVANT LAW REGARDING EXCESSIVE FORCE

"Excessive force claims, like most other Fourth Amendment issues, are evaluated for

---

[2]Professors Charles Alan Wright and Victor James Gold recognize that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 C. Wright & V. Gold, Fed. Practice and Procedure § 6117, at 86 (1993). Professors Wright and Gold confirm that, as a result of the 2003 amendment, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness." 28 C. Wright & V. Gold, supra § 6117, at 14 (Supp. 2011). The 2003 amendment "suggests that the only limits on the admissibility of such contradiction evidence are Rule 403 and possibly the common law rule that extrinsic evidence is inadmissible to contradict as to a collateral matter." 28 C. Wright & V. Gold, Fed. Practice and Procedure § 6119, at 127 (2d ed. 2012).

objective reasonableness based upon the information the officers had when the conduct occurred."

Saucier v. Katz, 533 U.S. 194, 207 (2001).  See Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir.

2009)("A Fourth Amendment claim of excessive force is analyzed under the 'objective

reasonableness' standard that governs other Fourth Amendment inquiries.").   Hence, "the

'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight."  Graham v. Connor, 490 U.S.

386, 396 (1989).  The United States Court of Appeals for the Tenth Circuit has explained:

> Reasonableness is evaluated under a totality of the circumstances approach which
> requires that we consider the following factors:  the severity of the crime at issue,
> whether the suspect poses an immediate threat to the safety of the officers or others,
> and whether he is actively resisting arrest or attempting to evade arrest by flight.

Weigel v. Broad, 544 F.3d 1143, 1151-52 (10th Cir. 2008)(quoting Graham v. Connor, 490 U.S. at

1151-52)(internal quotation marks and citations omitted).   Additionally, a court must judge the

reasonableness of a particular use of force from the "perspective . . . of the information possessed

by the [officers]."  Weigel v. Broad, 544 F.3d at 1152 (quoting Anderson v. Creighton, 483 U.S.

635, 641 (1987))(citations and internal quotes omitted).

When analyzing a § 1983 claim for both excessive force and unlawful arrest, a court must

look first at whether the arrest was lawful, and then at whether the officers' use of force was

reasonable in light of the lawfulness of the arrest. The Tenth Circuit has explained:

> [I]n cases involving claims of both unlawful arrest and excessive force arising from
> a single encounter, it is necessary to consider both the justification the officers had
> for the arrest and the degree of force they used to effect it.  If the plaintiff can prove
> that the officers lacked probable cause, he is entitled to damages for the unlawful
> arrest, which includes damages resulting from any force reasonably employed in
> effecting the arrest.  If the plaintiff can prove that the officers used greater force than
> would have been reasonably necessary to effect a lawful arrest, he is entitled to
> damages resulting from that excessive force. These two inquiries are separate and
> independent, though the evidence may overlap. The plaintiff might succeed in
> proving the unlawful arrest claim, the excessive force claim, both, or neither.

<u>Cortez v. McCauley</u>, 478 F.3d 1108, 1127 (10th Cir. 2007)(emphasis added).  Moreover,

> in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

<u>Cortez v. McCauley</u>, 478 F.3d at 1126.  <u>See</u> <u>Smith v. Kenny</u>, 678 F.Supp. 2d 1124, 1161 (D.N.M. 2009)(Browning, J.)(noting that finding the officers' use of force is "commensurate with the circumstances" depends upon whether the arrest was lawful or unlawful).  Thus, if it is clear that the amount of force used would have been reasonable if the detention or arrest had been appropriate, then the plaintiff can recover damages only for the unlawful arrest -- including any damages that flow from the officers' use of force during the arrest -- but there will be no separate excessive-use-of-force claim.

## RELEVANT LAW REGARDING UNLAWFUL ARREST AND MALICIOUS PROSECUTION

Probable cause and reasonable belief in the lawfulness of police action are defenses to a malicious prosecution claim.  "The existence of probable cause for arrest is an absolute bar to a § 1983 claim for malicious prosecution, even if the defendant allegedly had a malicious motive for arresting the plaintiff." <u>Garcia v. Jaramillo</u>, No. CIV 05-1212, 2006 WL 4079681, *7 (D.N.M. Nov. 27, 2005)(Browning, J.)(internal citations omitted).  "[P]robable cause existed if 'at the moment the arrest was made . . . the facts and circumstances within [an officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing'" a crime had been committed.  <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991)(per curiam)(quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)).

