## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID MONTOYA and
MICHAEL MONTOYA,

      Plaintiffs,

vs.                                        No. CIV 10-0360 JB/WDS

GERALD SHELDON, an Officer Employed
by the Albuquerque Police Department, a
Subsidiary of the City of Albuquerque,
Individually and in his Official Capacity,
ANGELO LOVATO, an Officer Employed
by the Albuquerque Police Department, a
Subsidiary of the City of Albuquerque,
Individually and in his Official Capacity, and
THE CITY OF ALBUQUERQUE,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Objections to Plaintiffs'

Exhibits, filed September 4, 2012 (Doc. 60)("Defendants' Objections"); and (ii) Plaintiffs'

Objections to Defendants' Exhibits, filed September 19, 2012 (Doc. 68)("Montoyas' Objections").

The Court held hearings on the parties' objections on September 17, 2012, and September 28, 2012.

The primary issues are: (i) whether the Court should admit into evidence Plaintiffs Michael

Montoya's and David Montoya's Exhibit 1, the "Click it or Ticket Tact Plan," when the Montoyas

did not provide the Exhibit to the Defendants before trial; (ii) whether the Court should exclude from

evidence the Defendants' Exhibit C, the "Quality Controlled Local Climatological Data for 4/1607,"

reflecting the government's recordings of the weather on the day of the incident, because the records

are hearsay and no exception for their admission exists; (iii) whether the Court should admit

Exhibits E, F, G, H, I, and J, certain of the Montoyas' medical records which the Montoyas signed as being accurate, because they are statements by party opponents and non-hearsay; and (iv) whether the Court should exclude as hearsay records of the incident that the Albuquerque Fire Department created, and M. Montoya's Emergency Room records from a later incident, where the records include statements that the Montoyas made to the person who created the records.   The Court will sustain in part and overrule in part the parties' objections.   The Court will exclude the Montoyas' Exhibits 4, 13, 14, and 15, because the Court ruled the exhibits were inadmissible in its Memorandum and Opinion Order, filed October 12, 2012 (Doc. 101).   The Court will also exclude the Montoyas' Exhibits 1, 3, 8, and 9, because the Montoyas withdrew the exhibit at the hearing. The Court will admit the Defendants' Exhibits E, F, G, H, I, and J as non-hearsay, because they are statements by a party opponent.   The Court will admit redacted versions, containing only the Montoyas' statements, of the Defendants' Exhibits D and K, the Montoyas' records which the Montoyas did not sign as accurate, unless and until the Defendants can lay the foundation for the Exhibits' admissibility through the proper witnesses at trial.

## FACTUAL BACKGROUND

The Court has explained the facts of this case in three prior Memorandum Opinion and Orders: (i) the Memorandum and Opinion and Order, filed October 7, 2012 (Doc. 83); (ii) the Memorandum Opinion and Order, filed October 12, 2012 (Doc 101); and (iii) the Memorandum and Opinion and Order, filed October 29, 2012 (Doc. 110).   The Court incorporates by reference those discussions of the factual background.   The Montoyas are alleging that Shelden and Lovato violated their civil rights by using excessive force in the course of an unlawful arrest and wrongfully detained them.   Additionally, the Montoyas allege a § 1983 civil rights violation for malicious prosecution. The Montoyas and the Defendants submitted lists of exhibits for trial, and the parties object to the

other side's listed exhibits.

Four of the exhibits that the Montoyas intend to offer at trial are the subject matter of other motions of the parties and so the Court has dealt with their admissibility in the Court's prior Memorandum Opinion and Order, filed October  12, 2012 (Doc. 101)("MOO").  The Court's findings in that opinion were that: (i) the Montoyas' Exhibit 4, the "New" Miranda Rights, was deemed inadmissible as an exhibit, because the Court would allow the Montoyas to testify to what they saw, see MOO at 40-42; and (ii) the Court concluded that the Montoyas' Exhibits 13, 14, and 15, all documents, audio CDs, and video CDs regarding an Internal Affairs Investigation into an accident involving Lovato, would be inadmissible, see MOO at 39-40.