A malicious prosecution claim under § 1983, while based on the common-law elements of

malicious prosecution, turns on whether there was a deprivation of a constitutional right.  See Novitsky v. City of Aurora, 491 F.3d 1244, 1257-58 (10th Cir. 2007)("In this circuit, when addressing § 1983 malicious prosecution claims, we use the common law elements of malicious prosecution as the 'starting point' of our analysis; however, the ultimate question is whether plaintiff has proven the deprivation of a constitutional right.")(quoting Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996)).  The Tenth Circuit has held:

> The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

Novitsky v. City of Aurora, 491 F.3d at 1258 (citing Pierce v. Gilchrist, 359 F.3d 1279, 1291-97 (10th Cir. 2004)).  Whether the original action terminated in favor turns on whether there is an acquittal, or a failure to proceed, which indicates a lack of reasonable grounds for the prosecution. Wilkins v. DeReyes, 528 F.3d 790, 803 (10th Cir. 2008)("The 'dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution.'")(quoting  Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997)).

## RELEVANT LAW REGARDING LIMITING WITNESS TESTIMONY

Rule 402 of the Federal Rules of Evidence provides that relevant evidence is admissible, unless otherwise provided by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other Supreme Court rules, while "irrelevant evidence is not admissible." Fed. R. Evid. 402.  Relevant evidence is any evidence that has a tendency to make more or less probable any fact of consequence than it would be without the evidence.  See Fed. R. Evid. 401. Under rule 403, however, relevant evidence may be excluded if, among other reasons, the danger of unfair prejudice,

-11-

presenting cumulative evidence, or wasting time substantially outweighs the evidence's probative value.  See Fed. R. Evid. 403.  "In evaluating whether evidence should be excluded on grounds of unfair prejudice, courts should consider the probable effectiveness of a limiting instruction and the availability of less prejudicial, alternative means of proof."  Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., No. CIV 02-1146, 2007 WL 2296903, *9 (D.N.M. June 26, 2007)(Browning, J.)(citing Old Chief v. United States, 519 U.S. 172, 184-85 (1997)).  The United States Court of Appeals for the Tenth Circuit has cautioned that "[e]xcluding otherwise admissible evidence under Rule 403 'is an extraordinary remedy that should be used sparingly.'"  Mendelsohn v. Sprint/United Mgmt. Co., 466 F.3d 1223, 1231 (10th Cir.2006)(quoting United States v. Roberts, 88 F.3d 872, 880 (10th Cir.1996)).

Competent evidence of the injury must support emotional distress damages.  See Carey v. Piphus, 435 U.S. 247, 265 n. 20 (1978)("[A]n award of damages must be supported by competent evidence concerning the injury.").  Although expert testimony is one way of proving emotional distress damages, expert testimony is not required.  See Cadena v. Pacesetter Corp., 30 F.Supp. 2d 1333, 1340 (D. Kan. 1998)("Expert testimony is one method of proving emotional damages, but it is not required.") aff'd, 224 F.3d 1203 (10th Cir. 2000); Smith v. Northwest Fin. Acceptance, Inc., 129 F.3d 1408, 1417 (10th Cir. 1997)("[Expert] testimony is one suggested method of proving emotional damages but is not the sole dispositive requirement.").  A person with personal knowledge of the plaintiff, testifying to injuries in support of an emotional damages claim as a lay witness, however, cannot provide expert testimony under rule 702.  A court must be cautious when allowing lay testimony about injuries or emotional distress that the court does not allow in expert testimony without first ensuring it meets rule 702's requirements.  See Industrial Hard Chrome, Ltd. v. Hetran, Inc., 92 F.Supp. 2d 786, 791 (N.D. Ill. 2000)("[W]here, in order to express an opinion, the witness

-12-

must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Rule 702 expert opinion and not a rule 701 lay opinion.")(quoting C. Wagner, <u>Fed. Rule of Evidence Case Law Commentary</u> 733 (1999)).