## PROCEDURAL BACKGROUND

The Defendants filed Defendants' Exhibit List on August 27, 2012.  See Doc. 50.  The Montoyas also filed Plaintiffs' Exhibit List on August 27, 2012. See Doc. 51.  On September 4, 2012, the Defendants filed the Defendants' Objections.  See Doc. 60.  The Defendants object to the Montoyas' Exhibit 1, the "Click-It or Ticket Tact Plan," under rule 37(c) of the Federal Rules of Civil Procedure, because the Montoyas represented to the Defendants that they did not possess the evidence and had never disclosed the exhibit.  See Defendants' Objections ¶ 1, at 1-2.  The Defendants additionally object to the Montoyas' exhibit 1 under rules 104, 401, 402, and 403 of the Federal Rules of Evidence.  See Defendants' Objections ¶ 1, at 2.  The Defendants object to the Montoyas' Exhibits 3, 8, and 9, the Tow-in report and Bernalillo County Metropolitan Court Documents related to the incident, stating that the "Defendants are unaware of the purpose of relevance of [these documents] . . . [and] reserve their objection to these documents unless and until Plaintiffs make an offer of proof as to how these exhibits are relevant and admissible . . . ." Defendants' Objections ¶ 2, at 2.  With regard to the Montoyas' Exhibit 5, all deposition testimony

and deposition exhibits, the Defendants' object to the introduction of such evidence "unless and until Plaintiffs specifically identify the deposition testimony and exhibits that they intend to introduce as well as lay the requisite foundation . . . ." Defendants' Objections ¶ 2, at 2. In regard to Exhibit 4, the "New" Miranda Rights, and Exhibit numbers 13, 14, and 15, documents and CDs relating to an Internal Affairs Investigation of Defendant Angelo Lovato, the Defendants incorporate their objections to such evidence raised in Defendants' Motion in Limine to Exclude Introduction of Evidence from Other Cases or Claims Brought Against Defendants and any Evidence of Allegations of Prior and Subsequent Bad Acts and Memorandum of Support Thereof, filed September 4, 2012 (Doc. 56). See Defendants' Objections at 2.

On September 19, 2012, the Montoyas filed Montoyas' Objections, objecting to Defendants' Exhibits B, C, D, E, F, G, H, I, J, and K. See Montoyas' Objections at 1. The Montoyas object to Exhibit B, the "Reactive Control Model" under rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence, contending that, because it is a demonstrative exhibit, it is inadmissible hearsay. See Montoyas' Objections at 1. Additionally, the Montoyas state, because this Exhibit is part of the Albuquerque Police Department ("APD") Standard Operating Procedures ("SOPs"), which the Court ruled inadmissible, this Exhibit is inadmissible under rules 401, 402, and 403. See Montoyas' Objections 1-2. The Montoyas object to Defendants' Exhibit C, "Quality Controlled Local Climatological Data for 4/16/2007," because they assert that it "appears to be a compilation of data gathered from the National Climatic Data Center and constitutes inadmissible hearsay under Fed. R. Evid. 801 and 802." Montoyas' Objections at 2. The Montoyas object to Defendants' Exhibits D, E, F, G, H, I, J, and K -- various medical records and screenings of the Montoyas since the underlying event -- asserting that the Exhibits are inadmissible under rules 801, 802, and 805, because the Exhibits are hearsay and contain hearsay within hearsay. See Montoyas' Objections at

2.