> A competent lay witness may testify based on personal knowledge of the matter:
>
> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Fed. R. Evid. 602.  The Federal Rules of Evidence also counsel the trial court to "exercise reasonable control over the . . . examining of witnesses and presenting evidence so as to . . . avoid wasting time . . . ."  Fed. R. Evid. 611.  Under this rule, trial courts have discretion to limit the number of witnesses a party will present to overcome the danger that issues in the trial will be obscured.  <u>See</u> <u>Michelson v. United States</u>, 335 U.S. 469 (1948).

In <u>Trujillo v. Bd. of Educ. of the Albuquerque Pub.  Sch.</u>, the plaintiff proffered eleven witnesses in support of his retaliation claim who would testify that the plaintiff's boss, another of the defendant's employees, abused students and fired the plaintiff, because the plaintiff and his wife discovered the abuse.  <u>See</u> 2007 WL 2296903, at *3.  The defendants moved the Court to exclude the witnesses, contending that, among other things, to allow so many witnesses covering the same misconduct toward students would be cumulative.  <u>See</u> 2007 WL 2296903, at *1.  The Court stated that it would "be vigilant . . . to cut off any testimony that becomes cumulative."  2007 WL 2296903, at *13.  The Court concluded that, unless the plaintiff could "show that the witnesses will testify to relevant, non-cumulative facts, it will exclude some of them and their testimony as described in [the plaintiff]'s witness list."  2007 WL 2296903, at *13.

## ANALYSIS

The Defendants move the Court to exclude the testimony of many of the Montoyas' witnesses' on the grounds that the witnesses do not have personal knowledge of the incident and cannot competently provide relevant evidence. The Montoyas assert that there is no sound grounds on which to exclude the witnesses, because they each have personal knowledge relevant to issues that are contended. The Court, in its previous Memorandum Opinion and Order, filed October 12, 2012 (Doc. 101), concluded that the Montoyas would be allowed to impeach Lovato if he makes a false statement regarding his accident with Chavez or the subsequent police investigations, by putting on the stand one of the investigating officers with personal knowledge of the incident. The Court will therefore allow either Hicks, Sanchez, or Peck to testify as a witness only if Lovato makes a false statement while testifying. Because the Montoyas are requesting emotional distress damages as a result of Shelden and Lovato's conduct, the Court will allow witnesses M. Montoya, V. Montoya, and Baca to testify to their personal knowledge of how the Montoyas appear to them to have changed since the incident. The Court will allow Sanner to testify to her personal knowledge of the scene of the incident, because she drove by the scene as Shelden and Lovato were arresting the Montoyas, and, as M. Montoya's long-time girlfriend, to her personal knowledge of how the incident appears to have affected the Montoyas.

## I.     THE COURT WILL EXCLUDE MOYA AS A WITNESS AT TRIAL.

The Defendants ask the Court to exclude Moya, the Albuquerque field investigator who took pictures at the scene, from trial, because the Montoyas failed to disclose him as a witness before trial. The parties agreed before the hearing on this Motion in Limine that Moya would not testify. See Tr. at 47:25-48:6 (Griffin, Court). The Court therefore will exclude Moya as a witness in this case.

## II.     THE COURT WILL EXCLUDE WITNESSES THAT WILL PRESENT CUMULATIVE EVIDENCE FROM THE TRIAL.

The Defendants contend that the Court should exclude the testimony of Chavez, Hicks, Sanchez, and Peck, because the Montoyas did not disclose them in their initial disclosures, in answers to discovery, or in the Pre-Trial Order. The Montoyas assert, however, that, because Chavez, Hicks, Sanchez, and Peck have personal knowledge of Lovato's prior false statements, which the Court recently intimated would be admissible for impeachment purposes, the Court should not exclude them.  They contend that, with regard to Chavez, in Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., the Court concluded that the plaintiff could present multiple witnesses for a relative matter, as long as the testimony was not cumulative or excessive in relation to its probative value.  See 2007 WL 2296903, at 13 ("The Court concludes that, unless [the plaintiff] can show that the witnesses will testify to relevant, non-cumulative facts, it will exclude some of them and their testimony as described in [the plaintiff]'s witness list.").  Lovato's credibility as a witness, and as a named defendant is relevant and is not collateral.  Evidence of Lovato's false statements in connection with the accident he had with Chavez and follow-up investigations, therefore, are admissible for impeachment purposes.  See Fed. R. Evid. 402, 608; Montoya v. Shelden, No. CIV 10-0360 JB/WDS, 2012 WL 4950707, at *21 (D.N.M. Oct. 12, 2012)(Browning, J.)(concluding that "the specific instances of conduct [of Lovato's untruthfulness] are probative of Lovato's character for truthfulness or untruthfulness, and the Montoyas can inquire into these issues on cross-examination").[3]