      At the hearing on September 19, 2012, the Court heard the Defendants' objections to the Montoyas' Exhibits. The Montoyas stated, with regard to the "Click it or Ticket" tack plan, there was only discussion about the plan, but the Montoyas now concede that there is no evidence there was an actual plan in this case, so the Montoyas stipulated to withdrawing the Exhibit. Transcript of Hearing at 9:4-7 (taken September 19, 2012)(Oliveros)("Sept. 19 Tr.").[1] In regards to the Montoyas' Exhibit 3, the Tow-in report, the Montoyas withdrew the Exhibit, because the tow-truck driver would be testifying at trial and they therefore no longer needed to enter the Exhibit into evidence, but would reserve their ability to impeach the driver with the report at trail if needed. See Sept. 19 Tr. at 12:13-20 (Oliveros). The Defendants stated that their objection to the Montoyas' Exhibit 5, the depositions of the witnesses to testify at trial, was only that the Court should not admit the trial testimony as an exhibit until the preliminary foundation is laid, and unless and until it may be admitted under the Federal Rules of Evidence for impeachment. See Sept. 19 Tr. at 13:4-7 (Griffin). The Montoyas agreed with the Defendants, and clarified that they had listed the testimony as an exhibit specifically for impeachment purposes if the need should arise. See Sept. 19 Tr. at 13:10-14 (Oliveros). The Montoyas and the Defendants stated that the Defendants' objections to Exhibits 4, 13, 14, and 15 were the subject-matter of the Defendants' prior motions in limine and the Court would deal with their exclusion in those separate motions. See Sept. 19 Tr. at 13:15-18 (Court, Griffin). The Montoyas clarified that included within the deposition testimony in Exhibit 5 were D. Montoya's photographs taken after the incident, to which the Defendants replied that they did not object to introduction of the photographs. See Sept. 19 Tr. at 13:21-14:7 (Oliveros, Court,

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may have slightly different page and/or line numbers.

Griffin).  The Defendants stated that they were concerned that the Montoyas had not included within their proposed exhibits D. Montoya's additional medical records, which had recently been the subject of some electronic mail transmissions between the Montoyas and the Defendants.  See Sept. 19 Tr. at 14:14-15:3 (Griffin).  The Montoyas clarified that, because the Court was permitting D. Montoya's treating physician to testify as a fact witness at trial, the Montoyas would not offer the medical records as an exhibit.  See Sept. 19 Tr. at 15:7-16:7 (Oliveros, Court).

The Court heard the Montoyas' objections to the Defendants' Exhibits at its hearing on September 28, 2012.  In response to the Montoyas' objection to Defendants' Exhibit B, the Reactive Control Model, the Defendants stated that it is a demonstrative aide as it would "just be demonstrative to show the jury the reactive control model [] in accordance with their training." Transcript of Hearing at 3:24-4:4(taken September 28, 2012)(Griffin)("Sep. 28 Tr.").  The Court inquired if the Defendants were going to put on evidence that Shelden and Lovato acted in accordance with their training after the Court's ruling that, to the extent the Defendants put on affirmative evidence that Shelden and Lovato acted in accordance with their training, while it does not open the door to the Albuquerque Police Department Standard Operating Procedures ("SOPs") coming in, it will open the door to the Montoyas' cross-examination on Shelden's and Lovato's training.  See Sept. 28 Tr. at 4:5-8 (Court).  The Defendants replied that they had not yet made a final determination, but if they did go into Shelden's and Lovato's training, it would only be to show that their actions conformed with the training regarding the Reactive Control Model, and the Defendants agreed that their doing so would open the door to the Montoyas' inquiry of the training, but not the SOPs.  See Sept. 28 Tr. at 4:9-4:15 (Griffin, Court).  The Court clarified that any affirmative evidence that Shelden or Lovato acted in conformity with their training, even for purposes of demonstrating their compliance with only the Reactive Control Model, would open the

door to all of Shelden and Lovato's training coming in; that, with regard to training, it is "all or nothing." Sept. 28 Tr. at 4:16-5:10 (Court, Oliveros, Griffin). The Defendants acknowledged their understanding: "All or nothing with the training." Sept. 28 Tr. at 5:11 (Griffin). In regards to the SOPs, the Montoyas argued that, because the Reactive Control Model was associated with the SOPs, the Defendants' use of the Model should open the door to the SOPs also. See Sept. 28 Tr. at 5:14-6:3. The Defendants agreed with the Court that, the Montoyas can ask Shelden and Montoya if they were trained based on the SOPs, and to the extent Shelden or Lovato answer that they were, the Montoyas could inquire about their training and the SOPs, but the Montoyas could not enter any SOPs into evidence or go beyond Shelden's or Lovato's answers. See Sept. 28 Tr. at 6:4-7:3 (Court, Griffin). The Montoyas stated that ruling was acceptable to them. See Sept. 28 Tr. at 7:5-6 (Oliveros, Padilla).