---

[3]To say that the credibility of Lovato, a witness and named defendant is relevant and not collateral does not mean that all instances of untruthfulness can be proved up extrinsically.  Relevant evidence is always subject to the rule 403 balancing test.  As Professors Saltzburg, Martin, and Capra recognize:

Should Lovato get on the stand and not admit to making false statements to Chavez during the course of the accident, the Montoyas may require her testimony to prove that he made false statements to her and to prove the false statements' content.  Because Chavez has first-hand personal knowledge of the false statements, she is competent to provide testimony regarding the statements.  Similarly, should Lovato not admit to making false statements in the investigation that followed the accident with Chavez, the Montoyas will likely require an investigating officer to get on the stand, and to provide the jury evidence that Lovato provided the officer with false statements.

Nevertheless, it is within the Court's discretion to exercise control over the presentation of evidence to avoid wasting time and facilitate the determination of the truth.  See Fed. R. Evid. 611(a)("The court should exercise reasonable control over the . . . presenting evidence so as to: (1) make . . . procedures effective for determining the truth; [and] (2) avoid wasting time . . . .").  Moreover, the Court must determine whether the danger of unfair prejudice, wasting time, or presenting evidence substantially outweighs the probative value of allowing Chavez and the officers to testify.  The danger of unfair prejudice from allowing these witnesses to testify, the Defendants assert, comes from the fact that Chavez and the officers were not disclosed.  The Defendants,

---

Traditionally the admissibility of extrinsic evidence offered as contradiction was governed by whether the evidence was "collateral" or not.  But the Federal Rules do not follow that traditional, undeniably fuzzy term.  Rules 402 and 403 displace the common-law rules prohibiting impeachment on "collateral" matters.

2 S. Saltzburg, M. Martin, D. Capra, Fed. Rules of Evidence Manual § 608.02[7], at 608-17 (9th ed. 2006).  Thus, should the Montoyas wish to prove extrinsically that Lovato lied on the stand about what he had for breakfast on a certain morning, the Court would have to balance the probative value of such evidence and find that by the danger of -- among others -- a waste of time does not substantially outweigh the probative value of such testimony.  See Fed. R. Evid. 403.  Nevertheless, that Lovato misrepresented that he was on-duty police officer when he got into an accident with Chavez, and the fact that he then was untruthful multiple times in the follow-up investigations, is not parallel to lying about what he had for breakfast.

however, have known that the Montoyas intended to proffer evidence of Lovato's accident with Chavez since at least the Montoyas' submission of their Motion to Re-open Discovery for a Limited Purpose, filed August 12, 2011 (Doc. 33)("Motion to Re-open").  Lovato's accident, however, did not occur until after the close of discovery, see Motion to Re-open at 2, and the Court did not grant the request for additional discovery until June 8, 2012, see Memorandum and Opinion Order, filed June 8, 2012 (Doc. 43).  They thus could not have realistically disclosed these officer witnesses earlier.  The Defendants therefore had notice that the Montoyas would proffer evidence of Lovato's and Chavez' accident.  The probative value of the evidence which Chavez and the officers may provide, however, that the named defendant and a principal witness lied to a citizen and to investigating officers is great.

Chavez can testify to the statements that Lovato made to her, including representations that he was on duty while he was not, and that he provided her with a false CAD and case number.  In addition, Chavez' testimony is dependent upon Lovato providing false testimony on the stand.  The Court therefore finds that the danger of unfair prejudice to the Defendants of allowing Chavez to testify does not substantially outweigh the probative value of the evidence that she can offer at trial.