The Defendants stated that, in regards to Exhibit C, the climatological data for the day of the incident, they did not know whether the Montoyas objected on grounds of admissibility or authenticity, but the Defendants argued that, because D. Montoya has made an issue of the outside temperature, they intend to introduce the United States Government's record, taken from the National Climate Data Center at the Albuquerque, New Mexico Sunport, of the temperature on that day. See Sept. 28 Tr. at 7:17-8:1 (Griffin). The Montoyas contended that their concern with the document was twofold: (i) it was taken from a website; and (ii) and they could not cross-examine a document as to its accuracy. See Sept. 28 Tr. at 9:4-10 (Oliveros). The Court noted that this information may be almanac-type evidence of which judicial notice may be taken, and, in that case, the information is not available for cross-examination. See Sept. 28 Tr. at 9:11-12 (Court). Because the Montoyas stated that they had data from an almanac which recorded the temperature at 72 degrees, and the Defendants' record recorded the weather at the time of the incident between 69 and

72 degrees, the Court asked the Montoyas and the Defendant whether they would both agree to the Court admitting both parties' records into evidence as exhibits to submit to the jury.  <u>See</u> Sept. 28 Tr. at 10:3-8 (Court).  The Montoyas and the Defendants agreed to the admission of both records. <u>See</u> Sept. 28 Tr. at 10:9-15 (Griffin, Court, Padilla).

In regards to the Montoyas' objections to Exhibits D, E, F, G, H, I, J, and K, the Montoyas' medical records created after the accident, the Defendants stated that the Montoyas produced the records in discovery and contended that they would all be properly authenticated at trial.  <u>See</u> Sept. 28 Tr. at 10:19-11:22 (Griffin).  In regards to the Montoyas' medical records, because the Montoyas signed the records, the Court asked if the Montoyas thought that they were going to come in as admissions by a party opponent and therefore not hearsay under rule 801(d)(2) of the Federal Rules of Evidence.  <u>See</u> Sept. 28 Tr. at 13:3-6 (Court).  The Montoyas contended that, although the Montoyas signed these records, their concern was with the documents being admitted in their entirety, because there is information within them that is irrelevant, information that the Court should exclude under rule 403, and information about the Montoyas' prior and subsequent histories that the Court has otherwise excluded.  <u>See</u> Sept. 28 Tr. at 13:12-14:6 (Oliveros).  The Court clarified that its ruling on the Montoyas' motion in limine seeking to exclude M. Montoya's prior and subsequent arrests was that, because M. Montoya was seeking emotional distress damages, the number of arrests and circumstances could come into evidence.  <u>See</u> Sept. 28 Tr. at 14:3-17:1 (Court, Oliveros, Griffin).  The Montoyas then agreed to look over the Montoyas' medical records and, to the extent the Montoyas thought any of the records were inadmissible, to redact that information, send it to the Defendants, and if the Defendants objected, the Montoyas could move the Court to rule on the objections.  <u>See</u> Sept. 28 Tr. at 14:23-15:23 (Court, Oliveros).  In regards to the AFD records, the Defendants' Exhibit D, the Defendants argued that they were offering D.

Montoya's statements to AFD to show that he complained of Shelden's and Lovato's use of mace. Because these are D. Montoyas' statements, the Defendants asserted that the statements are non-hearsay.  Additionally, the first layer of hearsay, the AFD's written report, is an exception to hearsay under rule 803(6) as a record of a regularly conducted activity.  See Sept. 28 Tr. at 17:5-18:7 (Griffin, Court, Oliveros).  The Montoyas asserted that the Defendants could not lay the proper foundation to show that the exhibit is a record of a regularly conducted activity without the AFD officer's testimony.  See Sept. 28 Tr. at 18:19-19:1 (Oliveros).  The Court asked if the Defendants were willing to call the AFD officer as a witness, and when the Defendants agreed, the Court ruled that the AFD record would come in only after the AFD officer testified and laid the proper foundation for their admissibility under rule 803(6).  See Sept. 28 Tr. at 19:8-10 (Court).  In regards to the Defendants' Exhibit 11, the Presbyterian Hospital Emergency Room ("ER") Records for M. Montoya, which M. Montoya did not sign, the Court asked if the Montoyas would agree to the admitting the Exhibit without an employee of Presbyterian Hospital to authenticate and lay a foundation for the Exhibit if the Defendants were to redact all of the hearsay statements except for M. Montoya's statements.  See Sept. 28 Tr. at 19:11-14 (Court).  The Montoyas stated that, if the documents were properly redacted, they would agree to their admissibility, and the Defendants agreed to so redact the records.  See Sept. 28 Tr. at 19:15-20:5 (Oliveros, Court, Griffin).