The Montoyas assert that Hicks, Sanchez, and Peck "are relevant to the credibility and bias of Defendant Lovato . . . [because they] have personal knowledge about Defendant Lovato's bias, credibility and the misuse of his authority as a law enforcement officer."  MIL Response at 2.  The Montoyas' response fails to assert that either Hicks, Sanchez, or Peck will offer anything additional to or different from one another, stating: "Sgt. Hicks, Lt. Sanchez, and Sgt. Peck have personal knowledge that Defendant Lovato lied to investigating officers and internal affairs about the accident."  MIL Response at 3.  Even if the evidence that Hicks, Sanchez, and Peck will offer, Lovato's false statements during the investigation into his accident with Chavez, becomes relevant

when Lovato does not answer the Montoyas' questions about the incident truthfully, the Court recognizes there is a danger of confusing the issues, and of prejudice to Lovato and Shelden, in allowing the Montoyas to proffer three police officers testifying to Lovato's false statements. One police officer explaining to the jury that Lovato, a named defendant in this case, just provided to the jury false testimony on cross-examination, under oath, about lying in the past is prejudicial to Shelden and Lovato. The probative value of that one officer's testimony for purposes of calling into question Lovato's credibility as a witness is substantial. Allowing three police officers to get on the stand and to testify to Lovato's false statements during the investigation, and in the presence of the Court while under oath during trial, in addition to being cumulative, presents a great danger of confusing the issues, by making the case into a personal referendum on Lovato, rather than whether the Montoyas' § 1983 claims are legitimate. Additionally, the danger of unfair prejudice of three police officers, likely to be seen by the jury as having more credibility than an interested party in the case, testifying to the same instance of Lovato's false statements in the past substantially outweighs any probative value of having three police officers testify rather than one. If, therefore, Lovato provides false testimony on the stand about the statements he made to the investigating officers during the investigation into his accident with Chavez, the Court will allow the Montoyas to call only one officer, either Hicks, Sanchez, or Peck, to testify to Lovato's statements during the investigation. Chavez and one officer is enough testimony at trial to prove to the jury Lovato's untruthfulness to this issue.

III.    **THE COURT WILL ALLOW C. MONTOYA, V. MONTOYA, BACA, AND SANNER TO PROVIDE LAY TESTIMONY IN SUPPORT OF THE MONTOYAS' CLAIMS FOR EMOTIONAL DISTRESS DAMAGES.**

The Defendants contend that the Court should exclude the testimony of C. Montoya, V. Montoya, Baca, and Sanner, because the Montoyas "may attempt to introduce, through [these four]

-18-

witnesses, opinion testimony about the [Montoyas]' personal injury and/or emotional distress claims." Motion in Limine at 3. The Defendants argue that none of these witnesses are qualified, pursuant to rules 701 and 702 of the Federal Rules of Evidence, to render any such opinions, and thus any testimony from the Montoyas' witnesses concerning the Montoyas' emotional distress and/or personal injury claim must be speculative and presumptuous. The Montoyas assert that the Court should not exclude the witnesses, because they will offer lay testimony which will help the jury assess the extent of the Montoyas' emotional damages. Specifically, C. Montoya, V. Montoya, and Baca will "testify about the personality and demeanor of [the Montoyas] from [each witness'] perspective after years of time spent with the [Montoyas] and whether they have observed changes in the [Montoyas] since the date of the incident." MIL Response at 2.

"Expert testimony is one method of proving emotional distress damages, but it is not required." Cadena v. Pacesetter Corp., 30 F. Supp. at 1340 (D. Kan. 1998). To support a claim for damages, a party must present enough competent testimony concerning the injury to allow the jury to find that such an injury exists.. See Carey v. Piphus, 435 U.S. at 265 n. 20 ("[A]n award of damages must be supported by competent evidence concerning the injury."). C. Montoya, the Montoyas' uncle and father-figure, V. Montoya and Baca, the Montoyas' cousins, and Sanner, M. Montoyas live-in partner, all have first-hand personal knowledge of the Montoyas. Any testimony that they offer about how, in their opinion, based on their observations, Montoyas' personalities or demeanors have changed since the incident is probative whether the Montoyas have been emotionally damaged because of the incident. Moreover, whether they have noticed any change in behavior, and whether it occurred only after Shelden and Lovato arrested the Montoyas, is within the province of a lay witness: (i) it is based on their perception of the Montoyas before and after the incident; (ii) it is helpful to clearly understanding why the Montoyas are seeking emotional distress