The Court asked if there were any other objections from either party that the Court could address.  See Sept. 28 Tr. at 20:15–16 (Court).  The Montoyas stated that, although they had left the objection out of their written objections, they objected to Defendants' Exhibit L, "any exhibit identified in discovery," because the exhibit is a "catchall."  Sept. 28 Tr. at 20:21-21:1 (Oliveros). The Defendants responded that, at the current time, they did not intend to offer any exhibits identified in discovery other than what was on their exhibit list, but that Exhibit L was there in case

the need arises at trial to introduce evidence to impeach or rebut evidence that is brought up during trial. See Sept. 28 Tr. at 21:4-11 (Griffin). The Montoyas stated that they would then withdraw that objection, but reserve the right to object to such evidence during the trial. See Sept. 28 Tr. at 21:12-22 (Oliveros, Court).

## RELEVANT LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under Federal Rule of Evidence 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Tenth Circuit has quoted with approval a case from the United States Court of Appeals for the Second Circuit, stating: "Generally [hearsay evidence] is not admissible . . . because traditional conditions of admissibility, including that the witness be present at the trial, testify under oath, and be subject to cross-examination, all of which together permit a jury to evaluate the reliability and trustworthiness of a statement, are not present." United States v. Gary, 999 F.2d 474, 479 (10th Cir. 1993)(quoting United States v. Cardascia, 951 F.2d 474, 486 (2d Cir. 1991)). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay.").

## ANALYSIS

For reasons stated on the record at the hearings, and further reasons stated herein, the Court will sustain in part and overrule in part both the Montoyas' and the Defendants' objections to Exhibits that the parties intend to offer into evidence at trial.  The Court excludes the Montoyas' Exhibits 1, 3, 8, and 9, because the Montoyas agreed that they will not seek to admit this exhibit at trial.  As agreed at the hearing, the Court will allow Defendants' Exhibit C, the Quality Controlled Local Climatological Data for 4/16/2007, into evidence, and will also allow into evidence the Montoyas' Almanac entry which recorded the temperature on the same day.  See Sept. 28 Tr. at 10:9-15 (Griffin, Court, Padilla).

Pursuant to the Court's prior MOO, the Court will exclude the Montoyas' Exhibits 4, 13, 14, and 15.  In its MOO, the Court concluded that, while the Montoyas could testify to any "New" Miranda Rights or similar signage that they saw while in the back of Shelden's police cruiser, the Court would not admit similar signs that the Montoyas offer as exhibits at trial.  See Montoya v. Shelden, No. CIV 10-360 JB/WDS, 2012 WL 4950707, at *23 (D.N.M. Oct. 12, 2012)("The Court will therefore let the Montoyas testify to the signage that they saw in the back of Shelden's police cruiser and the effect the sign had on them.").  In regards to the Montoyas' Exhibits 13, 14, and 15, the documents and CDs related to Lovato's Internal Affairs Investigation, the Court concluded that, to the extent the Montoyas need to impeach Lovato with evidence of contradictory statements made during the investigation, the Court would allow the Montoyas to present such evidence through testimony, but not through internal affairs documents or information.  "While the Court will not admit the internal-affairs investigation report into evidence, should Lovato make a false statement on the stand regarding either the internal-affairs investigation, or the Chavez accident, the Court will allow the Montoyas to call one of the investigation officers or Chavez to testify to Lovato's

misrepresentations." <u>Montoya v. Shelden</u>, 2012 WL 4950707, at *22.  The Court will thus exclude

the Montoyas' Exhibits 13, 14, and 15 from the trial.