damages, and why they are testifying in support of those damages, and thus helpful to clearly understanding the Montoyas' testimony and a fact at issue; and, (iii) because there is no evidence that C. Montoya, V. Montoya, Baca, or Sanner have any specialized training or knowledge, or will testify to anything outside of their personal perceptions, their testimony will not be based on scientific, technical, or specialized knowledge within the scope of rule 702. See Fed. R. Evid. 701. See also Industrial Hard Chrome, Ltd. v. Hetran, Inc., 92 F.Supp.2d at 791 ("[W]here, in order to express an opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Rule 702 expert opinion and not a rule 701 lay opinion.").

The extent of the Montoyas' emotional distress and personal injury damages are relevant to the compensatory damages they are requesting in this lawsuit. Because the Montoyas are not offering an expert witness to testify to the Montoyas' damages, however, the Montoyas must still offer competent proof of their injuries and emotional distress so that the jury can reasonably measure the extent of their damages. The more lay testimony the Montoyas can provide regarding the changes that this incident has caused to their personalities and lives, therefore, the more dimension they can give to the jury illustrating the extent of the injuries, and the better able the jury will be to assess those injuries. Although C. Montoya's, V. Montoya's, Baca's, and Sanner's testimony will likely overlap, because they each have different relations to and relationships with M. Montoya or D. Montoya, each of their testimony likely will differ from one another. The Court thus concludes that, even if there is some cumulative evidence provided by C. Montoya's, V. Montoya's, Baca's, and Sanner's testimony, any danger of unfair prejudice or a waste of time does not substantially outweigh the probative value of having all four witnesses provide to the jury their perceptions of the effect that the incident has had on the Montoyas. The Court, therefore, will permit C. Montoya, V. Montoya, Baca, and Sanner to provide lay testimony of the Montoyas' injuries from Shelden's and

Lovato's arrest.

## IV.   THE COURT WILL ALLOW SANNER TO TESTIFY AS A FACT WITNESS TO HER OBSERVATIONS AT THE SCENE OF THE INCIDENT.

The Defendants argue that, given the applicable standards for the Montoyas' claims, evidence concerning whatever occurred at the time of the Montoyas' arrest and prosecution is admissible during the trial, and thus any opinion and/or testimony from any lay witness who was not present as the incident at issue was occurring would be irrelevant, and the Court should exclude the irrelevant evidence.   The Montoyas point out, however, that in addition to evidence of the Montoyas' emotional damages or personal injuries arising from the incident, Sanner "is an eyewitness to a portion of the incident," observed some of Shelden's and Lovato's conduct in the course of the Montoyas' arrest, and her testimony is therefore based on her personal knowledge of the incident.   See MIL Response at 1-2.   Sanner's observations of D. Montoya laying on the ground, red in the face, and with either Shelden or Lovato on his back, are relevant to Montoyas' § 1983 claims of excessive force, unlawful arrest, and false imprisonment.   The Court will therefore allow Sanner to testify to her observations of the portion of the incident which she witnessed.

**IT IS ORDERED** that the Defendants' Motion in Limine Requesting the Exclusion of Testimony From Certain of Plaintiffs' Witnesses, filed September 4, 2012 (Doc. 57), is granted in part and denied in part.   The Court will allow Anna Chavez and only one of Sergeant G. Hicks, Lieutenant L. Sanchez, or Sergeant J. Peck to testify if Plaintiffs Michael Montoya and David Montoya should need to impeach Defendant Angelo Lovato's false statements given on cross-examination.   The Court will exclude Maurice Moya's testimony from trial.   The Court will allow Casper Montoya, Virginia R. Montoya, Maxine Baca, and Marcy Sanner to provide lay testimony in support of the Montoyas' request for emotional distress and compensatory damages, and will also

-21-

allow  Sanner to testify at trial to her observations at the scene.


UNITED STATES DISTRICT JUDGE


*Counsel*:

Louren Oliveros
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

-- and --

Timothy M. Padilla
Timothy M. Padilla and Associates, P.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

David Tourek
  City Attorney
Stephanie M. Griffin
  Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico

      *Attorneys for the Defendants*