Under rule 801(c), "hearsay is a statement, other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed.

R. Evid. 801(c).  "Hearsay testimony is generally inadmissible."  <u>United States v. Christy</u>, 2011 WL

5223024, at *5.  A party opponent's statement is excluded from the definition of hearsay where:

> The statement is offered against an opposing party and:

>> **(A)** was made by the party in an individual or representative capacity;

>> **(B)** is one the party manifested that it adopted or believed to be true;

>> **(C)** was made by a person whom the party authorized to make a statement on the subject;

>> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

>> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed.R.Evid. 801(d)(2).  As the Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

<u>Grace United Methodist Church v. City of Cheyenne</u>, 451 F.3d 643, 667 (10th Cir.2006)(alterations

omitted)(internal quotations and alterations omitted).[2]  Because the Montoyas signed all of the Defendants' Exhibits E, F, G, H, I, and J as being accurate, and because the Montoyas' party opponents, the Defendants, will offer the exhibits, the Court will admit those exhibits as statements by a party opponent and non-hearsay under rule 801(d)(2).  See Fed. R. Evid. 801(d)(2)(B).

Rule 805 recognizes that "[h]earsay within hearsay" – commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed.R.Evid. 805. In regard to the Defendants' Exhibit D, the AFD Medical Records for the treatment of D. Montoya from the date of the incident, and the Defendants' Exhibit K, M. Montoya's Presbyterian ER Records from 9/27/2010, because the Montoyas did not sign the records, they are not a party opponent's statements.  The records themselves are therefore hearsay, as are the statements within the records.  See Fed. R. Evid. 801(2) and 805.  While D. Monotoya's statements in the AFD record, Exhibit D, and M. Montoya's statements within the ER record, Exhibit K, are statements within the hearsay statement, these statements are not double hearsay, and are not hearsay at all, because the statements are statement by a party opponent and thus non-hearsay when offered by the Defendants under rule 801(d)(2)(B).  Thus, because the parties agreed that the redacted

_____

[2]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d), and uses the term "statements" instead.  Fed. R. Evid. 801(d).  This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made."  Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee's commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" was made before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules.  Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 may still be used in cases after the restyling. Fed. R. Evid. 801, advisory committee's note on 2011 amends.

-13-

documents could come into evidence, the Court will admit the redacted records. Because the records themselves are hearsay, however, the Court will exclude the remaining portions of Exhibit D unless and until the AFD officer who wrote the AFD report can lay the proper foundation for its admissibility, and will similarly exclude the remaining portions of Exhibit K unless and until the Defendants can produce the proper witness from Presbyterian Hospital to lay the proper foundation for its admissibility. Should the Defendants choose not to put on witnesses to lay the foundation for the records' admissibility at trial, the Court will allow, pursuant to the parties agreement at the hearing, the Defendants to offer into evidence redacted versions of the exhibits to move into evidence only the Montoyas' statements.

**IT IS ORDERED** that the Defendants' Objections to Plaintiffs' Exhibits, filed September 4, 2012 (Doc. 60)("Defendants' Objections"), and the Plaintiffs' Objections to Defendants' Exhibits, filed September 19, 2012 (Doc. 68)("Montoyas' Objections"), are sustained in part and overruled in part as set forth in more detail above. The Court will exclude Plaintiffs Michael Montoya's and David Montoya's Exhibits 4, 13, 14, and 15. The Court will also exclude the Montoyas' Exhibits 1, 3, 8, and 9. The Court will admit the Defendants' Exhibits E, F, G, H, I, and J. The Court will admit redacted versions, containing only the Montoyas' statements, of the Defendants' Exhibits D and K, unless and until the Defendants can lay the foundation for the Exhibits' admissibility through the proper witnesses at trial.

_____
UNITED STATES DISTRICT JUDGE

-14-

*Counsel*:

Louren Oliveros
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

-- and --

Timothy M. Padilla
Timothy M. Padilla and Associates, P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*

David Tourek
  City Attorney
Stephanie M. Griffin
Paul M. Cash
  Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

     *Attorneys for the Defendants*